UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ROYAL & SUN ALLIANCE INSURANCE PLC,  :

                                      :       **ECF CASE**

                 Plaintiff,    :

                                        :       **07-CV-2889 (AKH)**

       -against-          :

                                        :

OCEAN WORLD LINES, INC.          :

                               :

                Defendant.    :
-------------------------------------------------------------x
OCEAN WORLD LINES, INC.,       :

                               :

          Third-Party Plaintiff,   :

                               :

       -against-          :

YANG MING MARINE TRANSPORT CORP.  :
and DJURIC TRUCKING, INC.         :

                               :

          Third-Party Defendants  :
-------------------------------------------------------------x

 

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT LIMITING LIABILITY UNDER COGSA

 

Peter D. Clark
Of Counsel

CLARK, ATCHESON & REISERT
Attorneys for Defendant
7800 River Road
North Bergen, New Jersey 07047
Telephone: 201-537-1200
Telefax: 201-537-1201

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .................................................................. ii

PRELIMINARY STATEMENT ........................................................…..1

FACTUAL BACKGROUND ..............................................................…...1

ARGUMENT .......................................................................................5

POINT I

SUMMARY JUDGMENT IS APPROPRIATE
IN THE INSTANT CASE ........................................................... 5

POINT II

PLAINTIFF, HAVING BROUGHT SUIT UNDER
THE OWL BILL OF LADING, IS BOUND
BY ITS TERMS AND CONDITIONS...........................................6

POINT III

THE U.S. CARRIAGE OF GOODS BY SEA ACT
CONTROLS THE RIGHTS AND OBLIGATIONS
OF OWL WITH RESPECT TO THE
CARRIAGE OF THE CARGO IN QUESTION ............................. 7

POINT IV

EACH OF THE 7 PACKAGES IN CONTAINER
GLDU411 0080 SHOULD BE CONSIDERED A
PACKAGE WITHIN THE MEANING OF COGSA
THEREBY LIMITING OWL'S LIABILITY TO $3,500 .....................10

POINT V

OWL IS NOT A COMMON CARRIER OF CARGO
WITHIN THE MEANING OF THE CARMACK AMENDMENT ........ 11

**POINT VI**

**PLAINTIFF'S RELIANCE ON SOMPO JAPAN
TO ESTABLISH LIABILITY ON THE PART
OF OWL IS MISPLACED** …………………………………………………..15


**POINT VII**

**THE NEED FOR UNIFORMITY IN MARITIME
CONTRACTS AS ANNUNCIATED IN KIRBY IS
APPLICABLE TO THE INSTANT CASE** ………………………………… 18

**CONCLUSION** ……………………………………………………………….. 20

## TABLE OF AUTHORITIES

### CASES                                                           PAGE

All Pacific Trading, Inc. v. Hanjin Container Line, Inc.
7 F. 3d 1427 (9th Cir. 1993) ................................................................ 7

Allied Chemical International Corp. v. Companhia de Navegacao Lloyd Brasileiro
775 F. 2d 476 (2d Cir. 1985). ............................................................... 10

Amaker v. Foley
274 F. 3d 677 (2d Cir. 2001). ................................................................ 5

Ana Distribution, Inc. v. CMA-CGM (America) Inc.,
329 F. Supp. 2d 565 (S.D.N.Y. 2004) ...................................................... 7

Anderson v. Liberty Lobby, Inc.
477 U.S. 242 (1986). ............................................................................. 5

Brown & Root v. M/V Peisander,
648 F. 2d 415 (5th Cir. 1981) ...............................................................9

D'Amico v. City of New York
132 F. 3d 145 (2d Cir. 1998)................................................................... 6

Farrell Lines Inc. v. Columbus Cello-Poly Corp.
32 F. Supp. 2d 118 (S.D.N.Y. 1997) ....................................................... 7

Hanson v. McCaw Cellular Comm., Inc.
77 F. 3d 663 (2d Cir. 1996)................................................................... 8

Mansfield v. Chicago Title & Trust Co.
199 F. 95 (7th Cir. 1912) .................................................................... 14

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
475 U.S. 574 (1986)............................................................................. 6

Mitsui & Co. (USA), Inc. v. M/V MIRA
111 F. 3d 33 (5th Cir. 1997) ................................................................ 7

New York Foreign Freight Forwarders Assn. v. Federal Maritime Commision
337 F. 2d 289 (2d Cir. 1964) ................................................................ 15

Norfolk Southern Ry. Co. v. James N. Kirby, Pty Ltd;
543 U.S. 14 (2004) .................................................................. 18, 19

Prima U.S. Inc. v. Ponalpena, Inc.
223 F. 3d 126, , (2d Cir. 2000) ......................................................... 14

Robert C. Herd & Co. v. Krawill Machinery Corp.
359 U.S.29 (1959)......................................................................... 9

Seguros Illimani S.A. v. M/V POPI P
929 F. 2d 89 (2d Cir. 1991)......................................................... 10

Sompo Japan Insurance Co. of America v. Union Pacific R.R. Co.
456 F. 3d 54 (2d Cir. 2006) ...................................... 15, 16, 17, 18

United States v. American Union Transport
327 U.S. 437 (1946) ..................................................................... 14

## STATUTES

Carriage of Goods by Sea Act, 46 U.S.C. §§ 30701 *et seq.* (previously codified at 46
U.S.C. app. §§ 1301 *et seq.*: ........................................................... 1

46 U.S.C. §§ 30701 *et seq*..........................................................1,3,7

46 U.S.C. app. § 1304 (5) ........................................... 1,3,4,5,6,10,11

46 U.S.C. app. § 1307 ..................................................................... 8

Carmack Amendment ............................................................... *passim*

49 U.S.C. § 11706 (a) ................................................................. 13

49 U.S.C. § 11706 (a), (c)(3) ...................................................... 17

49 U.S.C. § 14706 ....................................................................... 15

49 U.S.C. § 14706 (a) ................................................................. 15

49 U.S.C. § 14706 (a) (1) ........................................................... 15

**PAGE**

Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998, Pub. L. No. 105-258, Title I, 101, 112 Stat. 1902, 46 USCS § 40101 *et seq.* (previously cited as 46. U.S.C. app. § 1701, *et seq.*:) ............................................................. 11

46 USCS § 40101 *et seq.* .............................................................. 12, 20

46 USCS § 40102 (6) .............................................................. 12

46 USCS § 40102 (16)(A)(B) .............................................................. 12

46 USCS § 40102 (17) .............................................................. 12

46 USCS § 40102 (25) .............................................................. 12

ICC Termination Act of 1995, Pub. L. No 104-88, 109 Stat. 803 *et seq.* .................. 12

Staggers Rail Act of 1980, Pub. L. No 96-448, 94 Stat. 1895, 49 U.S.C. § 10502 (e) ... 17

49 U.S.C. § 10101 .............................................................. 12

49 U.S.C. § 10102 .............................................................. 12

49 U.S.C. § 10501 .............................................................. 13

49 U.S.C. § 10502 (e) .............................................................. 13, 17

49 U.S.C. § 13101 .............................................................. 13

49 U.S.C. § 13102 .............................................................. 13

Fed. R. Civ. P. 56 .............................................................. 1,5,6

# DECLARATIONS AND EXHIBITS

## PAGE

**DECLARATION OF ALAN BAER (President of OWL)**........................... 2,3, 4

**Exhibit "A"** – Owl Freight Tarriff No. 005

**Exhibit "B"** – Owl Bill of Lading OWLUHA6506015UNY ............................. 3

**Exhibit "C"** – Owl Bill of Lading Terms and Conditions ................................. 3

**Exhibit "D"** – Yang Ming Sea Waybill ....................................................... 3

**Exhibit "E"** – Facsimile of 7/11/06 to Owl with First Notice of Casualty


**DECLARATION OF ESA RADONCIC (Claims Manager of OWL)** ...................4

**Exhibit "F"** – Facsimile of 7/11/06 to Owl with First Notice of Casualty

**Exhibit "G"** – Email of 7/12/06 from Owl to Yang Ming

**Exhibit "H"** – Claim Statement in Amount of $250,000 for Alleged Damage to Cargo

**Exhibit "I"** – Facsimile of 2/22/07 from Royal & Sun Alliance to OWL on claim

**Exhibit "J"** – Email of 2/26/07 from Owl to Yang Ming on claim

**Exhibit "K"** – Email of 2/26/07 from Yang Ming to Owl on claim

**Exhibit "L"** – facsimile of 3/29/07 from Djuric to Owl admitting liability for claim

## PRELIMINARY STATEMENT

Defendant, Ocean World Lines, Inc. (hereinafter "OWL"), submits this Memorandum of Law in support of its motion for an order granting defendant partial summary judgment pursuant to Fed. R. Civ. P. 56; Carriage of Goods by Sea Act ("COGSA") 46 U.S.C. §§ 30701 *et seq.,* and clauses in the contract of carriage limiting its liability to $500 per package pursuant to 46 U.S.C. § 1304(5). Solely for the purpose of this motion, OWL does not dispute that plaintiff's cargo was damaged in a trucking accident while it was being carried by a motor carrier under the terms and conditions of OWL's through transport bill of lading. Furthermore, for simplicity's sake and to eliminate any questions of fact as to the number of packages involved in the incident, OWL will assume that the damage occurred to all seven (7) package contained in the subject dry van container NO. GLDU4110080. OWL will also concede that the damage to the cargo exceeds the amount of $3,500.[1]

## FACTUAL BACKGROUND

The Court is respectfully referred to the Statement of Material and Undisputed Facts pursuant to Rule 56.1 of the Local Rules of this Court, the declarations of Alan Baer, Esa Radoncic, and to all the pleadings had herein, for a full and thorough recital of the facts.

---

[1] This motion is without prejudice to any and all rights OWL has against the third-party defendants.

Briefly, this action involves damage to cargo which moved in a container from Bremerhaven, Germany to Bourbon, Indiana, by way of the Port of Norfolk as described in OWL's bill of lading OWLUHA 65060150NY. (See Complaint at ¶ 6). Plaintiff Royal & Sun Alliance Insurance PLC is suing as the subrogated insurer of the shipper of the cargo in suit, White Horse Machinery Ltd. ("White Horse" or "Shipper" or "plaintiff"). Specifically plaintiff seeks to recover $125,851.38 in damages it contends it suffered as a result of an inland motor carrier accident to a 40 foot dry van container GLDU411008-0, said to contain seven (7) packages of a shipment of a Heidelberg offset press transported aboard the M/V YANG MING MILANO from the Port of Bremerhaven, Germany to the Port of Norfolk, Virginia for final delivery by rail carrier and then motor carrier to the consignee in Bourbon, Indiana. (See id. ¶¶ 1,6,7,8 and 10).

Defendant OWL is a statutorily defined non-vessel operating common carrier ("NVOCC") subject to the authority and jurisdiction of the Federal Maritime Commission ("FMC") and is engaged in the business of providing for international through transportation of goods by sea and land to and from the United States. OWL does not own or operate the ocean vessels or inland means of transportation upon which cargo is carried. OWL is not a rail carrier, motor carrier, water carrier, broker, freight forwarder or a pipeline carrier. (See, Baer Decl. ¶ ¶ 2, 3, 6 and 7.)

In early June 2006 Shipper White Horse requested that NVOCC OWL transport the containerized shipment from Bremerhaven to Norfolk and then to final inland destination at Bourbon, Indiana. Thereafter, on June 15, 2006 OWL and White Horse entered into a contract of carriage in the form of a combined transport through bill of lading identified as OWL UHA6S060150NY. The bill of lading identifies OWL as the

2

"carrier," White Horse as the "shipper/exporter," M/V YANG MING MILANO the "vessel", and the consignee "to shipper's order". (See Baer Decl. ¶ 16).

Pursuant to the terms and conditions of OWL's bill of lading, the carriage was governed by the United States Carriage of Goods by Sea Act (hereinafter "COGSA") which limits OWL's liability for any cargo loss or damage to $500 per package unless the nature and value of the goods had been declared by the shipper and inserted in the bill of lading. (Baer Decl. ¶ 14). At the time that White Horse entered into the bill of lading contract with OWL, it had the opportunity to avoid the application of COGSA's $500 package limitation by declaring the full value of the cargo on the face of the OWL bill of lading and by paying additional freight. (Baer Decl. ¶ 14). White Horse elected not to declare the value of the cargo, (see blank space on the face of Exhibit "B") and did not pay OWL additional freight. (Baer Decl. ¶ 15).

On the face of the OWL bill of lading under the headings "Particulars Furnished By Shipper" and "Description of Packages and Goods," White Horse described the cargo loaded into dry van container GLDU411008-0 as "7 packages". (See Exhibit "B"). Under clause 7 of OWL's bill of lading, entitled "Sub-Contracting" OWL, operating as an NVOCC, by necessity sub-contracted the ocean carriage to Norfolk, Virginia and the inland on-carriage to Bourbon, Indiana with Third-Party Defendant Yang Ming Marine Transport Corp ("Yang Ming"), a statutorily defined vessel operating common carrier ("VOCC") pursuant to a service contract it had with Yang Ming. (Baer Decl. ¶ 3).

On June 16, 2006 OWL, on behalf of White Horse, entered into a contract of carriage with Yang Ming for the transportation of the White Horse cargo under a non-negotiable sea waybill contract of carriage identified as YMLUT670037050. (See,

Exhibit "D"). Yang Ming agreed to carry aboard its vessel M/V YANG MING MILANO one 40 foot dry cargo container No. GLDU4110080 said to contain 7 packages from Bremerhaven to Norfolk, and for final door delivery by rail and motor carrier to Bourbon, Indiana. The waybill lists Ocean World Lines Europe as the "shipper" and OWL as "consignee." The face and reverse side of the waybill had the terms and conditions of carriage including the $500 COGSA package limitation unless the nature and values of the goods had been declared before shipment and additional freight paid. The value of the goods was not declared by OWL and no additional freight was paid. (Baer Decl. ¶ 16).

Upon arrival of the M/V YANG MING MILANO at Norfolk, Yang Ming made arrangments with its subcontracted rail carrier, Norfolk Southern Railroad, and its subcontracted motor carrier, Djuric Trucking, Inc. ("Djuric"), to have the cargo transported by train and then truck to Bourbon, Indiana. (Baer Decl. ¶ 17). On or about July 11, 2006, Owl's Operation Manager was informed by telefax from the consignee's customs broker that container GLDU4110080 carried under bill of lading OWLUHA6S060150NY was delivered on July 11, 2006 to the ultimate consignee Harmony Leasing Corp., at Bourbon in damaged condition because Djuric's truck driver drove it through a low bridge while transferring the container. (Baer Decl. ¶ 18; Radoncic Decl. ¶ 5). On or about March 29, 2007 Owl's Claims Manager received a facsimile from counsel for Djuric admitting that the container sustained damage during the carriage by Djuric when the container struck an overhead bridge while enroute to Bourbon, Indiana. (Radoncic Decl. ¶ 13; Exhibit L).

On or about April 10, 2007 suit was commenced by the Shipper's insurer solely against OWL for the alleged loss. OWL answered the Complaint June 28, 2007 and

pleaded as an affirmative defense that its maximum liability, if any, is $500 per package as agreed to in the provisions of the through bill of lading and COGSA. See Answer at ¶ 22. On or about July 2, 2007 OWL commenced a third-party indemnity action against its subcontractor Yang Ming and Yang Ming's subagent Djuric for the loss alleged by plaintiff in the Complaint.

Defendant will show in this motion for partial summary judgment that 46 U.S.C. § 1304(5), as interpreted by the Second Circuit Court of Appeals, enables it to limit its liability to $3,500 for the alleged damage to seven (7) packages of the cargo in question.

## ARGUMENT

## POINT I

## SUMMARY JUDGMENT IS APPROPIATE IN THE INSTANT CASE

Summary judgment pursuant to Fed. R. Civ. P. 56 may be entered if the moving party demonstrates that there are no material issues of fact. The Supreme Court has interpreted this to mean that summary judgment should be granted if a reasonable finder of fact could find only in favor of the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, (1986). The moving party has the initial burden of showing the absence of a genuine issue concerning any material fact. See, Amaker v. Foley, 274 F. 3d 677 (2d Cir. 2001). Once the moving party has satisfied this initial burden, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56 (e). "[T]he nonmoving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the

events is not wholly fanciful." D'Amico v. City of New York, 132 F. 3d 145,149 (2d Cir. 1998). When the moving party carries its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

In resolving a summary judgment motion, courts must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. See, Hanson v. McCaw Cellular Comm., Inc., 77 F. 3d 663, 667 (2d Cir. 1996). A summary judgment is interlocutory in character and may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages. Fed. R. Civ. P. 56 (c).

Upon this motion for partial summary judgment, defendant OWL respectfully urges the Court to adjudge that OWL is entitled to limit its liability to $500 per package under COGSA for a total amount of $3,500 for the 7 packages in container GLDU4110080.

## POINT II

### PLAINTIFF, HAVING BROUGHT SUIT UNDER THE OWL BILL OF LADING, IS BOUND BY ITS TERMS AND CONDITIONS

Plaintiff pleads and relies on the existence of OWL's bill of lading OWLUHA65060150NY as the basis of its Complaint. See Complaint ¶ 6. It alleges that defendant OWL, as a common carrier of cargo for hire, breached the bill of lading contract of carriage by its failure to properly carry and care for the cargo in suit. This was

caused by a fundamental breach and deviation from the carriage contract Id. at ¶¶ 5 and 9.

Plaintiff also alleges that it sues on its own behalf and as agent and trustee for anyone who has an interest in the claim which is the subject of the action Id. at ¶ 11. Plaintiff further alleges that it has performed all conditions precedent required of it under the contract Id. at ¶ 12.

Having sued OWL under OWL bill of lading OWLUHA65060150NY, plaintiff is bound by all the terms and conditions of the bill of lading (including the COGSA $500 package limitation). See Farrell Lines Inc. v. Columbus Cello-Poly Corp, 32 F. Supp. 2d 118, 225 (S.D.N.Y.1997); All Pacific Trading, Inc. v. Hanjin Container Line, Inc. 7 F. 3d 1427, 1432 (9th Cir. 1993) ("Plaintiffs' initiation of this suit constituted acceptance of the terms of the Hanjin bills of lading."); Mitsui & Co. (USA), Inc. v. M/V MIRA, 111 F. 3d 33,36 (5th Cir. 1997) (Party that sues on bill of lading accepts its terms); Ana Distribution, Inc. v. CMA-CGM (America) Inc., 329 F. Supp. 2d 565,567 (S.D.N.Y. 2004) (same).


## POINT III

### THE U.S. CARRIAGE OF GOODS BY SEA ACT CONTROLS THE RIGHTS AND OBLIGATIONS OF OWL WITH RESPECT TO THE CARRIAGE OF THE CARGO IN QUESTION

The Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 *et seq.* (previously codified at 46 U.S.C §1300 *et seq.*) applies as a matter of law to all bill of lading contracts of carriage involving trade between foreign ports and ports of the United

States.[2] The statute provides in 46 U.S.C. §1307, however, that nothing contained in the Act shall prevent the carrier and shipper from extending COGSA provisions *ex contractu* to the period prior to loading and after discharge of the goods from the ship.

By virtue of the OWL combined transport bill of lading terms, the parties specifically contracted for an extension of the Act throughout the entire time during which OWL was responsible for the goods. Pursuant to the Definitions in Clause 1. of the OWL bill of lading:

- "OWL" is the name of the carrier.

- "Carriage" is the whole or any part of the operations and services undertaken by the carrier in respect to the goods covered by the bill of lading.

- "COGSA" means the U.S. Carriage of Goods by Sea Act 1936 as amended.

- "Servants or Agents" includes...owners and operators of vessels (other then the carrier), underlying carriers (including ocean common carriers with whom OWL has contracted for the physical transportation of the goods),...road and rail transport operations...

- "Shipper" includes the person entering into this contract of carriage with the carrier and for whose account the goods are shipped.

Clause 5 (D) 1 of the OWL bill of lading provides that if carriage includes carriage to, from or through a port in the United States that the bill of lading shall be subject to COGSA. Furthermore, COGSA shall be extended to apply to all goods before they are loaded on and after discharge from the vessel and throughout the entire time during which the carrier is responsible for the goods under the bill of lading.

---

[2] After the date of the low bridge trucking accident of July 11, 2006, Congress enacted a law reorganizing and restating the laws currently in the appendix to title 46, including COGSA's provisions. Pub. L. 109-304, 120 Stat. 1485 (Oct. 6, 2006). For simplicity sake this brief will refer to the former 46 U.S.C. App. § 1300 (2005) *et seq.* cites which are referenced in the COGSA case law supporting this motion.

Clause 5(D) 3 and Clause 6 limit the liability of the carrier for shipments to ports in the United States to $500 per package unless the value of the goods has been declared on the face of the bill of lading and extra freight has been paid. In the instant case the combined transport shipment under the OWL bill of lading was from the Port of Bremerhaven through the Port of Norfolk, Virginia to Bourbon, Indiana and COGSA is applicable.

A carrier may also extend its COGSA limitations *ex contractu* to agents and independent contractors of the carrier by the incorporation of a Himalaya Clause into the bill of lading. *See,* Robert C. Herd and Co. v. Krawill Machinery Corp., 359 U.S. 297 (1959). A Himalaya Clause is an exculpatory provision which extends to non carriers the protections available to the carrier.[3] The principle benefits are the COGSA one year time bar and the $500 limitation of liability. Brown & Root v. M/V Peisander, 648 F. 2d 415 (5th Cir. 1981).

The OWL bill of lading issued to White Horse contains Himalaya Clause 7 that is capable of extending COGSA limitation protections to OWL's subcontractor such as Yang Ming and to Yang Ming's subagent Djuric provided, however, that any such subcontractor or subagent that takes the benefit of the provision consents to the law and jurisdiction provision of OWL's bill of lading (United States Law and Federal United States Court for the Southern District of New York) and expressly waives any law, forum or jurisdiction provision in any underlying agreement. It is OWL's understanding that Yang Ming and Djuric will not seek the benefit of OWL's Himalaya clause. Rather, they

---

[3] The name of this clause comes from an English personal injury case in which the court permitted a carrier to contractually exempt from liability those whom it engaged to carry out the contract. Adler v. Dickson (The Himalaya). 1 Q.B. 158 (1955). Brown & Root, Inc. v. M/V Peisander, 648 F. 2d 415,417 n. 5 (5th Cir. 1981).

will rely on the terms and conditions in Yang Ming's bill of lading in their motion against

White Horse, including Yang Ming's own Himalaya clause to grant COGSA protection

to its subcontractor Djuric.

### POINT IV

### EACH OF THE 7 PACKAGES IN CONTAINER GLDU411 0080 SHOULD BE CONSIDERED A PACKAGE WITHIN THE MEANING OF COGSA THEREBY LIMITING OWL'S LIABILITY TO $3,500

The pertinent part of COGSA with respect to the package limitation is Section

1304 (5), which reads as follows:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

46 U.S.C. § 1304 (5).

The OWL bill of lading lists the description of packages of the offset press in

container NO GLDU4110080 as "7 packages." It is undisputed that the description of

packages and goods was provided by White Horse to OWL when OWL issued its bill of

lading to White Horse.

The Second Circuit has decreed that what constitutes a COGSA package is largely

a matter of contract interpretation. Allied Chemical International Corp. v. Companhia de

Navegacao Lloyd Brasileiro, 775 F.2d 476, 485 (2d Cir. 1985). The first place to search

for the intent of the contracting parties is by looking at the bill of lading and adopting as

the COGSA package the unit of packaging unambiguously identified in the bill of lading.

Seguros Illimani S.A. v. M/V POPI P, 929 F.2d 89, 94 (2d Cir. 1991). In the event of

ambiguity, the court will look elsewhere in the bill of lading and to other evidence of the parties' intentions.

In the instant case, it is respectfully submitted that there is no ambiguity in the bill of lading which clearly state there are "7 packages" in container GLDU411008-0. Accordingly, pursuant to Section 1304 (5) of COGSA, defendant OWL is entitled to limit liability to $500 for each of the 7 packages in the container for a total amount of $3,500.

## POINT V

### OWL IS NOT A COMMON CARRIER OF CARGO WITHIN THE MEANING OF THE CARMACK AMENDMENT

Plaintiff contends in paragraph 5 of its Complaint that for the purpose of determining liability, OWL is a common carrier of cargo for hire within the meaning of the Carmack Amendment. This contention is flowed because by statutory definition OWL is a "non vessel operating common carrier" ("NVOCC") regulated by the Federal Maritime Commission ("FMC") and does not come within the preview of the Carmack Amendment.

The FMC regulates the common carriage of goods by water in the foreign commerce of the United States pursuant to the Shipping Act of 1984, Pub L. No 98-237, 98 Stat. 67 as amended by the Ocean Shipping Reform Act of 1998 (Pub. L. No. 105-258 (1998). As used in the Shipping Act, a "common carrier" holds itself out to the general public to provide transportation by water between the United States and a foreign country for compensation, assumes responsibility from point of receipt to point of destination,

11

and utilizes for all or part of the transportation a vessel operating on the high seas or Great Lakes. 46 USCS § 40102 (6).

Under the Shipping Act, an "ocean common carrier" ("VOCC") means a vessel operating common carrier. 46 USCS § 40102 (17). A "non-vessel operating common carrier" ("NVOCC") is a common carrier that does not operate the vessel by which the ocean transportation is provided and is a shipper in its relationship with the ocean common carrier. 46 USCS § (16)(A)(B). "Through transportation" means continuous transportation between origin and destination for which a through rate is assessed and is offered or performed by one or more carriers, at least one of which is a common carrier, between a United states point or port and a foreign point or port. 46 USCS § 40102 (25). By statutory definition, OWL is a NVOCC, and is subject to the jurisdiction of the FMC, not the Surface Transportation Board ("STB") established by the ICC Termination Act of 1995 [Pub. L. No. 104-88, 109 Stat. 803 *et seq.* (1995) ("ICCTA").

The ICCTA modified Subtitle IV ("Interstate Transportation") of Title 49 United States Code by dividing it into three parts. Part A pertains to rail transportation. Part B covers motor carriers, water carriers, brokers, and freight forwarders. Part C concerns pipeline carriers.

The rail transportation policy of the United States is described in Part A under 49 U.S.C. § 10101. The definitions relating to "rail" are set forth in § 10102, which states in relevant part:

> (5)    "rail carrier" means a person providing common carrier railroad transportation for compensation, but does not include street, suburban, or interurban electric railways not operating as part of the general system of rail transportation;

> (6)    "railroad" includes:

12

(a)  a bridge, car float, lighter, ferry and intermodel equipment used by or in connection with a railroad;

(b)  the road used by a rail carrier and owned by it or operated under an agreement; and

(c)  a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation.

NVOCC OWL does not fall under any of the above definitions. Section 11706 (a) governs the liability of rail carriers. It provides that a rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Board under this Part are liable to the person entitled to recover under the receipt or bill of lading.

To apply section 11706 (a), it is necessary to examine the general jurisdiction section for railroads under § 10501. The STB has jurisdiction under Part A over transportation by rail carrier that is (A) only by railroad, or (B) by railroad and water, when the transportation is under common control, management, or arrangement for a continuous carriage or shipment *Id.* 10501 (a)(1). NVOCC OWL is not a "rail carrier" and is not subject to the provisions of 49 U.S.C. § 11706 (a) or § 10502 (e).

The domestic transportation policy of the United States for motor carriers, water carriers, brokers, and freight forwarders is described in Part B under 49 U.S.C. § 13101. The relevant definitions of the entities in this part are set forth in § 13102, with our comments which state:

(12) MOTOR CARRIER. – The term "motor carrier" means a person providing motor vehicle transportation for compensation.

**COMMENT**: Not applicable to NVOCC OWL.

(22) WATER CARRIER. - The term "water carrier" means a person providing water transportation for compensation.

**COMMENT**:  Not applicable to NVOCC OWL.

(2) BROKER.- The term "broker" means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

**COMMENT:** Not applicable to NVOCC OWL.

(8) FREIGHT FORWARDER. – The term "freight forwarder" means a person holding itself out to the general public (other then as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business--

(A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;

(B) assumes responsibility for the transportation from the place of receipt to the place of destination; and

(C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle…

**COMMENT**: Not applicable to NVOCC OWL. As the Court states in <u>Prima v.</u>

<u>U.S. Inc. v. Ponalpena, Inc.,</u> 223 F. 3d 126 (2d Cir. 2000).

A NVOCC- as opposed to the actual ocean carrier transporting the cargo- issues a bill of lading to each shipper. If anything happens to the goods during the voyage the NVOCC is liable to the shipper because of the bill of lading that it issued…A freight forwarder…on the other hand, simply facilitates the movement of cargo to the ocean vessel. (citations omitted)

Unlike NVOCC OWL that issued a bill of lading to plaintiff, a freight forwarder

does not issue bills of lading, and is not liable to a shipper for anything that occurs to the

goods being shipped. <u>See</u> <u>United States v. American Union Transport,</u> 327 U.S. 437, 442-

43 (1946); <u>Mansfield v. Chicago Title & Trust Co.,</u> 199 F. 95,98 (7th Cir. 1912); <u>New</u>

York Foreign Freight Forwarders and Brokers Assn v. Federal Maritime Commission,
337 F. 2d 289,292 (2d Cir. 1964).

Part B of Title 49 contains § 14706, entitled "Liability of carriers under receipt
and bills of lading." Section 14706 (a)(1) for motor carriers and freight forwarders places
liability on a carrier providing transportation or service subject to the jurisdiction under
Subchapter I or III of Chapter 135 ["motor carrier"] or Chapter 105 ["rail carrier"] for
loss caused by a receiving carrier, delivering carrier or other carrier over whose line or
route the property is transported.

OWL is not motor carriers, freight forwarders, or railroads and does not fall
within the purview of § 14706 (a) and is not subject to its liability provisions. Moreover,
Carmack cannot apply to an NVOCC such as OWL who does not fall within the purview
of the statute. OWL's duties and responsibilities are governed by the terms of its bill of
lading and COGSA.


## POINT VI

## PLAINTIFF'S RELIANCE ON SOMPO JAPAN TO ESTABLISH LIABILITY ON THE PART OF OWL IS MISPLACED


At both pre-trial conferences in this matter plaintiff has taken the position that the
Second Circuit's opinion in Sompo Japan Insurance Co. of America v. Union Pacific
R.R.Co 456 F. 3d 54 (2d Cir. 2006) is all determinative of the liability issue in the instant
case. Counsels for defendant OWL and third-party defendants have taken a contrary

view. The Court instructed the parties to hold their arguments for their respective briefs in this motion.

It is OWL's contention that plaintiff's reliance on Sompo Japan is flawed. The case had nothing to do with a NVOCC or a motor carrier. Rather it concerned a litigation between a cargo owner and a railroad for goods damages in a train wreck. In Sompo Japan a shipper contracted directly with an ocean carrier to transport thirty-two tractors from Tokyo, Japan to Swanee, Georgia under through bills of lading. No NVOCC or motor carrier was involved in the movement. The bills of lading contained clauses dealing with the liability of the ocean carrier, including a "clause paramount" that extended COGSA coverage beyond vessel discharge. The bills of lading also contained "Himalaya clauses" that purported to extend COGSA protection to subcontractors of the ocean carrier.

Pursuant to the bills of lading, the ocean carrier shipped the cargo from Tokyo to Los Angeles, California where the cargo was transferred to its subcontractor, Union Pacific, for rail carriage to Georgia. The goods were subsequently damaged in a derailment.

The shipper recovered from its insurer, who then brought a subrogation suit only against the rail carrier. The shipper moved for partial summary judgment to dismiss the rail carrier's COGSA limitation defense, contending that two other federal statutes, Carmack and the Staggers Act of 1980, governed the liability of the rail carrier. The rail carrier admitted liability and cross-moved to determine the extent of its liability based upon the protection purportedly offered to it under the Himalaya clause in the ocean carrier's through bills of lading.

16

The district court rejected the shipper's argument by giving effect to the ocean carrier's incorporation of COGSA and limited the rail carrier's liability through the Himalaya clause to $500 per tractor. On appeal, the shipper argued that the district court erred in finding that COGSA, rather than Carmack, governed the rail carrier's liability when it failed to consider if the railroad provided the shipper with an opportunity to receive full Carmack liability coverage as well as alternative "opt out" terms in accordance with the Staggers Rail Act. *See* 49 U.S.C. § 11706 (a), (c)(3); 10502 (e). *Id.* at 75. The Second Circuit agreed and remanded the case.

In Sompo Japan the Second Circuit did not directly address the issue of ocean carrier liability or that ocean carrier's liability was governed by Carmack. The ocean carrier was not a party to the action. Neither was a NVOCC or a motor carrier involved in the transport. The Court did, however, in dicta comment on the ocean carrier's obligations under COGSA:

> [The ocean carrier's] through bills of lading gave [the shipper] a "fair opportunity" to declare a value for the tractors in excess of $500 per package, and [the shipper] declined. Thus [the ocean carrier] did all that was required under COGSA to trigger the statute's $500 per package liability limitation. (Emphasis added). *Supra* at 60.

In the instant case, the shipper was given a fair opportunity to declare the value of the cargo pursuant to the COGSA requirement, but declined to do so. Defendant is mindful that under the specific facts of Sompo, Japan the Second Circuit concluded that Carmack governed the rail carrier's liability and further concluded that the ocean carrier's bills of lading did not satisfy the Staggers' requirements that the shipper be given an opportunity to receive full Carmack coverage before accepting alternative terms. *Id.* at 76. However, the court did not hold that the ocean carrier's liability provisions in its bills

of lading did not afford the ocean carrier COGSA protection. That issue was not present in <u>Sompo, Japan.</u>

## POINT VII

### THE NEED FOR UNIFORMITY IN MARITIME CONTRACTS AS ANNUNCIATED IN KIRBY IS APPLICABLE TO THE INSTANT CASE

Plaintiff admits in paragraph 3 of the Complaint that OWL issued a through bill of lading for the cargo in question. Plaintiff readily admits, as it must, that there is federal question jurisdiction within the meaning of Rule 9 (h) of the Federal Rules of Civil Procedure if this Court deems that the through bill of lading is a maritime contract. <u>See</u> Complaint at ¶ 3.

The Supreme Court held in <u>Norfolk Southern Ry. Co. v. James N. Kirby, Pty Ltd.</u>, 543 U.S. 14 (2004) that a multimodal through bill of lading is a maritime contract as long as it requires a substantial carriage of goods by sea and its purpose is to effectuate maritime commerce. *Id.* at 27.

It is respectfully submitted that a voyage from Bremerhaven, Germany to Norfolk, Virginia is a substantial sea carriage and the OWL through bill of lading is, indeed, a maritime contract within the meaning of <u>Kirby.</u>

The Court in <u>Kirby</u> endorsed the concept that a single Himalaya clause can cover both sea and land carriers downstream and that COGSA authorizes such clauses. *Id.* at 29. The Court emphasized the importance of the uniformity of the general maritime law and the need to reinforce the liability regime Congress established in COGSA for the

purpose of facilitating efficient contracting in contracts for carriage by sea. *Id.* at 28-29. The Court recognized that through bills of lading governed by COGSA should have the same law apply equally to all legs of the journey, otherwise the purpose of COGSA to facilitate efficient contracting for international carriage of cargo by sea would be defeated. *Id.* at 29. The <u>Kirby</u> Court also answered the question of what role a NVOCC intermediary plays in intermodel ocean through bills of lading by holding that "when an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed". *Id.* at 33.

The Court went on to note that the role for intermediaries tracks industry practices. *Id.* at 34.

> In intercontinental ocean shipping, carriers may not know if they are dealing with an intermediary, rather than with a cargo owner. Even if knowingly dealing with an intermediary, they may not know how many other intermediaries came before, or what obligations may be outstanding among them. If the Eleventh Circuit's rule were the law, carriers would have to seek out more information before contracting, so as to assure themselves that their contractual liability limitations provide true protection. That task of information gathering might be very costly or even impossible, given that goods often change hands many times in the course of intermodal transportation. (Citations omitted).

*Id.* at 34, 35.

In the instant case plaintiff White Horse contracted only with NVOCC OWL, an "ocean transportation intermediary" under the Shipping Act of 1984, *supra,* to carry the cargo under its through bill of lading from  Bremerhaven to Norfolk aboard the MV YANG MING MILANO and on to Bourbon, Indiana. Under <u>Kirby</u>, this is a maritime contract that covers both sea and land carriers downstream and the same law is to be

applied equally to all legs of the journey. Otherwise, the purpose of COGSA to facilitate efficient contracting of international carriage of cargo by sea is defeated.

## CONCLUSION

Defendant's motion for partial summary judgment limiting defendant's liability to $500 per package for a total amount of $3,500 should be granted together with attorneys' fees, costs and disbursements and such other relief as this Court may deem just and proper.

Dated: December 20, 2007

CLARK, ATCHESON & REISERT

By: _____
Peter D. Clark (PC 6190)
ATTORNEYS FOR DEFENDANT
OCEAN WORLD LINES, INC.
7800 River Road
North Bergen, NJ 07047
(201) 537-1200

20