UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROYAL & SUN ALLIANCE INSURANCE PLC,

Plaintiff,

-against-

OCEAN WORLD LINES, INC.

Defendant.

OCEAN WORLD LINES, INC.,

Third-Party Plaintiff,

-against-

YANG MING MARINE TRANSPORT CORP. and DJURIC TRUCKING, INC.

Third-Party Defendants

**ECF CASE**

**07-CV-2889 (AKH)**

**DECLARATION OF ALAN BAER**

I, ALAN E. BAER, declare as follows:

1. I am President of Ocean World Lines Inc. ("OWL") and have held this position since 1989. I make this declaration in support of defendant's motion for partial summary judgment limiting liability, to $500 per package pursuant to the Carriage of Goods by Sea Act ("COGSA") and the OWL bill of lading contract terms. I make this declaration based upon personal knowledge and records in our file.

2. OWL is a Delaware Corporation with its principle place of business in New York and with agents throughout the world. OWL is a non-vessel operating common carrier ("NVOCC") engaged in the business of providing for international through transportation of goods by sea and



land to and from the United States and to and from other countries as the need may arise.

3. OWL does not own or operate the ocean vessels or inland means of transportation upon which its cargo is carried. Rather, OWL secures blocks of cargo space from ocean vessel-operating common carriers ("VOCC") such as Yang Ming Marine Transport Corp. ("Yang Ming") and obtains volume discounts for through transport movements by entering into service contracts with VOCCs.

4. VOCC Yang Ming owns and operates the motor vessel M/V YANG MING MILANO which is a large ocean going container vessel engaged in international trade to and from the United States.

5. OWL in turn, secures cargo from one who tenders goods to a common carrier for transportation ("shipper"), such as the shipper/plaintiff White Horse Machinery Limited (hereinafter "White Horse") and arranges with the VOCC to transport that cargo from the ocean load port to its final inland destination at rates that are higher than those provided to OWL in its service contract, but lower than the rate the underlying shipper could obtain directly from the VOCC.

6. OWL is licensed by the Federal Maritime Commission ("FMC") to act as an NVOCC and is statutorily required by the FMC under the Shipping Act of 1984, as amended, to maintain publicly available tariffs and to transport cargo subject to the terms and conditions of those tariffs. A copy of OWL's relevant Freight Tariff No.005 pertaining to OWL bill of lading numbered OWLUHA6S060150NY is attached hereto as Exhibit "A". The tariff contains a Clause Paramount in paragraph 1 incorporating US COGSA into the bill of lading. Under federal



regulations NVOCC OWL is a common carrier in its relationship with an underlying shipper such as White Horse and is a shipper in its relationship with an ocean VOCC such as Yang Ming.

7.     OWL is not a water carrier, rail carrier, motor carrier, broker, freight forwarder or pipeline carrier and is not regulated by the Surface Transportation Board ("STB") or the Carmack Amendment.

8.     Each shipment handled by OWL is memorialized by two sets of contracts of carriage. A combined transport OWL bill of lading contract of carriage is created between the underlying shipper and OWL, with OWL acting as the common carrier. A back to back non-negotiable waybill contract of carriage for the same shipment is then created between OWL, as the shipper and the VOCC (such as Yang Ming) with the VOCC operating as the common carrier.

9.     On or about June 15, 2006 shipper White Horse entered into a contract of carriage with OWL through our Hamburg, Germany agent pursuant to a bill of lading contract numbered OWLUHA65060150NY. A copy of the OWL bill of lading is attached here as Exhibit "B". The terms and conditions of the backside of this bill of lading are also available on the OWL website www.owl.biz (Exhibit "C"). OWL agreed to transport the cargo belonging to White Horse from Bremerhaven, Germany to Norfolk, Virginia with final delivery in Bourbon, Indiana.

10.     One of my responsibilities as President of OWL is to establish the procedures



utilized in the booking and preparation of OWL bills of lading by our agents throughout the world. The shipper or its forwarder will telephone one of our agents and advise that he has a certain quantity of containerized cargo of a particular type to move from one county to another. During the conversation, vessel availability, last day to deliver the container to make the vessel sailing, ocean and inland freight rates, extra charges such as bunker (fuel) surcharges and terminal handling charges are discussed and agreed upon.

11.    Once the cargo is booked by the shipper, the booking is then confirmed by OWL with the VOCC. When the shipper knows exactly what he plans to ship, he provides the OWL agent with the description of the packages and the cargo, the weight, the cubic measure and any relevant identification marks. The shipper is then required to forward this information by telefax or email to our agent. This information is then inserted in the OWL bill of lading under the heading "Description of Packages and Goods" as the particulars furnished by the shipper.

12.    After this information is typed by our agent into the OWL bill of lading, a draft of the OWL bill of lading is then sent to the shipper by telefax or email for review and comment. After the shipper has had an opportunity to review the draft he will contact our agent and approve it as typed or make suggestions for change. After any changes are made our agent will finalize the OWL bill of lading and the shipper loaded and sealed container is then trucked by the shipper to the ocean terminal for loading. Once the container is loaded on the ocean vessel, the OWL agent will release the OWL combined transport NVOCC bill of lading to the shipper if all freight and charges have been paid.

13.    In the instant case all freight and charges had been paid by the shipper and combined transport bill of lading contract number OWLUHA6S060150NY was issued by OWL on June



15, 2006. OWL agreed with the shipper to carry aboard the M/V YANG MING MILANO, one (1) forty (40) foot dry van container No. GLDU411008-0, said to contain 7 packages described as a Heidelberg SM102-12P-7S 28X40 offset press from Bremenhaven to Norfolk for final delivery to Bourbon, Indiana. The bill of lading listed "White Horse Machinery Limited" as shipper/exporter" and it was issued to "Shipper Order" as "consignee".

14.    Pursuant to the terms and conditions of the OWL bill of lading and tariff 005, the carriage of the cargo was governed by the U.S. Carriage of Goods by Sea Act, (COGSA) which limits OWL's liability for any cargo loss to $ 500 per package, unless the nature and value of the goods pursuant to clause 10 had been declared by the shipper prior to shipment and inserted on the face of bill of lading.

15.    White Horse elected not to declare the value of the seven (7) packages prior to shipment aboard the M/V YANG MING MILANO  and no declaration of the cargo's value was inserted on the face of the bill of lading and extra freight was not paid.

16.    In the instant case a non-negotiable sea waybill contract of carriage between Yang Ming and OWL, numbered YMLUT670037050 (Exhibit "D") was issued by Yang Ming on June 16, 2006. Yang Ming agreed with OWL to carry aboard the YANG MING MILANO, (1) forty (40) foot container No. GLDU4110080 said to contain (7) packages from Bremenhaven to Norfolk, Virginia for final door delivery at Bourbon, Indiana. The waybill lists "Ocean World Lines Europe GMBH" as the "shipper" and "OWL" as "consignee" and "notify party." The value of



the goods was never declared before shipment on the face of the Yang Ming Sea Waybill and no additional freight was paid.

17.    Upon arrival of the M/V YANG MING MILANO in Norfolk Yang Ming had the cargo scheduled for train and motor carriage transport to Bourbon, Indiana.

18.    On or about July 11, 2006 our Operation Manager Donna L. Colchetti was informed by facsimile from the consignee's forwarder (Exhibit "E") that the container in question was delivered on July 11, 2006 to the consignee in Bourbon, Indiana in damaged condition after Yang Ming's subcontracted truck driver from Djuric Trucking Inc. ("Djuric") picked up the container at the rail terminal and drove through a low bridge while transferring the container to the trucker's yard for reasons I am not familiar with.

19.    OWL had not previously delt with Yang Ming's subcontracted trucker Djuric before the incident in question. OWL has nothing to do with the selection of Yang Ming's subagents and does not know the identity of the subagents.

20.    On July 12, 2006 our Claims Manager Esa Radoncic sent a letter to our subcontractor Yang Ming placing them on notice for the responsibility of the loss.



I declare under penalty of perjury of the laws of the United States of America that the foregoing
is true and correct.

Dated: December 12th, 2007
      Lakes Success, New York

ALAN BAER

# EXHIBIT A

TARIFF RULES LISTING
Ocean World Lines - TARIFF # 005

Page: 1
Date: 01NOV2006

TARIFF OWL FREIGHT TARIFF NO. 005 FMC NO. 005 (BTWN USA & WORLD)

RULE# CYC# APP TITLE

008- BILL(S) OF LADING
Filed on: 01DEC1997 Effective: 01JAN1998 Thru: Expire:

RULE TEXT

All property to be transported shall be held, carried and delivered subject to the provisions of the Carrier's applicable form of Bill of Lading, as provided below:

RECEIVED in apparent good order and condition from the Shipper, or Shipper's agent, the number of containers or other packages or units said by Shipper to contain the goods described in the "Particulars Furnished by Shipper" to be transported from the Port of Loading to the Port of Discharge, or so near thereto as the carrying vessel, or other craft used can get, lie and leave always in safety and afloat under all conditions of tide, water and weather, and there to be delivered to Consignee or On-Carrier on payment of all charges due thereon. Carrier makes no representation as to the correctness of the particulars furnished by the Shipper.

In accepting this Bill of Lading, the Shipper, Consignee, holder hereof and the owners of the goods agree, the same as if signed by each of them, that the receipt, custody, carriage, relay, delivery and any transshipping of the goods are subject to the terms appearing on the face and back hereof, which shall govern the relations, whatsoever they may be between Shipper, Consignee, the owners of the goods and any holder hereof and Carrier, its agents, contractors, employees, master and vessel in every contingency occurring and whether Carrier be acting as such or bailee Carrier shall have the right to stow containers, vans or trailers on deck and without notice as per Clause 9. The terms hereof shall not be deemed waived by Carrier except by written waiver signed by Carrier or its duly authorized agent.

Where specifically provided in Carrier's tariff insurance coverage will be issued of the type and for the value specified on the face of the Bill of Lading up to the maximum coverage in effect at that time. The terms of the insurance will be subject to the governing tariff and Carrier's applicable insurance policies, which are available for inspection at Carrier's general offices. Failure to indicate the type of coverage and/or to declare the value of the goods on the face of the Bill of Lading will result in no insurance coverage, unless the insurance provisions of the governing Tariff apply by their own terms.

1. CLAUSE PARAMOUNT. This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America approved April

16, 1936, except as otherwise provided herein. The defenses and limitations of said Act shall apply to goods whether carried on or under deck to carriage of goods between U.S. Ports or between Non-U.S. Ports, before the goods are loaded on and after they are discharged from vessel, and throughout the entire time the goods are in the actual custody of Carrier, whether acting as Carrier, bailee or stevedore.

If this Bill of Lading is issued in or the goods are delivered to a locality where there is in force a compulsorily applicable Carriage of Goods by Sea Act ordinance or statute similar to the International Convention for the Unification of Certain Rules relating to Bills of Lading dated at Brussels, August 25, 1924, then it is subject to such Act, ordinance or statute before the goods are loaded on and after they are discharged from the vessel and throughout the entire time the goods in the actual custody of Carrier, whether acting as Carrier, bailee or stevedore.

Carrier shall be entitled to the full benefit of all rights and immunity under and all limitations of or exemptions from liability contained in any law of the United States or any other place whose law shall be compulsorily applicable. If any term of this Bill of Lading be repugnant to the Carrier of Goods by Sea Act of the United States or any other law compulsorily applicable, such term only shall be void to that extent but no further.

This Bill of Lading shall be construed and the right of the parties hereunder determined according to the laws of the United States.

2.  PARTIES COVERED. If the vessel or other craft in use is not owned by or chartered by demise to Carrier this Bill of Lading shall take effect for purposes of limitation or liability only, as a contract with the owner or demise charterer, as the case may be. If it shall be adjudged that any person other than the owner or demise charterer (including the master, time charterer agents, stevedores, lashers, watchmen and other independent contractors) is the Carrier or bailee of the goods, or is otherwise liable in contract or in tort, all rights, exemptions and limitations of liability provided by law and by the terms of this Bill of Lading shall be available to such other persons. In contracting for the foregoing rights, exemptions and limitations of liability Carrier is acting as agent and trustee for the persons above mentioned. Particulars of the ownership of the vessel or other craft used may be obtained from Carrier or its agents.

3.  SCOPE OF VOYAGE. The voyage herein contracted for shall include ports in or out of the advertised, geographical, usual or ordinary route or order. The vessel may omit calling at any port or ports whether scheduled or not, and may call at the same port more than once, may before or after proceeding toward the Port of Discharge, make trial trips or tests, take

fuel or stores at any port in or out of the regular course of the voyage, sail with or without pilots, tow and be towed, and save or attempt to save life, vessels in distress or other property and all of the foregoing are included in the contract voyage.

Carrier shall have the right, without notice to substitute or employ a vessel, watercraft, or other means rather than the vessel named herein to perform all or part of the carriage. When the Port of Destination or Discharge is not served by Carrier's vessels, Carrier may at any intermediate port, Break Bulk of cargo shipped in containers. It is hereby understood and agreed that any transfer, transshipment or substitution of vessels shall not constitute a deviation.

4. RISK AND LIBERTIES. In any situation which in the judgement of Carrier or the master is likely to give rise to risk of seizure, arrest, detention, damage, delay to, or loss of any goods or the vessel, or to make it imprudent for any other reason to receive, keep or load the goods or continue the voyage, or discharge the goods, Carrier or the master shall have the right (a) to decline to receive, keep or load the goods or to discharge or devan them at any convenient port or place and to require the Shipper or person entitled thereto to take delivery and if he fails to do so, to store them at the risk and expense of the goods, or (b) to discharge or devan the goods into any lighter, craft, depot or other place, or (c) to retain the goods on board until the return trip or until such time as Carrier or the master deems advisable or (d) to substitute another vessel or to transship or forward the goods, or any part thereof, by any means, but always at the risk and expense of the goods. Any disposition of the goods pursuant to this clause shall constitute complete performance of this contract by Carrier who shall be free of further responsibility. For any and all service rendered as herein provided, Carrier shall be entitled to reasonable extra compensation and shall have a lien on the goods.

Goods shut out or not loaded on a vessel for any reason can be forwarded on a subsequent vessel or by feeder-ships, lighters, aircraft, trucks, trains or other means in addition to the ocean vessel or its substitute to accomplish the carriage herein.

5. GOVERNMENTAL ORDERS. Carrier or the master shall have liberty to comply with any orders, directions, regulations, requests or suggestions given by or received from the government of any nation or by any person purporting to act with the authority of such government. Any disposition of the goods pursuant to this clause shall constitute completion of the contract of carriage by Carrier, and the goods thereafter shall be solely at their own risk and expense.

6. PACKING OF CONTAINERS-SHIPPER'S GUARANTY-INDEMNITY. Carrier shall not be responsible for the safe and proper

stowing of cargo in containers if such containers are packed by the Shipper or Shipper's agent and no responsibility shall attach to Carrier for any loss or damage caused to contents by shifting, overloading, or failure to label or properly chock, lash or pack the goods in the container or within their individual packages. The Shipper or Shipper's agent shall properly seal containers loaded by them. The Shipper or its agent, shall carefully inspect and clean containers, if necessary, before packing them. Acceptance and packing of the containers shall be prima facie evidence that the containers were sound, clean and suitable for use and shall relieve Carrier of responsibility for any damage to goods carried resulting from the condition of the container used. "Containers" as used herein include all types of containers for dry, liquid, and perishable cargo, as well as vans and trailers.

The Shipper, Consignee, holder thereof and owner of the goods agree to be liable for and shall hold harmless and indemnify Carrier for any injury, loss or damage, including fines, penalties and reasonable attorney's fees arising from the Shipper's failure to properly describe, label, stow or secure the goods in containers or to clean containers and also for damage or expense caused by the goods to the containers, other property, or for injury or death to persons.

7.  PERISHABLE GOODS.  Goods or foods of a perishable nature will be carried in ordinary containers, vans or trailers and without special protective services unless there is noted on the face of the Bill of Lading that such perishable goods will be carried in a refrigerated, heated, specially ventilated or otherwise specially equipped container, van or trailer in accordance with protective services and charges offered in Carrier's tariff.

The Shipper, Consignee, holder thereof and owner of the goods agree to be responsible for the operation of temperature controlled equipment, including maintenance and repair during all times before containers, vans or trailers are delivered to Carrier at the Port of Loading and after delivery by Carrier at the Port of Discharge.

When a loaded container, van or trailer is received, Carrier will set the thermostatic controls to maintain air temperature in the container to within a range of plus or minus 5 Degrees Fahrenheit of the temperature requested by the Shipper on the face hereof.

8.  LIVE ANIMALS.  Live Animals, Birds, and Fish are received, kept and carried solely at Shipper's risk of accident, disease or mortality and without warranty or undertaking whatsoever by Carrier.

9.  STOWAGE ON DECK.  Goods stowed in any covered-in-space or loaded in a container, van or trailer carried on deck shall be deemed to be stowed under deck for all purposes, including General Average and the Carriage of

Goods by Sea Act, the Hague Rules or other compulsorily applicable legislation.

10. TRANSSHIPMENT. If the goods are destined for a port or destination not served by Carrier or other Carriers serving through routes, then the goods will be transshipped or forwarded at the Port of Discharge served by Carrier(s) vessel(s), or other mode of transport in such case. Carrier or Participating Carriers will have no further duty or responsibility whatsoever as Carrier, this Bill of Lading operating only as a document of title thereafter.

11. DELIVERY AND STORAGE. Except at ports where Carrier delivers goods directly to the Consignee, delivery shall take place and Carrier shall have no further responsibility when the goods are landed upon a safe dock, lighter or other craft and custody is taken by port or government authorities, terminal operator or lighterman. At ports where Carrier delivers goods to Consignee if the Consignee does not take delivery as soon as the goods are ready, the goods shall thereafter be at their own risk and expense. Carrier shall have the right but not the duty to store containers in the open before loading or after discharge.

12. EXPENSES, FINES. The Shipper and Consignee shall be liable for, and shall indemnify Carrier and vessel and hold them harmless against and Carrier shall have a lien on the goods for all expenses and charges of mending, coopering, repairing, fumigating, devanning, restowing, storing or reconditioning, and all expenses incurred for the benefit or protection of the goods, also for any payment, duty, fine or other expenses, including but not limited to court costs, expenses, and other reasonable attorney's fees incurred or levied upon Carrier or the vessel in connection with the goods because of Shipper's failure to comply with any laws or regulations.

13. FREIGHT, LIENS, QUANTITY. Freight shall be payable at Carrier's option on gross weight, measurement ton, or on value as set forth in Carrier's tariff. Carrier shall have the right, but not the duty, to open packages or containers and, if Shipper's particulars are found to be erroneous, the Shipper, Consignee and the goods shall be liable for the correct freight charge and any expenses incurred in examining, weighing, measuring or valuing the goods.

Full freight to the Port of Discharge named on the face of this document and all Advance Charges against the goods shall be considered completely earned on receipt of the goods by Carrier, even though the vessel or goods are damaged or lost or the voyage is frustrated or abandoned.

All sums payable to Carrier are due when incurred and shall be paid in full in United States Currency or at Carrier's option, in its equivalent in the currency of the Port of Loading or the Ports of Discharge, or as

specified in tariffs or conference agreements.

The Shipper, Consignee, holder hereof, and owners of the goods shall be jointly and severally liable to Carrier for the payment of all freight, demurrage, General Average and other charges, including but not limited to court costs, expenses and reasonable attorneys fees incurred in collecting sums due Carrier. Payment of ocean freight and charges to a Freight Forwarder, Broker or anyone other than Carrier or its authorized agent, shall not be deemed payment to the Carrier and shall be made at payors sole risk.

Carrier shall have a lien on the goods which shall survive delivery for all charges due and may without notice, enforce this lien by public or private sale of the goods and other property belonging to the Shipper, Consignee, holder hereof or owner of the goods, which may be in Carrier's possession.

14. BOTH TO BLAME COLLISIONS. If the vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, manner, pilot or of the servants of Carrier in the navigation or in the management of the vessel, the owners of the goods carried hereunder will indemnify Carrier against all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of or damage to or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set-off, recouped or recovered by the other or non-carrying ship or her owner's as part of their claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to the colliding ships or objects are at fault in respect of a collision, contact, stranding or other accident.

15. GENERAL AVERAGE. General Average shall be adjusted, stated and settled according to York Antwerp Rules 1974, except Rule XXII thereof at the place selected by Carrier, and as to matters not provided for by these Rules, according to the laws and usage at the Port of New York. Average agreement or bond and such additional security as may be required by Carrier must be furnished before delivery of the goods.

In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, Carrier is not responsible by statute, contract or otherwise, the goods, the Shipper and the Consignee shall contribute with Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred

and shall pay salvage and special charges incurred in respect of goods. If a salvaging ship is owned or operated by Carrier, salvage shall be paid for as fully and in the same manner as if the salvaging ship belonged to strangers. Cargo shall pay its contribution to General Average even when such average is the result of fault, neglect or error of the master, pilot or crew. The Shippers and Consignees expressly renounce all codes, statutes, laws or regulations which might otherwise apply.

16. FIRE. Carrier shall not be liable for any loss or damage to goods occurring at any time, even though before loading on or after discharge from the vessel, by reasons or by means of any fire whatsoever, unless such fire shall be caused by the actual fault or privity of Carrier.

17. VALUATION. In the event of loss, damage or delay to or in connection with goods exceeding in actual value the equivalent of $500 in lawful money of the United States, per package, or in case of goods not shipped in packages, per shipping unit the value of the goods shall be deemed to be $500 per package or unit, unless the nature and higher value of goods have been declared by the Shipper herein and extra charges paid as provided in Carrier's tariff. However, Carrier's liability shall not exceed the invoice value of the goods. The word "package" shall, in addition to its regular use, also include a container used to ship either Household Goods, Freight, All Kinds, or any other goods shipped under a Lump Sum rate, a Liquid Tank or Dry Bulk Container, Van or Reefer Trailer Cargo shipped on a skid, cradle, pallet or unitized load, group or assemblage, and any container used to ship goods which are not specifically described in the Bill of Lading as goods shipped in packages. When the U.S. Carriage of Goods by Sea Act does not apply of its own force, any compulsorily applicable limitation lower than the $500 limitation shall apply in place of the $500 limitation.

In no event shall the Carrier be liable for more than the damage actually sustained by the Cargo. Carrier shall not be liable for any consequential or special damages, and shall have the option of replacing and/or repairing any damaged goods.

18. NOTICE OF CLAIM-TIME FOR SUIT-JURISDICTION. Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agent at the Port of Discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by Carrier of the goods as described in the Bill of Lading. In the case of General Cargo which is not perishable, if the loss or damage is not apparent, notice must be given within twenty-four hours after the loss or damgage becomes apparent, but must be given no later than seventy-two hours after delivery. In the

case of Perishable Goods, notice must in all cases be given no later than twenty-four hours after delivery.

Carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered. Suit shall not be deemed brought against Carrier or vessel until jurisdiction shall have been obtained over Carrier or the vessel or both by service of process thereon.

19.  FINAL AGREEMENT.  All prior agreements, dock receipts or freight engagements for the shipment of the goods and all other arrangements are superseded by this Bill of Lading and Freight Tariff Rules and Regulations on file with the Federal Maritime Commission and Interstate Commerce Commission in the case of through transportation, which are incorporated herein by reference and form part of this Bill of Lading as set forth herein at length.  Copies of the Freight Tariff Rules and Regulations are available upon request.

20.  SHIPPER'S WARRANTIES.  The Shipper warrants that he is the owner of and entitled to possession of the goods or has the authority of the owner and all persons entitled to possession of the goods to agree to the terms hereof.

21.  THROUGH AND ON BOARD BILLS OF LADING.  When used in or endorsed on this Bill of Lading, the words "ON BOARD" shall mean on board the exporting vessel or on board another mode of transportation operated by or on behalf of the Originating Carrier and enroute to the Port of Loading for loading aboard the Participating Carrier's ship.

This Bill of Lading shall have effect while the containers, goods and packages are in the custody of the vessel or Carrier, its agents, its servants and its independent contractors.  In the case of through transportation subject to this bill, the care, custody, and carriage of the containers, goods and packages during any period in which a Participating Carrier or its contract or agent is in possession of the goods shall be the sole responsibility of the Participating Carrier and shall be subject to the terms and conditions of the Bill of Lading or other transportation contract of the Participating Carrier and to all applicable government laws and regulations governing the operations and liability of the Participating Carrier, shall not be liable in any capacity whatsoever for any delay, non-delivery or misdelivery or any loss or damage occurring while the goods are not in its actual custody.  If loss or damage occurs after receipt of the goods as acknowledged by this Bill of Lading, the liability therefore, if any, shall be that of Carrier the extent caused by Carrier and shall be that of a Participating Carrier to the extent caused by

such Participating Carrier. Copies of Participating Carrier's Bill of Lading Forms are available from such Carrier or its agents on request. At all times when goods are in the care, custody or control of a Participating Land Carrier, such Carrier shall be entitled to all rights, privileges, liens, limitations of and exonerations from liability, optional or discretionary rights, or rights of indemnity granted to any Carrier hereunder to the full extent permitted to Participating Carriers under any rules and regulations and laws relating to Carriers.

22. CLAIMS. Claims for physical loss of or damage to the goods may be filed against Carrier which agrees to process said claims to conclusion. It is agreed that in the event of payment of any such claims by Carrier or its agent, it shall automatically be subrogated to all the rights of the Shipper or Consignee against all others, including Participating Carriers, on account of such loss or damage. Claims must be filed and suit commenced within the time limits provided by law and the terms of the Bill of Lading and tariff of the Carrier which had, or is deemed in accordance with the paragraph to have had, custody of the goods when the loss or damage occurred. When the loss or damage occurs during Carrier custody or control but it cannot be established which Carrier hereunder had custody or control of the goods at the time of loss or damage, it shall be deemed, as between the Shipper or Consignee and any Carrier hereunder, that the loss or damage occurred aboard the ship while in custody or control of Carrier.

***** End of Report *****

# EXHIBIT B

Page 2 For Port to Port Shipment or combined Transp[illegible]hipment - Please refer to revers side or to www.owl.biz or to your l[illegible]t for terms and conditions

# OCEAN WORLD LINES INC.

BILL OF LADING

| | |
|---|---|
| Shipper / Exporter (2)<br>White Horse Machinery Limited,<br>Oaktree Business Park,<br>Limewood Court<br>Leeds LS14 1NF | Booking No. (5)<br>OWLUHA6S060150NY<br>Export References (6)<br>Forwarding Agent - F.M.C. No (7) (Complete Name and Address) |
| Consignee (3) (Complete Name and Address)<br>Issued to Shipper Order | Point and Country of Origin (8) |
| Notify Party / Address (It is agreed that no responsibility shall attach to the Carrier or his Agent for failure to notify - see clause 22 (1) hereof)<br>Pastore Printing Services Inc.,<br>59 Fountain Street,<br>Framingham,<br>MA 01702<br>Attn: Tony Pastore * | Also Notify - Routing and Instructions (9) |

| Pre-Carriage by *(12) (1) | Place of Receipt by Pre-Carrier *(13) (1) | Contact for Cargo Release |
|---|---|---|
| Vessel Voyage No Flag (14) (1)<br>YM Milano / 092W | Port of Loading (15) (10) (1)<br>Bremerhaven | Ocean World Lines, Inc.<br>1981 Marcus Avenue, Suite E100<br>Lake Success, NY 11042 (USA) |
| Port of Discharge (16) (1)<br>Norfolk | Place of Delivery by On-Carrier *(17) (1)<br>Bourbon, Indiana | Tel. +1 516 616 2400<br>Fax +1-516 616 2424 |

Particulars furnished by Shipper[primicile@owlusa.com]

| Mrks & Nos / Container Nos (18) | No./Pkgs. (19) | Description of Packages and Goods (20) | Gross Weight (21) | Measurement (22) |
|---|---|---|---|---|
| ✓ YMLU 491 900-0<br>Seal: 499838 | 1x40 | 'Dry Van Container: 6 Packages | 19'400 Kgs | |
| ✓ YMLU 485 710-3<br>Seal: 240641 | 1x40 | 'Dry Van Container: 5 Packages | 19'250 Kgs | |
| ✓ GLDU 411 008-0<br>Seal: 240606 | 1x40 | 'Dry Van Container: 7 Packages | 19'500 Kgs | |
| ✓ YMLU 496949-0<br>Seal: 240685 | 1x40 | 'Dry Van Container: 5 Packages | 19'250 Kgs | |
| | | Further Details see Attachment | | |
| * Tel 508-872-3981 | | | | |

Freight and Charges payable at / by (24)

Excess Valuation: Shipper declared Value U.S.$ not declared
Refer To Paragraph 10 On Reverse Side And To Rule 12 Of Carrier's Tariff

| | Base | Prepayable | Collect |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL | | | |

LAW & JURISDICTION. Whenever the "Carriage of Goods by Sea Act ("COGSA") of the United States of America applies by virtue of paragraph 3, this contract of carriage is to be governed by United States law (exclusive of its choice of law rules) and the United States Federal Court for the Southern District of New York is to have exclusive jurisdiction to hear all disputes hereunder including third party proceedings or those involving several defendants. This clause supersedes any conflicting clause in bills of lading or other documents issued by contractors or sub-contractors of OWL. In all other cases this Bill of Lading shall be governed by the law of the Federal republic of Germany and determined in the Hamburg courts to the exclusion of the jurisdiction of any other place. In case the Carrier intends to sue the Merchant, the Carrier has also the option to file a suit at the Merchant's place of business. With regard to contracts of carriage concluded in France, or entered into with a French port, the court where the Carrier has its principle place of business be also competent in case of "Appel en Garantie" or "Pluralite de Defendeurs" or "Connexite" the parties to this Sea Waybill expressly derogating from articles 100 to 107, 333, 331 to 333, 335 and 337 French Nouveau Code de Procedure Civile.

Received by the Carrier from Shipper in apparent good order and condition (unless noted herein) the total number or quantity of Containers or packages or units indicated, stated by the Shipper to comprise the Goods specified above, for Carriage subject to all the terms hereof (including the terms on the reverse hereof and the terms of the Carriers applicable tariff) from the Place of Receipt or the Port of Loading, whichever is applicable, to the Port of Discharge or the Place of Delivery, whichever is applicable. In accepting this Bill of Lading, the Merchant expressly accepts and agrees to all its terms, conditions and exceptions, whether printed, stamped or written, or otherwise incorporated, of which the Merchant is fully aware notwithstanding the non-signing of the Bill of Lading by the Merchant.
Goods in containers, vans or trailers or portable tanks may be carried on deck at the Carrier's option in accordance with clause 11.

| Number of Original Bills of Lading | Place and Date of Issue |
|---|---|
| 3 / three Original Bills of Lading | Hamburg, Jun. 15, 2006 |

IN WITNESS of the contract herein contained the number of original stated opposite have been issued each one being of the same contents and date, one which being accomplished the other(s) to be void.

COPY

NOT NEGOTIABLE

As Agent for the Carrier

Dated Jun. 15, 2006 B/L No. OWLUHA6S060150NY

HSL 19.06.2006 17:17:46 sk@201 Version 6

(1) Applicable only when this document is used as a combined transport bill of lading, in which case the mention "intended" is deemed to be incorporated in relation to the names of the vessel, the port of loading and the port of discharge.

Gregory - Last page of OWL B...

Sorry
Esq.

ATTACHMENT

DECRIPTION OF GOODS

HEIDELBERG SM102-12P-7S
28X40 12/C OFFSET PRESS EQUIPPED WITH
- PERFECTING 6/6 OR 12/0,ALCOLOR WITH
VARIO,CP2000,CPC42 AUTO REGISTER,
PRESET,CP2000,PRELOADER,CHROME BLANKET
CYLINDER,GRAFIX EXACTRONIC DUO PLYS
POWDER SPRAY,STEEL PLATE IN FEED AND
DELIVERY,TECHNOTRANS COMBINED
REFRIGERATION WITH INK TEMPERATURE
CONTROL,EXTENDED MEMORY,PREPRESS LINK
INTERFACE WITH APPROXIMATELY 130 MM
IMPRESSIONS.
SHIPPING TERMS:FOB ANY
EUROPEAN PORT
(HS 84431910)
ISSUING BANK'S REFERENCE
NUMBER 94022962

FREIGHT COLLECT
FOB AND FREIGHT CHARGES
TO BE PAID BY PASTORE
PRINTING SERVICES,INC.

FINAL DESTINATION HARMONY
LEASING CORP.,115 N MAIN
STREET,BOURBON,INDIANA
46504.

SHIPPED ON BOARD
YM MILANO
15 JUNE 2006
FROM BREMERHAVEN

(SHIPPER'S LOAD,
STOWAGE AND COUNT)

FCL/FCL

# Ocean World ´ ´nes (OWL)

1981 Marcus Avenue
Lake Success, NY 11042

Page 1

**1. DEFINITIONS.**

"Ocean World Lines, Inc." or "OWL" is the name of the carrier.

"Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this Bill of Lading.

"Carrier" means Ocean World Lines, Inc or OWL. "COGSA" means the U.S. Carriage of Goods by Sea Act 1936 as amended.

"Container" includes any container (including an open top Container) flat rack, platform trailer, transportable tank, pallet, or any other device used for the transportation of goods.

"Goods" means the cargo accepted from the Shipper and includes any Container not supplied by or on behalf of OWL. "Freight" includes all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading.

"Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25 August 1924, without the amendments by the Protocol signed at Brussels on 23 February 1968.

"Hague-Visby Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August, 1924 and includes the amendments by the Protocol signed at Brussels on 23rd February, 1968, but only if such amendments are compulsorily applicable to this Bill of Lading.

"Holder" means any person for the time being in possession of this Bill of Lading to whom the property in the Goods has passed on or by reason of the consignment of this Bill of Lading or otherwise.

"Merchant" includes the Consignor, Shipper, Holder, Consignee, the receiver of the Goods, any person, including any Corporation or other legal entity, owning or entitled to the possession of the Goods or this Bill of Lading and anyone acting on behalf of such person.

"Package" The word package shall include each container whether container is stuffed and sealed by the Merchant or on his behalf although the Shipper may have furnished in the particulars herein the contents of such sealed container.

"Servants or Agents" includes the Master, Officer and crew of the vessel, owners and operators of vessels (other than the Carrier), underlying carriers (including ocean common carriers with whom OWL has contracted for the physical transportation of the goods), sub-contractors, stevedores, terminal and groupage operators, road and rail transport operators and any independent contractors employed by the Carrier in the performance of the Carriage.

"Shipper" includes the person entering into this contract of carriage with the Carrier and for whose account the Goods are shipped.

"The Internal Law of a State" shall be deemed to exclude all principles of private international law applied by such state.

**2. CARRIER'S TARIFF.**

The terms of the carrier's applicable Tariff are incorporated herein. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between the Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail except that the applicable Tariff shall govern as to freight.

**3. VALIDITY.**

The terms and conditions of the Bill of Lading shall be severable. If any term or condition is invalid or unenforceable, and if any breach of or deviation from any provision occurs, such circumstance shall not affect the validity or enforceability of the remaining terms and conditions.

**4. SHIPPERS' RESPONSIBILITY.**

(A) Description of the Goods. (1) Unless the Goods have been stuffed into the Container(s) by or on behalf of the Carrier, this Bill of Lading shall be prima facie evidence of the receipt by the Carrier from the Shipper in apparent good order and condition, except as otherwise noted on the face hereof, of the total number of Containers indicated in the box on the face hereof entitled "no. of pkgs." (2) Any references to letters of credit, import licenses, sales contracts, invoices or order number and/or details of any contract to which the Carrier is not a party when shown on the face of this Bill of Lading are included solely at the request of the Merchant for his convenience and the Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value nor shall they increase the Carrier's liability under this Bill of Lading. The merchant further agrees to indemnify the Carrier against all consequences including such particulars in this Bill of Lading. (3) The Merchant warrants that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and those particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Merchant also warrants that the Goods are lawful Goods and contain no contraband. (4) The Merchant acknowledges and agrees that for shipments destined to the United States, regulations issued by the United States require that the Carrier provide full particulars of the shipment to U.S. Customs authorities twenty four hours prior to loading the Goods onto a vessel. The Merchant further acknowledges and agrees that any delay by it in providing said particulars to the Carrier could cause delays to the Goods upon arrival at a U.S. port and the Merchant hereby agrees to indemnify and hold the Carrier harmless for any delays to the Goods arising out of the failure to provide the information required by the Carrier in a timely manner including full responsibility and liability for any fines and penalties issued to the Carrier arising out of the delayed or inaccurate transmission of such information or for any liability incurred to vessel operating common carriers arising out of the delayed receipt of said information.

(B) The Merchant warrants that in agreeing to the terms and conditions hereof he is, or has the authority of, the Person owning or entitled to the possession of the Goods and this Bill of Lading. When containers, vans, skids, trailers, portable tanks, palletized units, and other cargo units are not packed or loaded by the Carrier, the Carrier does not represent to be accurate and is not bound by any description of the value, quantity, weight, condition or existence of the contents thereof as furnished by or on behalf of Shipper or identified in this bill of lading by use of the phrase "said to contain", "shipper's weight load and count" or terms of like meaning, and the Carrier in such case shall not be liable for any difference in value, quantity, weight or condition of the Goods furnished by or on behalf of the Shipper and that of the Goods actually delivered. The Carrier shall have no responsibility or liability whatsoever for the packing, loading, securing, shoring and/or stowage of contents of such cargo units, or for loss or damage caused thereby or resulting therefrom. The Merchant, with respect to cargo units not packed or laded by Carrier, represents and warrants: (a) that the Goods are properly described, marked, secured, and packed in their respective cargo units; (b) that any cargo units other than Carrier-furnished units are seaworthy and physically suitable, sound, and structurally adequate properly to contain and support the Goods during handling and the transportation contemplated by the Bill of Lading, and that such cargo-units may be handled in the usual and customary manner without damage to themselves, or to their contents, or to the Vessel or its other cargo, or property, or persons; (c) that all particulars with regard to the cargo units and their contents, and the weight of each said cargo unit, are in all respects correct; and (d) that such units are in compliance with all applicable government regulations. Shipper and Consignee, jointly and severally, agree to indemnify Carrier and to hold it harmless in respect of any injury or death of any person, or any loss or damage to cargo or any other property or to the Vessel or any other vessel, or any other loss or expense, including, but not limited to, lost profits and attorneys' fees, caused by breach or any of the foregoing representations or warranties.

The Merchant shall comply with all regulations or requirements of Customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts expenses, or losses incurred or suffered by the Carrier by reason thereof or by reason of any illegal, incorrect, or insufficient marking, numbering, or addressing of the Goods or any other illegal act and shall indemnify the Carrier in respect thereof by reason of any failure to so comply.

Whenever a Shipper or Consignee, or an agent or contractor acting on behalf of either of them, shall take possession of Carrier's container equipment, the Shipper or Consignee in possession, or for the benefit of whom an agent or contractor has taken possession, shall defend indemnify and hold harmless the Carrier from and against any loss or damage to Carrier's equipment and third party property and injury to or death of persons arising out of the use of said equipment.

**5. CARRIER'S RESPONSIBILITY AND CLAUSE PARAMOUNT.**

A) Port to Port Transport

If carriage is Port to Port Transport or if the place of receipt or place of delivery is not known, the responsibility (if any) of the Carrier for loss or damage to the Goods occurring from the time when the Goods are loaded on board the Vessel at the Port of Loading until the time when the Goods are discharged from the Vessel at the Port of Discharge shall be determined in accordance with the provisions of Clause 5(B)-(D).

The Carrier shall be under no liability whatsoever for loss or damage to the Goods or non-delivery or misdelivery howsoever caused if such loss or damage, non-delivery or misdelivery arises prior to loading onto or subsequent to discharge from the Vessel. Notwithstanding the above, in case and to the extent that any applicable law provides for any additional period of responsibility the Carrier shall have the benefit of every right, defense, limitation and liberty of the Hague Rules during such additional compulsory period of responsibility notwithstanding that the loss or damage did not occur at sea.

(B) Combined Transport

If carriage is Combined Transport then the Carrier undertakes to perform and/or in its own name to procure performance of the carriage from the Place of Receipt or the Port of Loading whichever is applicable to the Place of Delivery or the Port of Discharge whichever is applicable and, save as is otherwise provided for in this Bill of Lading, the Carrier's liability for loss or damage to the Goods shall be as follows -

1. If the stage of carriage where loss or damage occurred is not known

(a) Exclusions If the stage of the carriage where the loss or damage to the Goods is not known then the Carrier shall be liable for loss and damage to the Goods save that the Carrier shall be relieved from liability for any loss or damage to the extent that such loss or damage was caused by (i) An act or omission of the Merchant, (ii) Insufficiency or defective condition of packing or marking; (iii) Compliance with the instructions of persons entitled to give them;

(iv) Handling, loading, stowage or unloading of the Goods by the Merchant; (v) Inherent vice of the Goods; (vi) Strike, lockout, stoppage or restraint of labor from whatever cause whether partial or general; (vii) A nuclear incident; (viii) Any cause or event which the Carrier could not avoid and the consequence of which he could not prevent by the exercise of reasonable diligence.

(b) Burden of Proof The burden of proving that any loss or damage was caused by one or more of the events mentioned in Clauses 5(B)(1)(a)(i) to (viii) shall rest upon the Carrier save that when the Carrier is able to demonstrate that, in the circumstances of the case, the loss or damage could be attributed to one or more of the events specified in Clauses 5(B)(1)(a)(i) to (vii) then it shall be presumed that it was so caused and in such circumstances the burden of proof shall be on the Merchant to prove that the loss or damage was not caused wholly or partly by one or more of these events.

(c) Limitation If the Carrier is liable for loss or damage to the Goods then the amount of compensation shall be calculated by reference to the invoice value of the Goods plus freight and insurance (if paid).

The Carrier's maximum liability hereunder shall in no circumstances exceed US$2 per kilo of gross weight of the Goods lost or damaged unless the value of the Goods has been declared by the Merchant with the consent of the Carrier and excess freight has been paid whereupon the declared value (if higher) as shown on the face of the Bill of Lading shall be substituted for the above limit and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

2. If the stage of carriage during which loss or damage occurred is known Notwithstanding anything provided for in Clause 5(B)(1) if the stage of the carriage where loss or damage to the Goods is known then subject to the operation of Clause 5(C) which shall apply where loss or damage occurs to the Goods from the time when the Goods are loaded on board the Vessel at the Port of Loading until the time when the Goods are discharged from the Vessel at the Port of Discharge the Carriers liability in respect of any such loss or damage occurring shall be determined as follows -

(a) By the provisions contained in any international convention or national law which provisions cannot be departed from by private contract to the detriment of the Merchant, and would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of the carriage where the loss or damage occurred and received as evidence thereof any particular document which must be issued in order to make such international Convention or national law applicable, or

(b) If no international convention or national law is applicable then the liability of the Carrier shall be determined pursuant to the provisions of Clause 5(B)(1)

(c) Subject to Clause 5(B)(2)(a) if loss or damage to the Goods is known to have occurred during a period when the Goods were in the custody of a Participating Carrier then the Carrier shall have the benefit of any and all rights, defenses, exemptions, limitations and immunities contained in or incorporated by or compulsorily applicable to the Participating Carrier's tariff(s) or contract(s) with the Carrier (in addition to all of the rights, defenses, exemptions, limitations and immunities contained in this Bill of Lading and the Carrier's tariff) and for this purpose such benefit, rights, defenses, exemptions, limitations and immunities shall be deemed to be incorporated herein, and copies are obtainable from the Carrier upon request.

(C) Clause Paramount

All carriage under this Bill of Lading (whether electronically produced or not) shall have effect subject to any legislation enacted in any country making the Hague or Hague-Visby Rules compulsorily applicable and in the absence of any such legislation in accordance with the Hague Rules or COGSA in the case of carriage to or from the United States of America. In circumstances where the Hague Rules are not compulsorily applicable but are contractually applicable then subject to Clause 10 (ad valorem declaration) the Carrier's responsibility shall in no event exceed GBP100 per package or customary freight unit.

If any terms of this Bill of Lading are held repugnant to the Hague Rules, Hague-Visby Rules, COGSA or any other compulsorily applicable legislation then such provision shall be null and void to the extent of such invalidity without invalidating the remaining provisions hereof.

References in the Hague, Hague-Visby Rules, or COGSA to carriage by sea shall be deemed to include references to inland waterways or waterborne carriage.

(D) USA Clause Paramount (if applicable)

1. If carriage includes carriage to, from or through a port in the United States of America this Bill of Lading shall be subject to COGSA, the terms of which are incorporated herein and shall be paramount throughout carriage by sea and the entire time that the Goods are in the actual custody of the Carrier or its sub-contractor at the sea-terminal in the United States of America before loading onto the Vessel or after discharge therefrom as the case may be. COGSA shall be extended to apply to all Goods before the Goods are loaded on and after they are discharged from the Vessel and throughout the entire time during which the Carrier is responsible for the goods under the Bill of Lading.

2. The Carrier shall not be liable in any capacity whatsoever for loss or delay to the Goods or non-delivery or misdelivery howsoever caused while the Goods are in the United States of America away from the sea-terminal and are not in the actual custody of the Carrier. At these times the Carrier acts as agent only for and on behalf of the Merchant and agrees to procure transportation of the Goods in accordance with the usual terms, conditions and tariff(s) of Participating Carriers. If for any reason the Carrier is denied the right to act as agent only at these times, its liability for loss and damage to the Goods or non-delivery or misdelivery thereof shall be determined in accordance with Clause 5(B) hereof.

3. If COGSA applies then the liability of the Carrier shall not exceed US$500 per package or customary freight unit unless the value of the Goods has been declared on the face hereof with the consent of the Carrier and extra freight has been paid in which case Clause 10 shall apply and the declared value (if higher) shall be substituted for the limit and any partial loss or damage shall be adjusted pro-rata on the basis of such declared value. Further, the Carrier shall in no circumstances be liable for direct, indirect, or consequential loss or damage, including lost profits or loss of market. Further, any statement that iron or steel goods of any sort or description have been shipped in good order and condition does not amount to acceptance that said products are free from rust, for which the Carrier accepts no responsibility.

4. Except as provided herein in Clauses 5(D)(1) and (2), and where COGSA does not apply by operation of law, Carrier's liability will be governed by COGSA unless its liability under some other body of law applicable to the particular stage of the transport where the loss occurred is more favorable to the Carrier (with regards to defenses and limitations), in which case that other body of law will apply.

**6. AMOUNT OF COMPENSATION.**

(1) For shipments to or from ports in the United States of America neither the Carrier nor the Ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of Goods in an amount exceeding U.S.$ 500.00 per package lawful money of the United States of America, or in the case of Goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such Goods have been declared by the Shipper in accordance with the terms set out in Paragraph 10 and inserted on the reverse side of this Bill of Lading and extra freight paid.

(2) Where the Hague Rules apply hereunder the Carrier's maximum liability shall in no event exceed GBP 100.00 lawful money of the United Kingdom per package or unit, unless the nature or value of such Goods have been declared by the Shipper before shipment and inserted on the reverse side of this Bill of Lading and extra freight paid.

(a) Subject to the limitations contained herein, when the Carrier is liable for compensation in respect of loss of or damage to Goods, such compensation shall be calculated by reference to the invoice value of the Goods plus freight charges and insurance if paid.

(b) If there is no invoice value of the Goods, such compensation shall be calculated by reference to the value of such Goods at the place and time they are delivered to the Merchant in accordance with the contract or should have been so delivered. The value of the Goods shall be fixed according to the current market price, or, if there be no commodity exchange price or current market price, by reference to the normal value of goods of the same kind and quality.

(c) Compensation shall not, however, exceed U.S.$ 2.00 per kilo of gross weight of the Goods lost or damaged.

(d) Higher compensation may be claimed only when, with the written consent of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier exceeds the limits laid down in this paragraph and has been stated in this Bill of Lading. In that case, the amount of the declared value shall be substituted for that limit. Any partial loss or damage shall be adjusted pro rata based on such declared value.

**7. SUB-CONTRACTING.**

Because the Carrier requires the assistance of others to perform the services undertaken under this Bill of Lading as well as transportation agreements between Carrier and others, every servant, agent, stevedore, terminal services contractor, lighter operator, pilot, connecting rail, motor, water or air carrier or other independent contractor, including their agents, servants and subcontractors, performing such services shall have the benefit of every exemption from and limitation of liability, defense, right and liberty to which the Carrier is entitled under any provision of this Bill of Lading or by applicable law provided however that any such Servant or Agent that takes, accedes, or asserts the benefit of this provision by such action consents to the law and jurisdiction provisions of this bill of lading and in so doing expressly waives any law, forum, and jurisdiction provisions in any underlying agreement, including bill of ladings or service contracts, between itself and the Carrier. For purposes of the foregoing provision, the Carrier shall be deemed to be the agent or trustee for the benefit of all such persons and all such persons shall be deemed to be parties to the contract of carriage evidenced hereby to that extent. The Shipper and Consignee undertake not to sue or proceed against any such persons. In the event either of them does so, it shall indemnify the Carrier against all resulting loss, liability, and expense, including attorneys' fees.

**8. FREIGHT.**

a. Full freight shall be payable at Carrier's option on gross weight measurement, or value as set forth in Carrier's tariff, based on shipper's particulars for the Goods. Carrier shall have the right, but not the duty, to open packages or containers and, if shipper's particulars are found to be erroneous, the shipper, consignee, and the Goods shall be liable for the correct freight charge and any expenses incurred in examining weighing, measuring, or valuing the cargo.

b. Full freight to the port of discharge named on the face of this document and Carrier shall consider all advanced charges against the Goods completely earned on receipt of the goods even though the Vessel, or other means of transport, or the Goods, are damaged or lost, or the voyage is frustrated or abandoned.

c. All sums payable to the Carrier are due on demand and shall be paid in full in United States currency, or, at Carrier's option, in its equivalent in the currency of the port of loading or the port of discharge, or as specified in the Carrier's tariff.

d. The Shipper, Consignee, Holder hereof, and owner of the goods, and their principals, shall be jointly and severally liable to Carrier for the payment of all freight, demurrage, General Average, and other charges due hereunder, without discount or set-off, together with any Court costs, expenses and reasonable attorney fees incurred in collecting any sums due Carrier. Payment of ocean freight and charges to a freight forwarder, broker, or anyone other than Carrier or its authorized agents shall not be deemed payment to Carrier and shall be made at payor's sole risk. The Merchant shall remain liable for all charges hereunder notwithstanding any extension of credit to the shipper, freight forwarder, or broker by Carrier.

**9. LIEN.**

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the carrier under this contract and/or any other contract and for general average contributions, to whomever due. The Carrier shall also have a lien against the Merchant on Goods and any documents relating thereto for all sums due from him to the Carrier under any other contract between the Merchant and the Carrier. In any event any lien shall extend to cover the cost of recovering the sums due, including reasonable attorneys' fees and expenses, and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty, without notice to the Merchant.

**10. AGREED AD VALOREM VALUE.**

The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and that higher compensation than that provided under this contract of carriage may not be claimed unless the value of the Goods are declared by the Shipper on the face of this Bill of Lading prior to the commencement of the carriage and extra freight paid, as set out in carrier's applicable tariff, in which case the amount of the declared value shall be substituted for the limits otherwise laid down herein. Any partial loss or damage shall be adjusted pro rata based on such declared value.

**11. UNDER DECK AND ON DECK STOWAGE.**

The Carrier has the right to carry Goods in containers, vans, trailers, and portable tanks under deck or on deck. When such Goods are carried on deck, the Carrier shall not be required to specially note, mark or stamp any statements of "on deck" carriage on the face of this bill of lading nor to give notice thereof to the Shipper or Consignee. In respect of Goods in containers, vans, trailers or portable tanks carried on deck, the Carrier shall not be liable for loss or damage caused by water deterioration or other perils incident to such on deck carriage. In respect of Goods not in containers, vans, trailers or tanks carried on deck under the Bill of Lading, the Carrier shall so state such carriage on the front side hereof, and all risk of loss or damage by water deterioration and other perils incident to such carriage shall be borne exclusively by the Goods and anyone having an interest therein.

**12. SPECIAL STOWAGE; REFRIGERATION.**

Goods will not be provided temperature controlled, insulated or naturally ventilated stowage unless the Carrier has undertaken such special stowage in advance of the Carrier's receipt of the Goods, and in the absence of such agreement, the Shipper and Consignee warrant that the Goods do not require such protection. The Carrier does not provide mechanically ventilated stowage, and does not furnish or maintain preservative gases in connection with temperature controlled stowage and the Carrier assumes no responsibility for loss or damage to Goods arising in whole or in part from any such lack of stowage. The Carrier shall not be liable for any loss of or damage to the Goods arising from latent defects, breakdown or stoppage of the refrigerating machinery, plant, insulation, or of any apparatus of the container, vessel, conveyance of other facilities, unless the Carrier shall, before or at the beginning of the transport, have failed to exercise due diligence to maintain any such equipment (other than shipper-provided equipment) in an efficient state. If the Goods have been packed into a refrigerated container, by or on behalf of the Shipper, it is the obligation of the Shipper to stow the contents properly and set the thermostatic controls exactly; and the Carrier shall not be liable for any loss of or damage to the Goods arising out of or resulting from the Shipper's failure in such obligations. If the Carrier has packed the Goods into a refrigerated container, and a temperature or temperature range has been disclosed to the Carrier by the Shipper or its authorized representative, Carrier will set the thermostatic control accordingly. With respect to both Carrier- and Shipper- packed containers, where Carrier has undertaken, by special agreement, to carry the Goods at a particular temperature or temperature range, the Carrier undertakes only that the refrigeration equipment shall perform within the operating specifications of the equipment and makes no warranty or agreement with respect to the actual temperature of and commodity, fruit, vegetable, meat fish, or any perishable Goods within the container.

**13. RECONDITIONING, ETC.**

In the event that Carrier must perform reconditioning, cooperage or restowage of the Goods for the safety of persons or of the Goods or other property or to bring the goods into conformance with applicable law, Carrier shall be reimbursed at accessorial labor and equipment rental rates named in any applicable tariff or, if no such rates apply, at 120% of Carrier's costs of performing such work.

**14. TRANSSHIPMENT; SUBSTITUTION OF VESSEL.**

Whether or not the Goods are consigned to a port or point where the Vessel does not discharge, the Carrier may, without notice, transship the whole or any part of the Goods before or after loading at the original port of shipment or any other place or places even though outside the scope of the voyage or the route to or beyond the port of discharge or the destination of the Goods, by any substituted or connecting water carrier's vessel or other means of transportation by water or by land or by air, whether operated by the Carrier or by others.

**15. SUNDRY LIABILITY PROVISIONS; SCHEDULE/DELAY.**

The Carrier does not undertake that the Goods will be transported from or loaded at the place of receiving or loading or will arrive at the place of discharge, destination or transshipment aboard any particular vessel or other conveyance or at any particular date or time or to meet any particular market or in time for any particular use. Scheduled or advertised departure and arrival times are only expected times and may be advanced or delayed if the Carrier or any Connecting Carrier shall find it necessary, prudent or convenient. In no event shall the Carrier be liable for consequential or other damages for delay in the scheduled departures or arrivals of the vessel or other conveyance transporting the Goods or for any other matter. SUPPLY OF CONTAINERS: The Merchant at destination shall have to return all containers not owned by the Merchant to the Carrier duly cleaned and in good condition as deemed delivered to the shipper within the time allowed by the Carrier, failing which the Merchant shall be liable to the Carrier for all costs, fees, cleaning charges, late fees, attorneys fees or any other charge for which the Carrier is held liable including demurrage. Merchant agrees to pay the replacement value of any Container not returned within 30 days of its being available for delivery. JOINT EXAMINATION: Subject to the above provisions, the Merchant and/or his representatives agrees and warrants that it will contact the Carrier for a joint examination before the opening of the container in the case of apparent damage or as soon as such damage has been revealed in the case of non-apparent damage. Loss or damage is deemed apparent when the container is delivered without seal or without the original seal affixed when the Carrier had taken possession of the container.

**16. SCOPE OF VOYAGE; CARRIER'S LIBERTIES.**

The Carrier may call at scheduled ports in or out of the usual order, may provide substituted service by modes other than water as may be provided for by applicable tariffs, may omit scheduled routes or ports, may include unscheduled routes or ports and may lighter the Goods. The Vessel may sail with or without tugs or pilots, undertake rescue or salvage tow or be towed, or undergo dry-docking or repairs. In any situation whatsoever which, in the opinion of the Master or the Carrier gives rise to risk of seizure, detention damage, loss, delay or disadvantage to the Vessel or the Goods, or of materially detaining the equipment of the Carrier or would make it imprudent, unlawful or commercially impracticable to commence or continue the voyage or to enter or discharge the Goods, or any part of them, at any port or place considered by the Carrier to be safe or advisable under the circumstances and forward or arrange to forward the Goods by rail, water, motor vehicle or air, or place the Goods in a storage facility or warehouse, all at the risk and expense of the Goods. The exercise of any of the foregoing liberties by the carrier or the Master shall constitute performance under the Bill of Lading and not a deviation from the scope of the voyage. When the Goods are discharged from the Vessel and delivered to a forwarding agent or carrier or to a warehouse or storage facility under the provisions of this paragraph, or when required to be delivered by local customs authorities under local law, such discharge and delivery shall constitute complete delivery and performance under the Bill of Lading.

**17. DELIVERY UNDER NEGOTIABLE BILLS OF LADING.**

Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder. If the Goods are consigned "to order" on the face hereof, the Goods shall be delivered at the place of delivery upon surrender of the original bill of lading, provided however if the goods are to be transshipped via a connecting carrier to a destination point beyond the place of delivery stated on the face hereof Carrier, may on behalf of the Shipper and Consignee and acting solely as their agent, arrange for such beyond carriage consistent with instructions received from the Shipper or consignee, or the representative of either of them, at the risk and expense of the Goods. In such event, the Carrier may deliver the Goods to the connecting carrier without surrender of the original, properly endorsed bill of lading, unless instructed otherwise, and shall obtain the connecting carrier's acknowledgement that delivery of the Goods shall be made only upon surrender of the Carrier's original properly endorsed bill of lading. This Bill of Lading shall not be a negotiable document of title unless consigned 'to order', 'to the order of' ' or ' to bearer'. If not so consigned but instead consigned directly to a nominated party, this shall be a 'Straight' Bill and, at the sole discretion of the Carrier, delivery may be made to the nominated party only upon proof of identity, as if this Bill of Lading were a Waybill. Such delivery shall constitute due delivery hereunder.

**18. UNDELIVERED GOODS.**

The Merchant shall take delivery of the goods within the time provided for in the Carrier's applicable tariff. If for any reason whatsoever the Merchant refuses or fails to take delivery of the Goods upon their arrival and availability at destination or upon expiration of tariff-prescribed free-time and any notice period as set forth in a notice of arrival, availability or demand given by the Carrier, the Carrier may, without further notice or demand, and in addition to any other legal or equitable remedies, exercise its maritime lien for any charges due at a private or judicial sale of the Goods, or may place the Goods in a storage at the risk and expense of the Goods, subject to a lien in favor of the Carrier for any charges due.

**19. DANGEROUS, HAZARDOUS, OR NOXIOUS CARGO.**

If it appears at any time that any Goods or any part thereof cannot be carried safely, or for Goods of a flammable, explosive, corrosive, radioactive, noxious, hazardous, unstable or dangerous nature shipped without full disclosure in writing to the Carrier as to their nature and character, may at any time before discharge be landed at any place, thrown overboard, destroyed, or rendered innocuous without liability on the part of the Carrier or other Shippers or Consignees, and, even if such disclosure be made, the Carrier may, without incurring any liability make the same disposition of such Goods, if, in the opinion of the Carrier, they shall be or become dangerous or noxious to the Vessel or cargo, or to persons. The Shipper shall indemnify the Carrier for all losses, damages (including, but not limited to, profits and expenses related to the Carrier's inability to use its vessels and equipment), liabilities, fines, civil penalties, and expenses (including attorneys' fees) suffered by the carrier, caused in whole or in part by omission of full disclosure required by this paragraph or by applicable law or regulations or by its failure to properly pack, label, or mark such goods.

**20. GENERAL AVERAGE.**

a. General average is to be adjusted at any port or place at the carrier's option, and to be settled according to the York-Antwerp Rules 1974 as amended 1990, this covering all Goods, whether carried on or under deck.

b. Such security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereof, shall if required, be submitted to the Carrier prior to delivery of the Goods.

**21. BOTH TO BLAME COLLISION**

If the Vessel comes into collision with another vessel as the joint result of the negligence of the other vessel and any act, neglect or default of the master, pilot or member of the crew in the navigation or management of the Vessel, the Shipper or Consignee having beneficial ownership of the Goods shall indemnify the Carrier against all loss or damage to, or any claim whatsoever of, said owner of the Goods, paid or payable by the other or non-carrying vessel or its owners to said owner of the Goods and set-off against, or recouped or recovered from the Vessel or the Carrier by the other vessel or its owners. The foregoing provisions shall also apply where the owners, operators or other persons in charge of any vessel or object other than, or in addition to, the colliding vessels and/or objects are at fault in respect of a collision, allision, stranding or other accident.

**22. WAR RISKS; GOVERNMENTAL ORDERS.**

The Carrier shall have liberty to carry goods declared by any belligerent to be contraband and persons belonging to or intending to join the armed forces or governmental service of any belligerent, to sail armed or unarmed and with or without convoy, and to comply with any orders, requests or directions as to loading, departure, arrival, routes, ports of call, stoppage, discharge, destination, delivery or otherwise, howsoever given by the government of any nation or department thereof, or any person acting or purporting to act with the authority of such government or of any department thereof or by any committee or person having, under the terms of the war risk insurance on the Vessel, the right to give such orders, requests or directions. Delivery or other disposition of the Goods in accordance with such orders, requests or directions shall constitute performance of the Carrier's delivery obligations under the Bill of Lading and all responsibility of the Carrier in whatever capacity shall terminate upon such delivery or other disposition. If by order of any Customs authority at any place, the Goods have to be unpacked from the Containers to be inspected, the Carrier shall not be liable for any loss or damage incurred during such inspection. The Carrier is entitled to recover the costs and fees incurred in unpacking and re-stowing the cargo from the Merchant.

**23. FIRE.**

Neither the Carrier nor its terminal operator or stevedore shall be liable to answer for or make good any loss or damage to goods occurring at any time and even though before loading or after discharge from the vessel by reason or by means of any fire whatsoever, unless such fire shall be caused by their actual fault or privity.

**24. NOTICE OF LOSS, TIME FOR SUIT.**

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agents at the port of discharge or place of delivery as the case may be before or at the time of removal of the Goods into the custody of the Merchant such removal shall be prima facie evidence of the delivery by the Carrier of the Goods as described in this Bill of Lading. If the loss or damage is not apparent, then notice must be given within three days of the delivery. In any event, the Carrier shall be discharged from any liability unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered. If a place of delivery is named on the face hereof any such notice shall also be sent by the Merchant to the last inland carrier before or at the time of removal or within three (3) working days thereafter if the loss or damage is not apparent and in any case a confirmation of such notice shall have to be made to such inland Carrier by registered letter within three working days of the time of delivery, failing which no responsibility shall attach to the carrier.

**25. VARIATION OF THE CONTRACT.**

No servant or agent of the Carrier shall have the power to waive or vary any of the terms of this Bill of Lading, unless such waiver [illegible] writing and is specifically authorized or ratified in writing [illegible] carrier.



# EXHIBIT C





# B/L Terms

Below please find the text of OWL's Bill of Lading used for transportations.

➤ 1. Definitions

"Ocean World Lines, Inc." or "OWL" is the name of the carrier.
"Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this Bill of Lading.
"Carrier" means Ocean World Lines, Inc. or OWL. "COGSA" means the U.S. Carriage of Goods by Sea Act 1936 as amended.
"Container" includes any container (including an open top Container) flat rack, platform trailer, transportable tank, pallet, or any other device used for the transportation of goods.
"Goods" means the cargo accepted from the Shipper and includes any Container not supplied by or on behalf of OWL. "Freight" includes all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading.
"Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25 August 1924, without the amendments by the Protocol signed at Brussels on 23 February 1968.
"Hague-Visby Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August, 1924 and includes the amendments by the Protocol signed at Brussels on 23rd February, 1968, but only if such amendments are compulsorily applicable to this Bill of Lading.
"Holder" means any person for the time being in possession of this Bill of Lading to whom the property in the Goods has passed on or by reason of the consignment of this Bill of Lading or otherwise.
"Merchant" includes the Consignor, Shipper, Holder, Consignee, the receiver of the Goods, any person, including any Corporation or other legal entity, owning or entitled to the possession of the Goods or this Bill of Lading and anyone acting on behalf of such person.
"Package" The word package shall include each container whether container is stuffed and sealed by the Merchant or on his behalf although the Shipper may have furnished in the particulars herein the contents of such sealed container.
"Servants or Agents" includes the Master, Officer and crew of the vessel, owners and operators of vessels (other than the Carrier), underlying carriers (including ocean common carriers with whom OWL has contracted for the physical transportation of the goods), sub-contractors, stevedores, terminal and groupage operators, road and rail transport operators and any independent contractors employed by the Carrier in the performance of the Carriage.
"Shipper" includes the person entering into this contract of carriage with the Carrier and for whose account the Goods are shipped.
"The Internal Law of a State" shall be deemed to exclude all principles of private international law applied by such state.

➤ 2. Carrier's Tariff

The terms of the carrier's applicable Tariff are incorporated herein. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between the Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail except that the applicable Tariff shall govern as to freight.

➤ 3. Validity

The terms and conditions of the Bill of Lading shall be severable. If any term or condition is invalid or unenforceable, and if any breach of or deviation from any provision occurs, such circumstance shall not affect the validity or enforceability of the remaining terms and conditions.

➤ 4. Shipper's Responsibility

➤ (A) Description of the Goods.

➤ (1) Unless the Goods have been stuffed into the Container(s) by or on behalf of the Carrier, this Bill of Lading shall be prima facie evidence of the receipt by the Carrier from the Shipper in apparent good order and condition, except as otherwise noted on the face hereof, of the total number of Containers indicated in the box on the face hereof entitled "no. of pkgs."

➤ (2) Any references to letters of credit, import licenses, sales contracts, invoices or order number and/or details of any contract to which the Carrier is not a party when shown on the face of this Bill of Lading are included solely at the request of the Merchant for his convenience and the Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value nor shall they increase the Carrier's liability under this Bill of Lading. The merchant further agrees to indemnify the Carrier against all consequences including such particulars in this Bill of Lading.

➤ (3) The Merchant warrants that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and those particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Merchant also warrants that the Goods are lawful Goods and contain no contraband.

➤ (4) The Merchant acknowledges and agrees that for shipments destined to the United States, regulations issued by the United States require that the Carrier provide full particulars of the shipment to U.S. Customs authorities twenty four hours prior to loading the Goods onto a vessel. The Merchant further acknowledges and agrees that any delay by it in providing said particulars to the Carrier could cause delays to the Goods upon arrival at a U.S. port and the Merchant hereby agrees to indemnify and hold the Carrier harmless for any delays to the Goods arising out of the failure to provide the information required by the Carrier in a timely manner including full responsibility and liability for any fines and penalties issued to the Carrier arising out of the delayed or inaccurate transmission of such information or for any liability incurred to vessel operating common carriers arising out of the delayed receipt of said information.

➤ (B) The Merchant warrants that in agreeing to the terms and conditions hereof he is, or has the authority of, the Person owning or entitled to the possession of the Goods and this Bill of Lading. When containers, vans, skids, trailers, portable tanks, palletized units, and other cargo units are not packed or loaded by the Carrier, the Carrier does not represent to be accurate and is not bound by any description of the value, quantity, weight, condition or existence of the contents thereof as furnished by or on behalf of Shipper or identified in this bill of lading by use of the phrase "said to contain", "shipper's weight load and count", or terms of like

meaning, and the Carrier in such case shall not be liable for any difference in value, quantity, weight or condition of the Goods furnished by or on behalf of the Shipper and that of the Goods actually delivered. The Carrier shall have no responsibility or liability whatsoever for the packing, loading, securing, shoring and/or stowage of contents of such cargo units, or for loss or damage caused thereby or resulting therefrom. The Merchant, with respect to cargo units not packed or laded by Carrier, represents and warrants:

- (a) that the Goods are properly described, marked, secured, and packed in their respective cargo units;
- (b) that any cargo units other than Carrier-furnished units are seaworthy and physically suitable, sound, and structurally adequate properly to contain and support the Goods during handling and the transportation contemplated by the Bill of Lading, and that such cargo-units may be handled in the usual and customary manner without damage to themselves or to their contents, or to the Vessel or its other cargo, or property, or persons;
- (c) that all particulars with regard to the cargo units and their contents, and the weight of each said cargo unit, are in all respects correct; and
- (d) that such units are in compliance with all applicable government regulations.

Shipper and Consignee, jointly and severally, agree to indemnify Carrier and to hold it harmless in respect of any injury or death of any person, or any loss or damage to cargo or any other property or to the Vessel or any other vessel, or any other loss or expense, including, but not limited to, lost profits and attorneys' fees, caused by breach or any of the foregoing representations or warranties.
The Merchant shall comply with all regulations or requirements of Customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts expenses, or losses incurred or suffered by the Carrier by reason thereof or by reason of any illegal, incorrect, or insufficient marking, numbering, or addressing of the Goods or any other illegal act and shall indemnify the Carrier in respect thereof by reason of any failure to so comply.
Whenever a Shipper or Consignee, or an agent or contractor acting on behalf of either of them, shall take possession of Carrier's container equipment, the Shipper or Consignee in possession, or for the benefit of whom an agent or contractor has taken possession, shall defend, indemnify and hold harmless the Carrier from and against any loss or damage to Carrier's equipment and third party property and injury to or death of persons arising out of the use of said equipment.

- 5. Carrier's Responsibility And Clause Paramount

  - A) Port to Port Transport

    If carriage is Port to Port Transport or if the place of receipt or place of delivery is not known, the responsibility (if any) of the Carrier for loss or damage to the Goods occurring from the time when the Goods are loaded on board the Vessel at the Port of Loading until the time when the Goods are discharged from the Vessel at the Port of Discharge shall be determined in accordance with the provisions of Clause 5(B)-(D).
    The Carrier shall be under no liability whatsoever for loss or damage to the Goods or non-delivery or misdelivery howsoever caused if such loss or damage, non-delivery or misdelivery arises prior to loading onto or subsequent to discharge from the Vessel. Notwithstanding the above, in case and to the extent that any applicable law provides for any additional period of responsibility the Carrier shall have the benefit of every right, defense, limitation and liberty of the Hague Rules during such additional compulsory period of responsibility notwithstanding that the loss or

damage did not occur at sea.

➤ (B) Combined Transport

If carriage is Combined Transport then the Carrier undertakes to perform and/or in its own name to procure performance of the carriage from the Place of Receipt or the Port of Loading whichever is applicable to the Place of Delivery or the Port of Discharge whichever is applicable and, save as is otherwise provided for in this Bill of Lading, the Carrier's liability for loss or damage to the Goods shall be as follows:-

1. If the stage of carriage where loss or damage occurred is not known

(a) Exclusions If the stage of the carriage where the loss or damage to the Goods is not known then the Carrier shall be liable for loss and damage to the Goods save that the Carrier shall be relieved from liability for any loss or damage to the extent that such loss or damage was caused by:(i) An act or omission of the Merchant; (ii) Insufficiency or defective condition of packing or marking; (iii) Compliance with the instructions of persons entitled to give them;

(iv) Handling, loading, stowage or unloading of the Goods by the Merchant; (v) Inherent vice of the Goods; (vi) Strike, lockout, stoppage or restraint of labor from whatever cause whether partial or general; (vii) A nuclear incident; (viii) Any cause or event which the Carrier could no avoid and the consequence of which he could not prevent by the exercise of reasonable diligence.

(b) Burden of Proof The burden of proving that any loss or damage was caused by one or more of the events mentioned in Clauses 5(B)(1)(a)(i) to (viii) shall rest upon the Carrier save that when the Carrier is able to demonstrate that, in the circumstances of the case, the loss or damage could be attributed to one or more of the events specified in Clauses 5(B)(1)(a)(ii) to (vii) then it shall be presumed that it was so caused and in such circumstances the burden of proof shall be on the Merchant to prove that the loss or damage was not caused wholly or partly by one or more of these events.

(c) Limitation If the Carrier is liable for loss or damage to the Goods then the amount of compensation shall be calculated by reference to the invoice value of the Goods plus freight and insurance (if paid).

The Carrier's maximum liability hereunder shall in no circumstances exceed US$2 per kilo of gross weight of the Goods lost or damaged unless the value of the Goods has been declared by the Merchant with the consent of the Carrier and excess freight has been paid whereupon the declared value (if higher) as shown on the face of the Bill of Lading shall be substituted for the above limit and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

2. If the stage of carriage during which loss or damage occurred is known

Notwithstanding anything provided for in Clause 5(B)(1) if the stage of the carriage where loss or damage to the Goods is known then subject to the operation of Clause 5(C) which shall apply where loss or damage occurs to the Goods from the time when the Goods are loaded on board the Vessel at the Port of Loading until the time when the Goods are discharged from the Vessel at the Port of Discharge the Carriers liability in respect of any such loss or damage occurring shall be determined as follows:-

(a) By the provisions contained in any international convention or national law, which provisions cannot be departed from by private contract to the detriment of the Merchant, and would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of the carriage where the loss or damage occurred and received as evidence thereof any particular document which must be issued in order to make such international Convention or national law applicable; or

(b) If no international convention or national law is applicable then the liability of the Carrier shall be determined pursuant to the provisions of Clause 5(B)(1).

(c) Subject to Clause 5(B)(2)(a) if loss or damage to the Goods is known to have occurred during a period when the Goods were in the custody of a

Participating Carrier then the Carrier shall have the benefit of any and all rights, defenses, exemptions, limitations and immunities contained in or incorporated by or compulsorily applicable to the Participating Carrier's tariff(s) or contract(s) with the Carrier (in addition to all of the rights, defenses, exemptions, limitations and immunities contained in this Bill of Lading and the Carrier's tariff) and for this purpose such benefit, rights, defenses, exemptions, limitations and immunities shall be deemed to be incorporated herein, and copies are obtainable from the Carrier upon request.

- (C) Clause Paramount
  All carriage under this Bill of Lading (whether electronically produced or not) shall have effect subject to any legislation enacted in any country making the Hague or Hague-Visby Rules compulsorily applicable and in the absence of any such legislation in accordance with the Hague Rules or COGSA in the case of carriage to or from the United States of America.
  In circumstances where the Hague Rules are not compulsorily applicable but are contractually applicable then subject to Clause 10 (ad valorem declaration) the Carrier's responsibility shall in no event exceed GBP100 per package or customary freight unit.
  If any terms of this Bill of Lading are held repugnant to the Hague Rules, Hague-Visby Rules, COGSA or any other compulsorily applicable legislation then such provision shall be null and void to the extent of such invalidity without invalidating the remaining provisions hereof.
  References in the Hague, Hague-Visby Rules, or COGSA to carriage by sea shall be deemed to include references to inland waterways or waterborne carriage.
- (D) USA Clause Paramount (if applicable)
  - 1. If carriage includes carriage to, from or through a port in the United States of America this Bill of Lading shall be subject to COGSA, the terms of which are incorporated herein and shall be paramount throughout carriage by sea and the entire time that the Goods are in the actual custody of the Carrier or its sub-contractor at the sea-terminal in the United States of America before loading onto the Vessel or after discharge therefrom as the case may be. COGSA shall be extended to apply to all Goods before the Goods are loaded on and after they are discharged from the Vessel and throughout the entire time during which the Carrier is responsible for the goods under the Bill of Lading.
  - 2. The Carrier shall not be liable in any capacity whatsoever for loss or delay to the Goods or non-delivery or misdelivery howsoever caused while the Goods are in the United States of America away from the sea-terminal and are not in the actual custody of the Carrier. At these times the Carrier acts as agent only for and on behalf of the Merchant and agrees to procure transportation of the Goods in accordance with the usual terms, conditions and tariff(s) of Participating Carriers. If for any reason the Carrier is denied the right to act as agent only at these times, its liability for loss and damage to the Goods or non-delivery or misdelivery thereof shall be determined in accordance with Clause 5(B) hereof.
  - 3. If COGSA applies then the liability of the Carrier shall not exceed US$500 per package or customary freight unit unless the value of the Goods has been declared on the face hereof with the consent of the Carrier and extra freight has been paid in which case Clause 10 shall apply and the declared value (if higher) shall be substituted for the limit and any partial loss or damage shall be adjusted pro-rata on the basis of such declared value. Further, the Carrier shall in no circumstances be liable for direct, indirect, or consequential loss or damage, including lost profits or loss of market. Further, any statement that iron or steel goods of any sort or description have been shipped in good order and condition does not amount to acceptance that said products are free from rust, for which the Carrier accepts no responsibility.

- 4. Except as provided herein in Clauses 5(D) (1)and (2), and where COGSA does not apply by operation of law, Carrier's liability will be governed by COGSA unless its liability under some other body of law applicable to the particular stage of the transport where the loss occurred is more favorable to the Carrier (with regards to defenses and limitations), in which case that other body of law will apply.

- 6. Amount Of Compensation

  - (1) For shipments to or from ports in the United States of America neither the Carrier nor the Ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of Goods in an amount exceeding U.S.$ 500.00 per package lawful money of the United States of America, or in the case of Goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such Goods have been declared by the Shipper in accordance with the terms set out in Paragraph 10 and inserted on the reverse side of this Bill of Lading and extra freight paid.
  - (2) Where the Hague Rules apply hereunder the Carrier's maximum liability shall in no event exceed GBP 100.00 lawful money of the United Kingdom per package or unit, unless the nature or value of such Goods have been declared by the Shipper before shipment and inserted on the reverse side of this Bill of Lading and extra freight paid.
    - (a) Subject to the limitations contained herein, when the Carrier is liable for compensation in respect of loss of or damage to Goods, such compensation shall be calculated by reference to the invoice value of the Goods plus freight charges and insurance if paid.
    - (b) If there is no invoice value of the Goods, such compensation shall be calculated by reference to the value of such Goods at the place and time they are delivered to the Merchant in accordance with the contract or should have been so delivered. The value of the Goods shall be fixed according to the current market price, or, if there be no commodity exchange price or current market price, by reference to the normal value of goods of the same kind and quality.

    - (c) Compensation shall not, however, exceed U.S.$ 2.00 per kilo of gross weight of the Goods lost or damaged.
    - (d) Higher compensation may be claimed only when, with the written consent of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier exceeds the limits laid down in this paragraph and has been stated in this Bill of Lading. In that case, the amount of the declared value shall be substituted for that limit. Any partial loss or damage shall be adjusted pro rata based on such declared value.

- 7. Sub-Contracting

Because the Carrier requires the assistance of others to perform the services undertaken under this Bill of Lading as well as transportation agreements between Carrier and others, every servant, agent, stevedore, terminal services contractor, lighter operator, pilot, connecting rail, motor, water, or air carrier or other independent contractor, including their agents, servants and subcontractors, performing such services shall have the benefit of every exemption from and limitation of liability, defense, right and liberty to which the Carrier is entitled, under any provision of this Bill of Lading or by applicable law, provided however that any such Servant or Agent that takes, accedes, or asserts the benefit of this provision by such action consents to the law and jurisdiction provisions of this bill of lading and in so doing expressly waives any law, forum,

and jurisdiction provisions in any underlying agreement, including bill of ladings or service contracts, between itself and the Carrier. For purposes of the foregoing provision, the Carrier shall be deemed to be the agent or trustee for the benefit of all such persons and all such persons shall be deemed to be parties to the contract of carriage evidenced hereby to that extent. The Shipper and Consignee undertake not to sue or proceed against any such persons. In the event either of them does so, it shall indemnify the Carrier against all resulting loss, liability, and expense, including attorneys' fees.

- 8. Freight
  - a. Full freight shall be payable at Carrier's option on gross weight, measurement, or value as set forth in Carrier's tariff, based on shipper's particulars for the Goods. Carrier shall have the right, but not the duty, to open packages or containers and, if shipper's particulars are found to be erroneous, the shipper, consignee, and the Goods shall be liable for the correct freight charge and any expenses incurred in examining, weighing, measuring, or valuing the cargo.
  - b. Full freight to the port of discharge named on the face of this document and Carrier shall consider all advanced charges against the Goods completely earned on receipt of the goods even though the Vessel, or other means of transport, or the Goods, are damaged or lost, or the voyage is frustrated or abandoned.
  - c. All sums payable to the Carrier are due on demand and shall be paid in full in United States currency, or, at Carrier's option, in its equivalent in the currency of the port of loading or the port of discharge, or as specified in the Carrier's tariff.
  - d. The Shipper, Consignee, Holder hereof, and owner of the goods, and their principals, shall be jointly and severally liable to Carrier for the payment of all freight, demurrage, General Average, and other charges due hereunder, without discount or set-off, together with any Court costs, expenses and reasonable attorney fees incurred in collecting any sums due Carrier. Payment of ocean freight and charges to a freight forwarder, broker, or anyone other than Carrier or its authorized agents, shall not be deemed payment to Carrier and shall be made at payor's sole risk. The Merchant shall remain liable for all charges hereunder notwithstanding any extension of credit to the shipper, freight forwarder, or broker by Carrier.

- 9. Lien

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the carrier under this contract and/or any other contract and for general average contributions, to whomever due. The Carrier shall also have a lien against the Merchant on Goods and any documents relating thereto for all sums due from him to the Carrier under any other contract between the Merchant and the Carrier. In any event any lien shall extend to cover the cost of recovering the sums due, including reasonable attorneys' fees and expenses, and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty, without notice to the Merchant.

- 10. Agreed Ad Valorem Value

The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and that higher compensation than that provided under this contract of carriage may not be claimed unless the value of the Goods are declared by the Shipper on the face of this Bill of Lading prior to the commencement of the carriage and extra freight paid, as set out in carrier's applicable tariff, in which case the amount of the declared value shall be substituted for the limits otherwise laid down herein. Any partial loss or damage shall be adjusted pro rata based on such declared value.

➤ 11. Under Deck And Deck Stowage

The Carrier has the right to carry Goods in containers, vans, trailers, and portable tanks under deck or on deck. When such Goods are carried on deck, the Carrier shall not be required to specially note, mark or stamp any statements of "on deck" carriage on the face of this bill of lading nor to give notice thereof to the Shipper or Consignee. In respect of Goods in containers, vans, trailers or portable tanks carried on deck, the Carrier shall not be liable for loss or damage caused by water deterioration or other perils incident to such on deck carriage. In respect of Goods not in containers, vans, trailers or tanks carried on deck under the Bill of Lading, the Carrier shall so state such carriage on the front side hereof, and all risk of loss or damage by water deterioration and other perils incident to such carriage shall be borne exclusively by the Goods and anyone having an interest therein.

➤ 12. Special Stowage; Refrigeration

Goods will not be provided temperature controlled, insulated or naturally ventilated stowage unless the Carrier has undertaken such special stowage in advance of the Carrier's receipt of the Goods, and in the absence of such agreement, the Shipper and Consignee warrant that the Goods do not require such protection. The Carrier does not provide mechanically ventilated stowage, and does not furnish or maintain preservative gases in connection with temperature controlled stowage, and the Carrier assumes no responsibility for loss or damage to Goods arising in whole or in part from any such lack of stowage. The Carrier shall not be liable for any loss of or damage to the Goods arising from latent defects, breakdown or stoppage of the refrigerating machinery, plant, insulation, or of any apparatus of the container, vessel, conveyance of other facilities, unless the Carrier shall, before or at the beginning of the transport, have failed to exercise due diligence to maintain any such equipment (other than shipper-provided equipment) in an efficient state. If the Goods have been packed into a refrigerated container, by or on behalf of the Shipper, it is the obligation of the Shipper to stow the contents properly and set the thermostatic controls exactly; and the Carrier shall not be liable for any loss of or damage to the Goods arising out of or resulting from the Shipper's failure in such obligations. If the Carrier has packed the Goods into a refrigerated container, and a temperature or temperature range has been disclosed to the Carrier by the Shipper or its authorized representative, Carrier will set the thermostatic control accordingly. With respect to both Carrier- and Shipper-packed containers, where Carrier has undertaken, by special agreement, to carry the Goods at a particular temperature or temperature range, the Carrier undertakes only that the refrigeration equipment shall perform within the operating specifications of the equipment and makes no warranty or agreement with respect to the actual temperature of and commodity, fruit, vegetable, meat fish, or any perishable Goods within the container.

➤ 13. Reconditioning, Etc.

In the event that Carrier must perform reconditioning, cooperage or restowage of the Goods for the safety of persons or of the Goods or other property or to bring the goods into conformance with applicable law, Carrier shall be reimbursed at accessorial labor and equipment rental rates named in any applicable tariff or, if no such rates apply, at 120% of Carrier's costs of performing such work.

➤ 14. Transshipment: Substitution Of Vessel

hether or not the Goods are consigned to a port or point where the Vessel does not discharge, the Carrier may, without notice, transship the whole or any part of the Goods before or after loading at the original port of shipment or any other place or places even though outside the scope of the voyage or the route to or beyond the port of discharge or the destination of the Goods, by any substituted or connecting water carrier's vessel or other means of transportation by water or

by land or by air, whether operated by the Carrier or by others.

➤ 15. Sundry Liability Provisions: Shedule/Delay

The Carrier does not undertake that the Goods will be transported from or loaded at the place of receiving or loading or will arrive at the place of discharge, destination or transshipment aboard any particular vessel or other conveyance or at any particular date or time or to meet any particular market or in time for any particular use. Scheduled or advertised departure and arrival times are only expected times and may be advanced or delayed if the Carrier or any Connecting Carrier shall find it necessary, prudent or convenient. In no event shall the Carrier be liable for consequential or other damages for delay in the scheduled departures or arrivals of the vessel or other conveyance transporting the Goods or for any other matter. SUPPLY OF CONTAINERS: The Merchant at destination shall have to return all containers not owned by the Merchant to the Carrier duly cleaned and in good condition as deemed delivered to the shipper within the time allowed by the Carrier, failing which the Merchant shall be liable to the Carrier for all costs, fees, cleaning charges, late fees, attorneys fees or any other charge for which the Carrier is held liable including demurrage. Merchant agrees to pay the replacement value of any Container not returned within 30 days of its being available for delivery. JOINT EXAMINATION: Subject to the above provisions, the Merchant and/or his representatives agrees and warrants that it will contact the Carrier for a joint examination before the opening of the container in the case of apparent damage or as soon as such damage has been revealed in the case of non-apparent damage. Loss or damage is deemed apparent when the container is delivered without seal or without the original seal affixed when the Carrier had taken possession of the container.

➤ 16. Scope Of Voyage: Carrier's Liberties

The Carrier may call at scheduled ports in or out of the usual order, may provide substituted service by modes other than water as may be provided for by applicable tariffs, may omit scheduled routes or ports, may include unscheduled routes or ports and may lighter the Goods. The Vessel may sail with or without tugs or pilots, undertake rescue or salvage, tow or be towed, or undergo dry-docking or repairs. In any situation whatsoever which, in the opinion of the Master or the Carrier, gives rise to risk of seizure, detention, damage, loss, delay or disadvantage to the Vessel or the Goods, or of materially detaining the equipment of the Carrier or would make it imprudent, unlawful or commercially impracticable to commence or continue the voyage or to enter or discharge the Goods, or any part of them, at any port or place considered by the Carrier to be safe or advisable under the circumstances and forward or arrange to forward the Goods by rail, water, motor vehicle, or air, or place the Goods in a storage facility or warehouse, all at the risk and expense of the Goods. The exercise of any of the foregoing liberties by the carrier or the Master shall constitute performance under the Bill of Lading and not a deviation from the scope of the voyage. When the Goods are discharged from the Vessel and delivered to a forwarding agent or carrier or to a warehouse or storage facility under the provisions of this paragraph, or when required to be delivered by local customs authorities under local law, such discharge and delivery shall constitute complete delivery and performance under the Bill of Lading.

➤ 17. Delivery Under Negotiable Bills Of Lading

Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder. If the Goods are consigned "to order" on the face hereof, the Goods shall be delivered at the place of delivery upon surrender of the original bill of lading; provided however, if the goods are to be transshipped via a connecting carrier to a destination point beyond the place of delivery stated on the face hereof, Carrier, may, on behalf of the Shipper and Consignee and acting

solely as their agent, arrange for such beyond carriage consistent with instructions received from the Shipper or consignee, or the representative of either of them, at the risk and expense of the Goods. In such event, the Carrier may deliver the Goods to the connecting carrier without surrender of the original, properly endorsed bill of lading, unless instructed otherwise, and shall obtain the connecting carrier's acknowledgement that delivery of the Goods shall be made only upon surrender of the Carrier's original, properly endorsed bill of lading. This Bill of Lading shall not be a negotiable document of title unless consigned 'to order', 'to the order of '..' or ' to bearer'. If not so consigned but instead consigned directly to a nominated party, this shall be a 'Straight' Bill and, at the sole discretion of the Carrier, delivery may be made to the nominated party only upon proof of identity, as if this Bill of Lading were a Waybill. Such delivery shall constitute due delivery hereunder.

- 18. Undelivered Goods

The Merchant shall take delivery of the goods within the time provided for in the Carrier's applicable tariff. If for any reason whatsoever, the Merchant refuses or fails to take delivery of the Goods upon their arrival and availability at destination an upon expiration of tariff-prescribed free-time and any notice period as set forth in a notice of arrival, availability or demand given by the Carrier, the Carrier may, without further notice or demand, and in addition to any other legal or equitable remedies, exercise its maritime lien for any charges due at a private or judicial sale of the Goods, or may place the Goods in a storage at the risk and expense of the Goods, subject to a lien in favor of the Carrier for any charges due.

- 19. Dangerous, Hazardous, Or Noxious Cargo

If it appears at any time that any Goods or any part thereof cannot be carried safely, or for Goods of a flammable, explosive, corrosive, radioactive, noxious, hazardous, unstable or dangerous nature, shipped without full disclosure in writing to the Carrier as to their nature and character, may at any time before discharge be landed at any place, thrown overboard, destroyed, or rendered innocuous without liability on the part of the Carrier or other Shippers or Consignees, and, even if such disclosure be made, the Carrier may, without incurring any liability, make the same disposition of such Goods, if, in the opinion of the Carrier, they shall be or become dangerous or noxious to the Vessel or cargo, or to persons. The Shipper shall indemnify the Carrier for all losses, damages (including, but not limited to, profits and expenses related to the Carrier's inability to use its vessels and equipment), liabilities, fines, civil penalties, and expenses (including attorneys' fees) suffered by the carrier, caused in whole or in part by omission of full disclosure required by this paragraph or by applicable law or regulations or by its failure to properly pack, label, or mark such goods.

- 20. General Average

  - a. General average is to be adjusted at any port or place at the carrier's option, and to be settled according to the York-Antwerp Rules 1974 as amended 1990, this covering all Goods, whether carried on or under deck.
  - b. Such security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereof, shall, if required, be submitted to the Carrier prior to delivery of the Goods.

- 21. Both To Blame Collision

If the Vessel comes into collision with another vessel as the joint result of the negligence of the other vessel and any act, neglect or default of the master, pilot or member of the crew in the navigation or management of the Vessel, the

Shipper or Consignee having beneficial ownership of the Goods shall indemnify the Carrier against all loss or damage to, or any claim whatsoever of, said owner of the Goods, paid or payable by the other or non-carrying vessel or its owners to said owner of the Goods and set-off against, or recouped or recovered from the Vessel or the Carrier by the other vessel or its owners. The foregoing-provisions shall also apply where the owners, operators or other persons in charge of any vessel or object other than, or in addition to, the colliding vessels and/or objects are at fault in respect of a collision, allision, stranding or other accident.

➢ 22. War Risks: Govermental Orders

The Carrier shall have liberty to carry goods declared by any belligerent to be contraband and persons belonging to or intending to join the armed forces or governmental service of any belligerent; to sail armed or unarmed and with or without convoy; and to comply with any orders, requests or directions as to loading, departure, arrival, routes, ports of call, stoppage, discharge, destination, delivery or otherwise, howsoever given by the government of any nation or department thereof, or any person acting or purporting to act with the authority of such government or of any department thereof or by any committee or person having, under the terms of the war risk insurance on the Vessel, the right to give such orders, requests or directions. Delivery or other deposition of the Goods in accordance with such orders, requests or directions shall constitute performance of the Carrier's delivery obligations under the Bill of Lading, and all responsibility of the Carrier, in whatever capacity, shall terminate upon such delivery or other disposition. If by order of any Customs authority at any place, the Goods have to be unpacked from the Containers to be inspected, the Carrier shall not be liable for any loss or damage incurred during such inspection The Carrier is entitled to recover the costs and fees incurred in unpacking and re-stowing the cargo from the Merchant.

➢ 23. Fire

Neither the Carrier nor its terminal operator or stevedore shall be liable to answer for or make good any loss or damage to goods occurring at any time and even though before loading or after discharge from the vessel by reason or by means of any fire whatsoever, unless such fire shall be caused by their actual fault or privity.

➢ 24. Notice Of Loss, Time For Suit

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agents at the port of discharge or place of delivery as the case may be before or at the time of removal of the Goods into the custody of the Merchant such removal shall be prima facie evidence of the delivery by the Carrier of the Goods as described in this Bill of Lading. If the loss or damage is not apparent, then notice must be given within three days of the delivery. In any event, the Carrier shall be discharged from any liability unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered. If a place of delivery is named on the face hereof, any such notice shall also be sent by the Merchant to the last inland carrier before or at the time of removal or within three (3) working days thereafter if the loss or damage is not apparent, and in any case a confirmation of such notice shall have to be made to such inland Carrier by registered letter within three working days of the time of delivery, failing which no responsibility shall attach to the carrier.

➢ 25. Variation Of The Contract

No servant or agent of the Carrier shall have the power to waive or vary any of the terms of this Bill of Lading, unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the carrier.

➤ Law & Jurisdication

Whenever the "Carriage of Goods by Sea Act ("COGSA") of the United States of America applies by virtue of paragraph 5, this contract of carriage is to be governed by United States law (exclusive of its choice of law rules) and the United States Federal Court for the Southern District of New York is to have exclusive jurisdiction to hear all disputes hereunder including third party proceedings or those involving several defendants. This clause supersedes any conflicting clause in bills of lading or other documents issued by contractors or sub-contractors of OWL. In all other cases this Bill of Lading shall be governed by the law of the Federal republic of Germany and determined in the Hamburg courts to the exclusion of the jurisdiction of any other place. In case the Carrier intends to sue the Merchant, the Carrier has also the option to file a suit at the Merchant's place of business. With regard to contracts of carriage concluded in France, or entered into with a French port, the court where the carrier has his principle place of business be also competent in case of "APPEAL ON GUARANTEE" or "PLURALITE DE DEFENDEURS" or "CONNEXITE" the parties to this Sea Waybill expressly derogating from articles 100 to 107, 323, 331 to 333, 336 and 337 FRENCH NOUVEAU CODE THE PROCEDURE CIVILE.

Received by the Carrier from Shipper in apparent good order and condition (unless noted herein) the total number or quantity of Containers or packages or units indicated, stated by the Shipper to comprise the Goods specified above, for Carriage subject to all the items hereof (INCLUDING THE TERMS ON THE REVERSE HEREOF AND THE TERMS OF THE CARRIERS APPLICABLE TARIFF) from the Place of Receipt or the Port of Loading, whichever is applicable, to the Port of Discharge or the Place of Delivery, whichever is applicable. In accepting this Bill of Lading, the Merchant expressly accepts and agrees to all its terms, conditions and exceptions, whether printed, stamped or written, or otherwise incorporated, of which the Merchant is fully aware notwithstanding the non-signing of the Bill of Lading by the Merchant.

Goods in containers, vans or trailers or portable tanks may be carried on deck at the Carrier's option in accordance with Clause 11.

A PACER INTERNATIONAL COMPANY

Making your world a little smaller

Copyright © 2006 Ocean World Lines. All rights reserved. Impressum

# EXHIBIT D

19. JUN. 2006 18:14 YANG MING HAM-DOCTA WB NR. 259 S. 1 03.2006

陽明海運股份有限公司

YANG MING MARINE TRANSPORT CORP.

# NON-NEGOTIABLE SEA WAYBILL

| Shipper | Booking No. | Waybill No. |
|---|---|---|
| OWL OCEAN WORLD LINES EUROPE GMBH<br>LIPPELTSTR. 1<br>20097 HAMBURG (GERMANY)<br>TEL +49 (40) 39 84 81-0<br>FAX +49 (40) 39 84 81-11 | ~~THAM0000100~~<br>Export References | YMLU ~~YMLUT670037050~~ |

| Consignee | Forwarding agent references |
|---|---|
| OCEAN WORLD LINES, INC.<br>1981 MARCUS AVENUE, SUITE E100<br>LAKE SUCCESS, NY 11042 (USA)<br>TEL +1 516 616 2400<br>FAX +1 516 616 2424 | OWLUHA6S060150NY<br>Point and Country of Origin of goods |

| Notify party | ALSO NOTIFY |
|---|---|
| OCEAN WORLD LINES, INC.<br>1981 MARCUS AVENUE, SUITE E100<br>LAKE SUCCESS, NY 11042 (USA)<br>TEL +1 516 616 2400<br>FAX +1 516 616 2424 | Djurick Trucking file |

| Pre-carriage by | Place of Receipt | Onward inland routing |
|---|---|---|
| Vessel Voy No. Flag<br>YM MILANO TA1092W | Port of Loading<br>BREMERHAVEN | |
| Port of Discharge<br>NORFOLK, VA | Place of Delivery<br>BOURBON, IN DOOR | Delivery status<br>FCL/FCL |

PARTICULARS FURNISHED BY MERCHANT

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement (M) Gross Weight (KGS) |
|---|---|---|---|
| | 4 CTNR | SHIPPER'S LOAD, STOWAGE AND COUNT.<br>S.T.C : 23 PACKAGES | 77400.000 KGS |
| | | 23 PACKAGES<br>PRINTING MACHINERY<br>HS-CODE: 84431910<br><br>TO BE FILED WITH US CUSTOMS BY<br>SHIPPER UNDER SCAC: OWLU<br><br>SHIPPED ON BOARD<br>FREIGHT PREPAID<br>TRANSPORT MODE FOR ONCARRIAGE:<br>RAIL/MOTOR<br>EXPRESS BILL OF LADING<br>SC 810805 | FREIGHT PREPAID |

YMLU4919000 40'DC FCL/FCL 499838 499838 6 PKGS 19400.000KGS
YMLU4857103 40'DC FCL/FCL 240641 240641 5 PKGS 19250.000KGS
GLDU4110080 40'DC FCL/FCL 240606 7 PKGS 19500.000KGS
YMLU4969490 40'DC FCL/FCL 240685 240685 5 PKGS 19250.000KGS

Declared value $ ______ If Merchant enters a value of Goods and pays the applicable ad valorem rate, Carrier's package limitation shall not apply. See Clause 29 (2)&(3) hereof

Place and Date of issue HAMBURG ~~16/06/2006~~

On Board Date ~~16/06/2006~~

WAYBILL NO YMLU YMLUT670037050

| ITEM NO | CHG | RATED AS | PER | RATE | PREPAID | COLLECT |
|---|---|---|---|---|---|---|
| | | | | | | |

The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff.

Delivery of the Goods will be made to the Consignee or his authorized representative upon proper proof of identity and authorization without the need of producing or surrendering a copy of this Sea Waybill.

Rate of exchange ~~USD .7954~~

Number of Original Sea Waybill 0 (ZERO) 4

Total

payable at ~~HAMBURG~~

By YANG MING SHIPPING EUROPE GmbH
Department of German Agency
– as agents only –
as agent for Yangming Marine Transport Corporation, as carrier

RECEIVED by the Carrier from the Merchant in apparent external good order and condition unless otherwise noted herein the total number of Containers, or if the Goods are not shipped in Containers, the total number of packages or shipping units specified in the box marked "No. of Pkgs. or Containers" for Carriage subject to all the terms and conditions hereof (including the terms and conditions hereof and the terms and conditions of Carrier's applicable Tariff) from the place of receipt or the port of loading, whichever is applicable, to the port of discharge or place of delivery, whichever is applicable.

In accepting this Bill of Lading, the Merchant agrees to be bound by all the stipulations, exceptions, terms, and conditions on the face and back hereof, whether written, typed, stamped or printed, as if signed by the Merchant any local custom or privilege to the contrary notwithstanding, and agrees that all agreements or freight engagements for the shipment of the Goods are superseded by this Bill of Lading.

1. DEFINITIONS.
The following words whether contained on the front or back hereof have the meanings hereby assigned:
(a) "Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this Bill of Lading.
(b) "Carrier" means Yangming Marine Transport Corporation ("Yangming").
(c) "Container" includes any ISO standard container, trailer, transportable tank, flat rack and/or other item of transportation equipment in conformance with ISO standards.
(d) "Freight" includes all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading.
(e) "Goods" means the whole or any part of the cargo received from the Merchant and includes any equipment or Container(s) not supplied by or on behalf of the Carrier.
(f) "Holder" means any Person for the time being in possession of this Bill of Lading to whom the property in the Goods has passed on, or by reason of, the consignment of the Goods or the endorsement of this Bill of Lading or otherwise.
(g) "Merchant" includes the shipper, Holder, consignee or receiver of the Goods or any Person owning or entitled to the possession of the Goods or this Bill of Lading and anyone acting on behalf of any such Person.
(h) "Multimodal Transport" arises if the Place of Receipt and/or the Place of Delivery are indicated on the face hereof in the relevant spaces.
(i) "Person" includes an individual, group, company or other entity.
(j) "Port to-Port" arises if the Carriage is not Multimodal Transport.
(k) "Sub-Contractor" includes owners and operators of Vessels (other than the Carrier), slot chartered owners, stevedores, terminal and group age operators, Underlying Carriers and any independent contractor employed by the Carrier in performance of the Carriage.
(l) "Underlying Carrier" includes any water, rail, motor, air or other carrier utilized by the Carrier for any part of the transportation of the shipment covered by this Bill of Lading.
(m) "Vessel" includes the Vessel named on the face hereof together with any ship, craft, lighter, barge, feedership, ferry or other means of transportation substituted in whole or in part, for the Vessel named on the face hereof.

2. CARRIER'S TARIFF.
The terms and conditions of Carrier's applicable Tariff are incorporated herein, including those provisions relating to Container and vehicle demurrage. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the event of any inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail.

3. MERCHANT'S WARRANTY.
The Merchant warrants that in agreeing to the terms hereof he is, or has the authority of, the Person owning, or entitled to possession of the Goods and this Bill of Lading.

4. EXEMPTIONS AND IMMUNITIES OF SERVANTS, AGENTS, STEVEDORES, AND OTHER SUB-CONTRACTORS.
[illegible]

5. SCOPE OF THE VOYAGE.
[illegible]

6. LIBERTIES OF USE.
[illegible]

7. CARRIER'S RESPONSIBILITY AND CLAUSE PARAMOUNT
(A) Port-to-Port Shipments
[illegible]
(B) (1) Multimodal Transport [illegible]
(C) Unknown Liability [illegible]
(D) Subrogation [illegible]
(E) Conflict of Law [illegible]

8. CONTAINER PACKED BY CARRIER.
Where the Goods receipt of which is acknowledged on the face of this Bill of Lading, are not already contained in Container(s) at the time of such receipt, the Carrier shall be at liberty to pack and carry such Goods in Containers.

9. CONTAINER PACKED BY MERCHANT - MERCHANT'S RESPONSIBILITY
[illegible]

10. CARRIER'S CONTAINER - MERCHANT'S RESPONSIBILITY.
[illegible]

11. SPECIAL CONTAINERS AND PERISHABLE GOODS.
Unless specifically requested by the Merchant in writing, the Carrier is not required to provide anything other than a 20 or 40 foot standard dry Container(s). In the event the Carrier agrees to carry the Goods in a special Container(s) such as a refrigerated, heated or insulated Container(s), Goods of a perishable nature shall be carried in such dry Container(s) without special protection, services or other measures unless it is noted on the reverse side of this Bill of Lading that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped Container(s). The Merchant is required to give written notice of requested temperature settings of the thermostatic controls before receipt of the Goods by the Carrier. When a loaded Container(s) is received, the Carrier will verify that the thermostatic controls are set to maintain Container(s) temperature as requested. The Merchant is responsible for bringing the Goods to the proper temperature before loading the Goods into the Container(s), for the proper stowage of the Goods within the Container(s), for setting the temperature (including maintenance and repair) during all times before the Container(s) is (are) delivered to the Carrier and after it is (they are) delivered by the Carrier. The Carrier is not responsible for produce deterioration caused by inherent vice, defects in the merchandise or transit times in excess of the produce shelf life. The Merchant is specifically advised that refrigerated, heated, specially ventilated or otherwise specially equipped Container(s) are not equipped to change the temperature of Goods, but solely to maintain the temperature as received from the Merchant. The Carrier is unable to determine whether the Goods were at the proper temperature when they were loaded into the Container(s) or when the Container(s) was (were) delivered to the Carrier. Carrier shall be deemed to have fulfilled its obligations under this Bill of Lading, and shall have no liability whatsoever, if the Goods are carried in a range of plus or minus 2.5 degrees centigrade (4.5 degrees Fahrenheit) in regard to any carrying temperature designated in writing by the Merchant in this Bill of Lading.
Goods subject to deterioration or damage by extremes of heat and/or cold which are shipped by Merchant in standard dry Container(s) rather than in refrigerated or temperature controlled Container(s) which can be supplied by the Carrier, are carried at Merchant's risk and Carrier assumes no liability whatsoever resulting from Merchant's acts or omissions in failing to request the proper Container(s).

12. STOWAGE ON DECK.
(1) The Carrier has the right to carry Goods in Container(s) on deck, whether the Container(s) are owned or leased or have been packed or stuffed by or on behalf of the Merchant or the Carrier. When Goods in Container(s) are carried on deck, the Carrier is not required to specially note, mark or stamp any statement of on deck Carriage on the face hereof, any custom to the contrary notwithstanding. The Goods so carried shall be subject to the applicable Hague Rules as provided for in the Clause Paramount hereof.
(2) Notwithstanding Clause 12(1) above in the case of Goods which are stated on the face hereof as being carried on deck and which are so carried, the Hague Rules shall not apply and the Carrier shall be under no liability whatsoever for loss, damage or delay, howsoever arising.

13. LIVE ANIMALS, PLANTS, PERISHABLE GOODS.
The Carrier shall not be responsible for any accident, disease, mortality, loss of or damage to live animals, birds, reptiles, fish, plants and perishable Goods arising or resulting from any cause whatsoever including the Carrier's negligence or the Vessel's unseaworthiness and shall have the benefit of all the provisions of this Bill of Lading.

14. DANGEROUS GOODS AND CONTRABAND.
(1) The Carrier undertakes to carry Goods of an explosive, inflammable, radioactive, corrosive, damaging, noxious, hazardous, poisonous, injurious or dangerous only upon the Carrier's acceptance of a prior written application by the Merchant for the Carriage of such Goods. Such applications must accurately state the nature, name, label and classification of the Goods as well as the method of rendering them innocuous, with the full names and addresses of the Merchant.
(2) The Merchant shall undertake to ensure that the nature of the Goods referred to in the preceding paragraph is distinctly and permanently marked and manifested on the outside of the Goods, Container(s) and shall also undertake to submit the documents or certificates required by any applicable statutes or regulations or by the Carrier.
(3) Whenever the Goods are discovered to have been received by the Carrier without complying with the foregoing, or the Goods are found to be contraband or prohibited by any law or regulation of the port of loading, discharge or call or any place or waters during the transport, the Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation to the Merchant and the Merchant shall be liable to indemnify the Carrier against any kind of loss, damage or liability including loss of Freight, and any expenses directly or indirectly arising out of or resulting from such Goods.
(4) The Carrier may exercise or enjoy the right or benefit conferred upon the Carrier under the foregoing whenever it is apprehended that the Goods received in compliance with the terms of this clause may seem likely to become dangerous to the Carrier, Vessel, Goods, Underlying Carriers, Sub-Contractors, Persons and/or other property. The Carrier has the right to inspect the Container(s) and the Goods carried therein at any time and anywhere without the Merchant's agreement and at the risk and expense of the Goods.

15. VALUABLE GOODS.
The Carrier shall not be liable to any extent for any loss of or damage to or in connection with platinum, gold, silver, jewelry, radioisotopes, precious metals, precious stones, precious chemicals, bullion, specie, currencies, securities, negotiable instruments, writings, documents, pictures, embroideries, works of art, curios, heirlooms, collections of every nature or any other valuable Goods, whatsoever including Goods having particular value only for the Merchant, unless the true nature and value thereof have been declared in writing by the Merchant before receipt by the Carrier of the Goods and inserted on this Bill of Lading and unless ad valorem Freight shall have been fully prepaid thereon.

16. LOSS, CONDENSATION, ETC.
It is agreed that superficial rust, oxidation or condensation inside the Container or any like condition due to moisture is not the responsibility of the Carrier, unless said condition arises out of Carrier's failure to provide a seaworthy Container to the Merchant prior to loading. If the Merchant requires special arrangements or care for the Carriage of such Goods, he must request same in writing to the Carrier and said arrangements must be noted on the face of this Bill of Lading and all special Freight, as required, must be paid by the Merchant.

17. GOVERNMENT REGULATION AND PENALTY.
The Merchant shall comply with all regulations or requirements of Customs, Government authorities, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses incurred or suffered by reason of any failure to comply with such regulations, or by reason of any illegal, incorrect, or insufficient marking, numbering or addressing of the Goods, or the discovery of any drugs, narcotics, stowaways or other illegal substances within Containers packed by the Merchant or inside Goods supplied by the Merchant, and shall indemnify the Carrier in respect thereof.

18. NOTIFICATION AND DELIVERY.
(1) Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligations hereunder.
(2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff.
(3) If the Merchant fails to take delivery of the Goods, or any part thereof, in accordance with this Bill of Lading, the Carrier may without notice remove the Goods, or that part thereof, and/or store the Goods, or that part thereof, ashore, afloat, in the open or undercover. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods, or that part thereof, shall cease.
(4) The Merchant's attention is drawn to the stipulations concerning free storage time and demurrage contained in the Carrier's applicable Tariff, which is incorporated in this Bill of Lading.

19. FREIGHT AND CHARGES
(1) Freight shall be payable at Carrier's option, on gross intake weight or measurement, or gross discharge weight or measurement, or on an ad valorem basis, or per Container or package or customary freight unit basis or any other applicable rate as set forth in Carrier's Tariff. Freight may be calculated on the basis of the description of the Goods furnished by the Merchant, but Carrier may at any time, weigh, measure and value the Goods and open packages or customary freight units to examine contents. In case the Merchant's description is found to be erroneous and additional Freight is payable, the Merchant and the Goods shall be liable for any additional Freight and expense incurred in examining, weighing, measuring, fumigating and valuing the Goods.
(2) Full Freight to the port of discharge or, in case of through transportation to place of delivery named herein and all other charges against the Goods shall be considered completely earned on receipt of the Goods by the Carrier or Underlying Carrier as the case may be, whether the Freight or charges be prepaid or be stated or intended to be prepaid or to be collected at port of discharge or destination or subsequently, and the Carrier shall be entitled absolutely, to all Freight and charges, and to receive and retain them under all circumstances whatever, whether the Vessel and/or the Goods are lost or not lost, or whether the voyage changed, broken up, frustrated or abandoned.
(3) All Freight and charges shall be paid in full and without any offset, counterclaim or deduction, in the currency named in this Bill of Lading or, at the Carrier's option, in its equivalent in local currency at bank demand rates of exchange in New York as of the date payment of Freight shall be due hereunder. Any error in Freight or in charges or in the classification herein of the Goods is subject to correction, and if on correction, the Freight or charges are higher, Carrier may collect the additional amount.
(4) The Merchant and Goods shall be jointly and severally liable to Carrier for the payment of all Freight, demurrage, General Average, salvage and other charges, including but not limited to court costs, expenses and reasonable attorney's fees incurred in collecting sums due Carrier. Payment of ocean Freight and charges to a freight forwarder, broker or anyone other than the Carrier, or its authorized agent, shall not be deemed payment to the Carrier and shall be made at payer's sole risk.

20. GENERAL AVERAGE AND SALVAGE.
General average shall be adjusted, stated and settled at New York or at the last port of discharge or any other port or place at the Carrier's option according to the York Antwerp Rules, 1994, and as to matters not provided for in these rules according to the laws and usages of the port or place of adjustment, and in the currency selected by the Carrier. Average agreement and bond, together with such additional security as may be required by the Carrier, shall be furnished before delivery of the Goods. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequences of which the Carrier is not responsible by statute, contract or otherwise, the Carrier, and the Merchant jointly and severally shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that must be made or incurred and shall pay salvage and special charges incurred in respect to the Goods. If a salving Vessel is owned or operated by the Carrier, salvage shall be paid for as fully and in the same manner as if such salving Vessel or Vessels belong to strangers.
In the event the Master considers that salvage services are needed, the Merchant agrees that the Master may act as his agent to procure such services to the Goods and that the Carrier may act as his agent to settle salvage remuneration.

21. BOTH TO BLAME COLLISION.
If the Vessel comes into collision with another Vessel as a result of the negligence of the other Vessel and any act, neglect or default of the master, mariner, pilot or the servants of the owner of the Vessel and in the navigation in the management of the Vessel, the Merchant shall indemnify the Carrier against all loss or liability which might incur directly or indirectly to the other or non-carrying Vessel or owners insofar as such liability represents loss of or damage to his Goods or any claim whatsoever of the Merchant paid or payable by the other or non-carrying Vessel or her owners to the Merchant and set-off recouped or recovered by the other or non-carrying Vessel or her owners as part of their claim against the carrying Vessel or the owner thereof. The foregoing provisions shall also apply where the owners, operators or those in charge of any Vessel or Vessels or objects other than, or in addition to, the colliding Vessels or objects are at fault in respect of a collision or contact.

22. NOTICE OF CLAIM AND TIME FOR SUIT.
Unless notice of loss or damage and a general nature of such loss or damage be given in writing to the Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods, or, if the loss or damage be not apparent, within three days after delivery, the Goods shall be deemed to have been delivered as described in this Bill of Lading. In any event, the Carrier shall be discharged from all liability in respect of non-delivery, mis-delivery, delay, loss or damage unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

23. LIMITATION OF LIABILITY
(1) All claims which the Carrier may be liable for shall be adjusted and settled on the basis of the net invoice value of the Goods. In no event shall the Carrier be liable for any loss of profit or any consequential loss.
(2) Subject to the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bill of Lading dated 25 August 1924, and any legislation making those rules compulsorily applicable to this Bill of Lading, including the Carriage of Goods by Sea Act of the United States of America, approved 16 April, 1936, the Carrier shall in no event be liable for any loss or damage to or in connection with the Goods in an amount exceeding the limit of U.S. Dollars 500 per package, or where the Goods are not shipped in packages per customary freight unit. If such limitation is inapplicable under local law, the applicable Hague Rules limitation amount in the country in which the action is brought shall be applied. If the shipment covered by this Bill of Lading originates in a country where the Hague Visby Amendments to the Hague Rules are mandatorily applicable, and a suit is brought in such jurisdiction, Carrier's liability shall not exceed 2 SDRs per kilo. If an action is brought in the Republic of China (Taiwan) for Goods originating or consigned in the Republic of China then Carrier's maximum liability shall be 9,000 NT Dollars per package.
(3) The aforementioned limitation of liability set forth in this provision shall be applicable unless the nature and value of the Goods have been declared by the Merchant before shipment and agreed to by the Carrier, and are inserted in this Bill of Lading and the applicable "ad valorem" freight rate, as set out in Carrier's Tariff, is paid. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value and if the declared value is higher than the actual value, the Carrier shall in no event be liable to pay compensation higher than the net invoiced value of the Goods plus freight and insurance.

24. FIRE.
Neither the Carrier nor any Underlying Carrier or Sub-Contractor utilized by the Carrier in the performance of this Bill of Lading Contract shall be liable to answer for or make good any loss or damage to the Goods occurring at any time the Goods are considered to be in Carrier's custody including the period before loading, or after discharge from the Vessel, by reason or by means of any fire unless such fire shall be caused by the actual fault or privity of the Carrier.

25. LIEN.
The Carrier shall have a lien on the Goods, and any documents relating thereto, for all sums payable to the Carrier under this contract and for general average and salvage contributions to whomsoever owed for the costs of recovering same, and for any penalties and assessments charged to the Carrier as a result of its Carriage of the Goods. In order to recover for such charges the Carrier shall have the right to sell the Goods by public auction or private treaty without notice to the Merchant.

26. LAW AND JURISDICTION.
Except as otherwise provided specifically herein any claim or dispute arising under this Bill of Lading shall be governed by the laws of England and determined in English courts sitting in the city of London to the exclusion of the jurisdiction of the courts of any other place. In the event this clause is inapplicable under local law then jurisdiction and choice of law shall lie in either the port of loading or port of discharge at Carrier's option.

# EXHIBIT E

 a. hartrodt
TRANSPORT IS OUR BUSINESS

# TELEFAX

| TO: Ocean World Lines, Inc. / Lake Success, NY | | FROM: Mohammed El Otmani |
|---|---|---|
| ATT.: Donna L. Colchetti | | DATE / REFERENCE: July 11, 2006 / our file 302114 |
| PHONE NO.: (516) 616-2400 | FAX NO.: (516) 616-2424 | TOTAL PAGES: -1- |

**RE.:** Your reference NYM01871 / Container # GLDU 411 008-0

Hi Donna,

Above mentioned container was delivered this morning to the consignee in Bourbon, IN and I understand both the container and some of the content is damaged. According to the driver who delivered the container this morning, the driver who picked it up at the rail terminal drove through a low bridge while transferring it to the trucker's yard and caused the damage. The same statement was made yesterday by e-mail by Yang Ming Line.

In the interest of our customer, we herewith hold you liable for the damage to the freight as well as for consequent damages and would appreciate your co-operation in getting this issue settled. The freight has been unloaded from the container and is available for your or the carrier's surveyor to inspect. Please understand that riggers are at the location installing the equipment from the other containers and we'll soon need to be able to install whatever equipment is intact from the damaged container and get replacement for whatever can't be used. Time of the essence.

Best regards /
Mohammed El Otmani
Branch Manager

a. hartrodt (u.s.a.), Inc.
2777 Old Higgins Road
Elk Grove Village, IL 60007

tel. no.: (847) 956-6857 ext 101
fax no.: (847) 956-6877
e-mail : melotmani@hartrodtusa.com
homepage: www.hartrodt.com

Tony Pastore
(508) 872-3981

All business undertaken subject to terms and conditions as recommended by the National Customs Brokers and Forwarders Association of America, Inc. Text available upon request.

38