UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ROYAL & SUN ALLIANCE INSURANCE PLC,  :

              Plaintiff,           :

       -against-           :

                     :

OCEAN WORLD LINES, INC.         :

             Defendant.      :

-----------------------------------------------------------------x

OCEAN WORLD LINES, INC.,      :

                     :

        Third-Party Plaintiff,   :

       -against-           :

YANG MING MARINE TRANSPORT CORP.  :
and DJURIC TRUCKING, INC.       :

       Third-Party Defendants   :

-----------------------------------------------------------------x

**ECF CASE**

**07-CV-2889 (AKH)**

**DECLARATION OF
ESA RADONCIC**

I, ESA RADONCIC, declare as follows:

1.     I am the Claims Manager for defendant Ocean World Lines, Inc. ("OWL"). I have

held this position for four years. Prior to that I worked in the OWL Export Department

from 1994 to 2000 and then in the OWL Import Department until 2003. My office is

located at 1981 Marcus Avenue, Lake Success, New York.

2.     I make this declaration in support of OWL's motion for partial summary

judgment to limit liability to $500 per package pursuant to the Carriage of Goods by Sea

Act ("COGSA") and the OWL bill of lading contract terms. My declaration is based upon personal knowledge and business records in our office.

3.    Through my working experience at OWL I am thoroughly familiar with the shipping documents, practices and procedures utilized by NVOCC OWL in the international shipments of containerized cargoes from foreign ports to United States ports and inland destinations.

4.    In my capacity as Claims Manager, I handle claims brought by cargo interests against OWL. I am familiar with the claim asserted by plaintiff and the provisions in the OWL bill of lading. I dealt with this claim before the lawsuit was commenced on or about April 10, 2007 by cargo underwriters on behalf of their assured, White Horse Machinery Limited.

5.    On July 11, 2006, OWL's Operations Manager, Donna Colchetti, gave me a telefax she received from cargo interests Customs Broker regarding container #GLDU411008-0 carried under OWL through bill of lading No. OWLUHA6S060150NY alleging that the container and some of its content was delivered on July 11, 2006 to the consignee in Bourbon, Indiana in damage condition (Exhibit "F"). The telefax alleged that the truck driver picked up the container at a rail terminal and drove through a low bridge while transferring it to its yard.

6.      In the instant case OWL had subcontracted the entire through transport container move from Bremerhaven, Germany to Bourbon, Indiana to the vessel operating common carrier ("VOCC") Yang Ming Marine Transport Corp ("Yang Ming") under Yang Ming's sea waybill YMLUT670037050.

7.      Yang Ming performed the ocean carriage from Bremerhaven, Germany to Norfolk, Virginia and then subcontracted the land segment of the through transport from Norfolk to Bourbon to a rail carrier and then a motor carrier.

8.      On July 12, 2006 I telephoned Yang Ming's Claims Manager Henry Mak about the incident and placed him on notice for the liability of the alleged damage caused by Yang Ming's subcontracted motor carrier Djuric Trucking Inc ("Djuric"). Until this incident I had never heard of Djuric. I followed up my telephone conversation with an email to Mr. Mak dated July 12, 2006 (Exhibit "G").

9.      In early February 2007 our office received a claim statement from a company called Vereclaim in the amount of $250,000 for alleged physical damage to the cargo in question (Exhibit "H"). I immediately emailed the claim to Mr. Mak at Yang Ming's New Jersey office for handling.

10.     On February 22, 2007 our office received a facsimile from Ms. Stacey Heaton from Royal & Sun Alliance Insurance PLC in Manchester, England (Exhibit "I")

advising of their involvement in the matter as cargo insurers of White Horse Machinery

and which stated in relevant part:

> As you were contracted to carry out this movement, we now look to your
> company for reimbursement of our outlay together with that of our insured.

11.     On February 26, 2007 I emailed Mr. Mak to inquire why this claim was taking so

long to process (Exhibit "J").

12.     Mr. Mak informed me by email (Exhibit "K") that as far as he knew, the trucker

had been notified of the damage and the claim had been forwarded by them.

13.     On March 29, 2007 I received a facsimile from counsel for Djuric Inc. (Exhibit

"L") admitting liability for the damage as follows:

> On July 6, 2006, Container No GLDU4110080 sustained damage during carriage
> by Djuric while enroute to Bourbon, Indiana. The container struck an overhead
> bridge at or near the intersection of 87th Street and Wentworth in Chicago,
> Illinois...

14.     Counsel for Djuric also asserted on page 10 of the facsimile that Djuric is a

participating carrier, sub-contractor and intended beneficiary to the Yang Ming and/or

OWL carriage documents. As such, Djuric had the protection of the COGSA limitations

for carrier liability to damaged cargo.

15.     On or about April 10, 2007 suit was commenced by Royal & Sun Alliance

Insurance PLC solely against OWL for the alleged loss.

16.    On or about July 2, 2007 defendant OWL filed a third party Summons and

Complaint against Yang Ming and Djuric.


I declare under penalty of perjury of the laws of the United States of America that the

foregoing is true and correct.


Dated: December /2, 2007
       Lake Success, New York

_____
ESA RADONCIC

# EXHIBIT F





# T E L E F A X

| TO: | | FROM: |
|---|---|---|
| Ocean World Lines, Inc. / Lake Success, NY | | Mohammed El Otmani |
| **ATT.:** | | **DATE / REFERENCE:** |
| Donna L. Colchetti | | July 11, 2006 / our file 302114 |
| **PHONE NO.:** | **FAX NO.:** | **TOTAL PAGES:** |
| (516) 616-2400 | (516) 616-2424 | -1- |

<u>RE.:</u>     Your reference NYM01871 / Container # GLDU 411 008-0

Hi Donna,

Above mentioned container was delivered this morning to the consignee in Bourbon, IN and I understand both the container and some of the content is damaged. According to the driver who delivered the container this morning, the driver who picked it up at the rail terminal drove through a low bridge while transferring it to the trucker's yard and caused the damage. The same statement was made yesterday by e-mail by Yang Ming Line.

In the interest of our customer, we herewith hold you liable for the damage to the freight as well as for consequent damages and would appreciate your co-operation in getting this issue settled. The freight has been unloaded from the container and is available for your or the carrier's surveyor to inspect. Please understand that riggers are at the location installing the equipment from the other containers and we'll soon need to be able to install whatever equipment is intact from the damaged container and get replacement for whatever can't be used. Time of the essence.

Best regards /
Mohammed El Otmani
Branch Manager
_____
a. h a r t r o d t (u.s.a.) Inc.
2777 Old Higgins Road
Elk Grove Village, IL 60007

tel. no.: (847) 956-6857 ext 101
fax no.: (847) 956-6877
e-mail : melotmani@hartrodtusa.com
homepage: www.hartrodt.com

Tony Pastore

(508) 872-
3981

a. hartrodt (U.S.A.), Inc.          2777 Old Higgins Road          Elk Grove Village, IL 60007
Phone: (847) 956-6857          Fax: (847) 956-6877          E-mail: chi@hartrodtusa.com
All business undertaken subject to terms and conditions as recommended by the National Customs Brokers
and Forwarders Association of America, Inc. Text available upon request.

38

JUL. 11. 2006 1:17PM     A. HARTRODT CHICAGO          NO. 0389     P. 1

# **<u>EXHIBIT G</u>**

# OCEAN WORLD LINES
## 1981 MARCUS AVE
## LAKE SUCCESS, NY 11042
### TEL: 516-616-2400 FAX# 516-616-2424

Yang- Ming                                           7-12-06
Tel: 201-222-8899                                    Ref# NYM01871
Attn: Henry Mak

Re: B/L # YMLUT670037050
    CTR # GLDU411008-0
    Customer: Pastore Printing

Dear Henry,

Per our phone conversation please note the above-mentioned container was delivered to
the consignee in Bourbon, IN and I understand both the container and some of the content
is damaged. According to the driver who delivered the container this morning, the driver
who picked it up at the Rail terminal drove through a low bridge while transferring it to
the trucker's yard and caused the damage. The same statement was made by email by
Yang Ming Line.

In the interest of our Customer, we herewith hold you Yang Ming Line fully liable for the
damage to the freight as well as the consequent damages and would appreciate your co-
operation in getting this issue settled. The freight has been unloaded from the container
and is available for your surveyor to inspect. Please understand that riggers are at the
location installing the equipment from the other containers and well soon need to be able
to install whatever equipment is tact from the damaged container and get replacement for
whatever cant be used. Time is of the essence

For surveying please contact Mohammed El Otmani @ 847-956-6857 ext 101 email:
melotamani@hartrodtusa.com

Please also supply us the address of the exact location of where the trucker went under
the low bridge. Thank you

Sincerely

Esa Radoncic

# EXHIBIT H

# VERICLAIM

195 Broadway
New York, New York 10007

January 31, 2007

Ocean World Lines
1981 Marcus Avenue
Lake Success, New York 11042

---

CLAIM:                          "YM MILANO"
                                <u>OUR REF.NO. 06-07189-2-RFA</u>

## PHYSICAL DAMAGE

SHIPMENT OF HEIDELBERG 12 COLOR PINTING PRESS              <u>$250,000.00</u>

# **EXHIBIT I**

# ROYAL & SUNALLIANCE

**Facsimile**

Royal & SunAlliance Insurance Plc
17 York Street
Manchester
M2 3GR

| To: | Donna L. Colchetti | | |
| --- | --- | --- | --- |
| | Ocean World Lines | | |
| From: | Stacey Heaton | | |
| Our Ref: | SH/M126070 | Your Ref: | NYM01871/Container GLDU 411 008-0 |
| Facsimile: | 00 1 516 616 2400 | | |
| Date: | 22nd February 2007 | Page 1 of | 11 |

**Re:** Our Insured: White Horse Machinery
Damage to Printing Machine – Germany/USA – 11/07/06 – Weight 2785.71kgs

Dear Donna,

We refer to the above claim and would advise our involvement as Cargo Insurers of White Horse Machinery.

We are in the process of finalising this claim for the sum of £62,824.62 net of a £1,000.00 policy excess. As you were contracted to carry out this movement, we now look to your company for reimbursement of our outlay together with that of our Insured.

With the above in mind, we enclose herewith copies of the following supporting documentation:-

➢ A copy of the commercial invoice as evidence of value
➢ Bill of Lading
➢ Claused delivery receipt
➢ Written claim against you
➢ Quantified claim
➢ Replacement Invoice for the value of the machine

We trust that the documents supplied are sufficient to support our claim and await your early settlement proposals.

Whilst writing, we note that the 9 month time bar is due on 11th April 2007 and we would be grateful for your agreement with a 3 month time extension up to and including 11th July 2007 whilst investigations continue.

Kind regards

*Stacey Heaton*

**Stacey Heaton**
**Recoveries Adjuster**
Tel: 00 44 161 235 3889
Fax: 00 44 161 235 3903
stacey.heaton@uk.royalsun.com

"This fax and the information in it is intended for the recipient named above. If you are not the intended recipient, please notify us immediately; you should treat the information in the fax as being in confidence unless otherwise notified by us. You should not copy it or use it for any purpose nor disclose its contents to any person."

Policies are issued by Royal & Sun Alliance Insurance plc No. 93792
Registered in England and Wales at St. Mark's Court,
Chart Way, Horsham, West Sussex RH12 1XL.
Authorised and Regulated by the Financial Services Authority

# **<u>EXHIBIT J</u>**

Message    Case 1:07-cv-02889-AKH    Document 16    Filed 12/20/2007    Page 15 of 30

Henry

**From:** Esa Radoncic [mailto:eradoncic@owlusa.com]
**Sent:** Monday, February 26, 2007 10:45 AM
**To:** Henry Mak - usa clm
**Subject:** RE: claim

*MESSAGE ORIGIN = OUTSIDE, RECEIVED DATE(NY) = 10:44:22 Mon 26Feb 2007*

Henry,

Please advise why this claim is taking so long.

Thank you
Esa Radoncic
Ocean World Lines
Claim Dept.

-----Original Message-----
**From:** Esa Radoncic
**Sent:** Wednesday, July 12, 2006 2:22 PM
**To:** 'henrymak@ymlusa.com'
**Subject:** claim

<< File: NYM01871 Claim.doc >>

Esa Radoncic

*Ocean World Lines*
1981 Marcus Avenue
Lake success N.Y 11042
Suite E-100
Tel: 516-616-2407
Fax: 516-616-2472

2/26/2007

# **EXHIBIT K**

## Esa Radoncic

From:    Henry Mak - usa clm [henrymak@YMLUSA.COM]
Sent:    Monday, February 26, 2007 11:10 AM
To:      Esa Radoncic
Subject: YM Milano 92W

*MESSAGE ORIGIN = YMLUSA, SENT DATE(NY) = 11:10:19 Mon 26 Feb 2007*

Esa,

The claim was filed by Vericlaim. Which one is handling this claim? As far as I know, the trucker has been notified of the damages and a claim was forwarded to them. As you know, if the claim is for one machine, the package limitation of $500.00 will apply based on COGSA.

I will send another notice to the trucker and follow by a phone call. I will let you know today or tomorrow.

Henry

---

**From:** Esa Radoncic [mailto:eradoncic@owlusa.com]
**Sent:** Monday, February 26, 2007 11:01 AM
**To:** Henry Mak - usa clm
**Subject:** RE: claim

*MESSAGE ORIGIN = OUTSIDE, RECEIVED DATE(NY) = 11:00:15 Mon 26 Feb 2007*

vsl: YM Milano 92 w
B/L # YMLUT 670037050
CTR # GLDU 4110080

I NEED AN ANSWER ON THIS CLAIM

thank you
Esa

> -----Original Message-----
> **From:** Henry Mak - usa clm [mailto:henrymak@YMLUSA.COM]
> **Sent:** Monday, February 26, 2007 10:58 AM
> **To:** Esa Radoncic
> **Subject:** RE: claim
>
> *MESSAGE ORIGIN = YMLUSA, SENT DATE(NY) = 10:58:17 Mon 26 Feb 2007*
>
> Esa,
>
> You have to give me the vessel name, voyage number, container and BL no. I have many claims and without these, I have no way of knowing which claim you are referring to.
>
> Henry

2/26/2007

# **EXHIBIT L**

**ROWE & ROWE**
**1003 North Hickory Road**
**South Bend, IN  46615**
**Telephone: (574) 233-8200**
**Fax No: (574) 234-5987**

# BROADCAST FAX

**to:**
> **Ms. Stacey Heaton**
> **Ms. Cindy Stutesman**
> **Ms. Esa Radoncic**
> **Ms. Joyce Fairley**

**fax #:**
> **00441612353903**
> **(574) 236.6399**
> **(516) 616-2424**
> **(680) 572-0805**

**from:**
> **Gregory J. Haines**

**date:**
> **March 29, 2007**

**subject:**
> **RE:  Djurick Trucking/Harmony Leasing Corp.**

**pages:**
> **12 (including cover page)**

LAW OFFICES
# ROWE & ROWE

R. KENT ROWE
R. KENT ROWE, III
GREGORY J. HAINES
MICHAEL S. CONNELL

1003 NORTH HICKORY
SOUTH BEND, INDIANA 46615
(574) 233-8200

March 29, 2007

Ms. Cindy Stutesman
Gibson Insurance Agency
PO Box 11177
South Bend, IN 46634

Ms. Joyce Fairley
Yang Ming Lines
1225 West 22nd Street, Ste. 120
Oakbrook, IL 60523

Ms. Esa Radoncic
Ocean World Lines
1981 Marcus Avenue
Lake Success, NY 11042

Ms. Stacey Heaton
Royal & Sun Alliance Insurance
17 York Street
Manchester, United Kingdom M23GR

RE:   OWL Bill of Lading: OWLUHA6S060150NY
Yang Ming Sea Waybill: YMLUT670037050
Djurick Trucking/Harmony Leasing Corp.
Date of Loss: 07/06/2006
Our File No: A6-6060

Dear Carrier Representatives and Insurance Representatives:

We represent Djurick Trucking, Inc., in relation to the above-captioned matter. This letter is in response to an inquiry from Ms. Cindy Stutesman, made on behalf of Harmony Leasing Corp. (hereinafter "Harmony") regarding Harmony's business interruption claim resulting from cargo damage. The cargo damage occurred to a commercial printer during the inland portion of an overseas journey from a sea terminal in Bremerhaven, Germany to Harmony in Bourbon, Indiana.

## BACKGROUND OF CLAIMS

My understanding of the background of the claims presented by Harmony and Royal Sun Alliance is as follows:  Harmony was searching for a commercial printer and Pastore Printing Services, Inc. (hereinafter "Pastore") located a suitable used printer in Germany. This printer was offered for sale by the firm of White Horse Machinery (hereinafter "White Horse") in England.  Pastore apparently purchased the printer by a lump-sum payment to White Horse or the printer was purchased by Pastore on a consignment sale basis.  The printer's final destination was Harmony, Pastore's customer. The printer appears to be currently leased by Harmony to Harmony Press, Inc. or Harmony Publishing Corporation.

Ocean World Lines (hereinafter "OWL") served as the common carrier and agent for the "Merchants" [White Horse, Pastore and Harmony] in coordinating transportation of the printer from the sea terminal in Bremerhaven, Germany to Harmony in Bourbon, Indiana by means of a through Bill of Lading issued by OWL under number OWLUHA6S060150NY. OWL is a NVOCC (Non-Vessel Operating Common Carrier) subject to the authority of the U.S. Federal Maritime Commission and the Carriage of Goods by Sea Act.

As OWL does not operate any vessels itself, OWL subcontracted the transportation of the printer to Yang Ming Marine Transport Corp. (hereinafter Yang Ming) which issued a non-negotiable through Sea Waybill number YMLUT670037050. The Yang Ming Sea Waybill indicates the shipper/consignee as OWL and the printer was shipped on a vessel known as the Miliano which provided the printer carriage from the port of loading (Bremerhaven, Germany) to the port of discharge (Norfolk, Virginia). The Yang Ming Sea Waybill describes the cargo as four sealed containers with the shipper's load, stowage and count, S.T.C. [said to contain] "*23 packages.*" Container GLDU4110080 reportedly contained "*7 pkgs.*"

The Yang Ming Sea Waybill further indicates that the freight charge was prepaid and the inland portion of the transportation was to be provided by a combination of rail and motor carrier service. Yang Ming apparently sub-contracted the rail carriage to Norfolk Southern Railroad and the motor carriage to Djurick Trucking, Inc., (hereinafter "Djurick"). The Sea Waybill also provides that, "the receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and the carrier's applicable tariff. Delivery of the Goods will be made to the Consignee or his authorized representative upon proper proof of identity and authorization without the need of producing or surrendering a copy of the Sea Waybill." The "declared value" portion of the Yang Ming Sea Waybill was left blank by OWL. The "shipper declared value" in the OWL Bill of Lading "Excess Valuation" section was "*not declared*" by White Horse.

Four containers (holding the printers) arrived at the Norfolk Southern rail yard located in Chicago, Illinois under a Norfolk Southern carriage document "T670037050." On July 5, 2006 a Yang Ming Work Order was issued to Djurick for delivery of the containers to Harmony located in Bourbon, Indiana. Likewise, an OWL Delivery Order NYMO1871 called for Djurick to deliver the containers to Harmony in Bourbon, Indiana. On July 6, 2006, the containers (holding the printers) were picked up by Djurick as indicated by the NS Intermodal Certification Outgate document and that the printer was "*received under the terms and conditions of the NS Intermodal Rule Circular and other contract(s).*"

On July 6, 2006, Container No. GLDU4110080 sustained damage during carriage by Djurick while enroute to Bourbon, Indiana. The container struck an overhead bridge at or near the intersection of 87th Street and Wentworth in Chicago, Illinois. The

damaged container along with the other undamaged containers, were delivered to Harmony by Djurick as indicated by the cartage receipt which contained the following exception:

> Entire 1st Unit ruined. Balance of load possibly damaged. Arrived this way on truck. Must inspect balance of load for damage.

## CLAIMS

As a result of the damaged condition of the printer, Pastore arranged for repairs and tendered the repair bills to White Horse who, in turn, tendered the repair bills to its cargo insurance carrier, Royal. Royal & Sun Alliance a/s/o White Horse claims printer damage in the amount of 62,825.00 pounds sterling which converts to approximately One Hundred Twenty-three Thousand Seven Hundred ($123,750.00) U.S. Dollars.

Harmony complains that it has not been made whole by the repairs, because, if I understand Harmony's position correctly, scheduled printing projects which had been planned to be completed by the newly arrived printer had to be diverted to other in-house printers or the printing projects had to be sub-contracted to other printing vendors during the period of repairs. This situation negatively affected Harmony's expected profit margin on the scheduled printing jobs originally planned for the newly arrived printer. Harmony is therefore making a business interruption claim in the approximate sum of Two Hundred Thousand U.S. Dollars ($200,000.00) and has directed this claim to Harmony's property and casualty insurer; Djurick and its liability insurer, Acuity, and White Horse Machinery and its cargo insurer Royal & Sun Alliance.[1]

The rights and remedies of Harmony, Royal, the connecting carriers, and the intended beneficiaries of the through Bill of Lading and Sea Waybill,[2] are, in my view, determined by reference to the OWL Bill of Lading, the OWL Tariff, the Yang Ming Sea Waybill, Yang Ming Tariff and the law applicable to this loss.[3]

## OWL CARRIAGE DOCUMENTS

The OWL Bill of Lading is subject to the Carriage of Goods by Sea Act (hereinafter "COGSA). The Bill of Lading reads in pertinent part:

---

[1] It appears that title to the printer may have remained with White Horse (or a consignor) until the delivery of the printer to Harmony although the Sea Waybill indicates "FOB any port." As noted above, the purchase contracts between White Horse, Pastore and Harmony have not been made available to me so the status of ownership of the printer at the time of loss is uncertain.

[2] I have requested Yang Ming's Sea Waybill's terms and conditions and Yang Ming's Tariff. I have not yet been supplied with Yang Ming's Tariff, however, I have had an opportunity to review the Yang Ming Sea Waybill and have discussed the terms thereof in this correspondence.

[3] Royal & Sun Alliance appears to maintain cargo insurance for the printer which may provide a source of recovery for Harmony but I have no knowledge of the terms of the insurance policy provisions in force and effect between Royal and White Horse.

Carrier Representatives              4                      3/29/2007
Insurance Representatives

1.    **DEFINITIONS** .... Carrier means Ocean Word Lines, Inc.,
      or OWL "COGSA" means the U.S. Carriage of Goods by Sea
      Act 1936 as amended.

                              * * *

"Merchant" includes the Consignor, Shipper, Holder, Consignee,
the Receiver of the Goods ... "Package" the word package shall
include each container ... "Servants or Agents" includes ... sub-
contractors ... road and rail transport operators and any
independent contractors employed by the Carrier in the
performance of the Carriage.

                              * * *

**5.   CARRIER'S    RESPONSIBILITY    AND    CLAUSE
PARAMOUNT**
(B).   Combined Transport ... 2. If the stage of carriage during
which loss or damage occurred is known ... liability in respect of
any such loss or damage occurring shall be determined as follows:
(a) By the provisions contained in ... national law, which
provisions cannot be departed from by private contract to the
detriment of the Merchant, and would have applied if the
Merchant had made a separate and direct contract with the
Carrier in respect of the particular stage of the carriage where the
loss or damage occurred and received as evidence thereof any
particular document which must be issued in order to make such
... national law applicable.

                              * * *

(D) USA Clause Paramount (if applicable)

1.    If carriage includes carriage to ... a port in the United
      States of America this Bill of Lading shall be subject to
      COGSA, the terms of which are incorporated herein and
      shall be paramount throughout carriage ... the entire time
      that the Goods are in the actual custody of the carrier or its
      sub-contractor at the sea-terminal in the United States of
      America before loading onto the Vessel or after discharge
      therefrom as the case may be.  COGSA shall be extended
      to apply to all Goods before the Goods are loaded on and
      after they are discharged from the Vessel and throughout

Carrier Representatives 5 3/29/2007
Insurance Representatives

the entire time during which the Carrier is responsible for the goods under the Bill of Lading.

2. The Carrier shall not be liable in any capacity whatsoever for loss or delay to the Goods ... howsoever caused while the Goods are in the United States of America away from the sea-terminal and are not in the actual custody of the Carrier. At these times the Carrier acts as agent only for and on behalf of the Merchant and agrees to procure transportation of the Goods in accordance with the usual terms, conditions and tariff(s) of the participating Carriers ....

3. If COGSA applies then the liability of the Carrier shall not exceed U.S. $500 per package or customary freight unit unless the value of the Goods has been declared on the face hereof with the consent of the Carrier and extra freight has been paid ...

## 6. AMOUNT OF COMPENSATION

(1) For shipments to and from ports in the United States of America neither the Carrier nor the Ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of Goods in an amount exceeding U.S. $500.00 per package ...

## 7. SUB-CONTRACTING

Because the Carrier requires the assistance of others to perform the services undertaken under this Bill of Lading as well as transportation agreements between Carrier and others, *every...connecting rail, motor,* water, or air carrier or *other independent contractor,* including their agents, servants *and subcontractors performing said services shall have the benefit of every exemption from and limitation of liability, defense, right and liberty to which the carrier is entitled, under any provision of this Bill of Lading* or by applicable law provided however that any such servant or agent that takes, accedes or asserts the benefit of this provision by such action consents to the law and jurisdiction provisions of this Bill of Lading and in so doing

expressly waives any law, forum, and jurisdiction provisions in the underlying agreement, including Bill of Ladings or Service Contracts between itself and the Carrier.   For purposes of the foregoing provision, the Carrier shall be deemed to be the agent or trustee for the benefit of all such persons and all such persons shall be deemed to be parties to the contract of carriage and evidenced hereby to that extent.   The Shipper and Consignee undertake not to sue or proceed against any such persons in the event either of them does so, it shall indemnify the Carrier against all resulting loss, liability and expense, including attorney's fees." [Emphasis Added]

**LAW AND JURISDICTION.**   Whenever the "Carriage of Goods by Sea Act" ("COGSA") of the United States of America applies by virtue of paragraph 5, this contract of carriage is to be governed by United States law (exclusive of its choice of law rules) and the United States Federal Court for the Southern District of New York is to have exclusive jurisdiction to hear all disputes hereunder including third party proceedings or those involving several defendants.   This clause supersedes any conflicting clause in bills of lading or other documents issued by contractors or sub-contractors of OWL. ...

In accepting this Bill of Lading, the Merchant [Harmony, White Horse and Pastore] expressly accepts and agrees to all its terms, conditions and exceptions, whether printed, stamped or written, or otherwise incorporated, of which the Merchant is fully aware notwithstanding the non-signing of the Bill of Lading by the Merchant.

[The OWL Tariff in force and effect on the date of loss reads in pertinent part]:

* * *

## 17.   VALUATION

In the event of loss, damage ... to goods exceeding in actual value the equivalent of $500 in lawful money of the United States, per package, ...the value of the goods shall be deemed to be $500 per package or unit, unless the nature and higher value of the goods have been declared

by the Shipper herein and extra charges paid as provided
in Carrier's Tariff. ...The word "package" shall, in addition
to its regular use, also includes a container used to
ship...Freight, All Kinds, or any other goods shipped under
a Lump Sum rate...and any container used to ship goods
which are not specifically described in the Bill of Lading as
goods shipped in packages. When the U.S. Carriage of
Goods by Sea Act does not apply on its own force, any
compulsory applicable limitation lower than $500 limitations
shall apply in place of $500 limitation. In no event shall
the Carrier be liable for more than the damage actually
sustained by the Cargo. Carrier shall not be liable for any
consequential or special damages, and shall have the
option of replacing and/or repairing any damaged goods.

## 21.    THROUGH AND ON BOARD BILLS OF LADING

At all times when goods are in the care, custody or control
of a Participating Land Carrier, such Carrier shall be entitled
to all rights, privileges, liens, limitations of and
exonerations from liability, optional or discretionary rights,
or rights of indemnity granted to any Carrier hereunder to
the full extent permitted to Participating Carriers under any
rules and regulations and laws relating to Carriers.

## 22.    CLAIMS

Claims for physical loss of or damage to the goods may be filed
against Carrier which agrees to process said claims to conclusion.
It is agreed that in the event of payment of any such claims by
Carrier or its agent, it shall automatically be subrogated to all the
rights of the Shipper or Consignee against all others, including
Participating Carriers, on account of such loss or damage. Claims
must be filed and suit commenced within the time limits provided
by law and the terms of the Bill of Lading and tariff of the Carrier
...

## <u>YANG MING CARRIAGE DOCUMENTS</u>[4]

The Yang Ming Sea Waybill is subject to COGSA. The Sea Waybill reads in pertinent part:

> In accepting this Bill, the Merchant [shipper and consignee or receiver of the Goods][5] agrees to be bound by all these stipulations, exceptions, terms and conditions on the face and back hereof ... as if signed by the Merchant.

### * * *

### 1.   DEFINITIONS

The following words whether contained on the front or back have the meanings herein assigned: ... (3) "Carrier" means the ... Underlying Carrier ... (12) "Multimodal Transport" arises at the place of the receipt and/or the place of delivery are indicated on the face hereof in the relevant spaces ... (16) "Sub-Contractor" includes ... Underlying Carrier, road and rail transport operators and any independent contractor employed by the Carrier in performance of the carriage ... (17) "Underlying Carrier" includes any ... rail, motor, ... Carrier utilized by the Carrier for any parts of the transportation ...

### * * *

### 4.   EXEMPTIONS AND IMMUNITIES OF SERVANTS, AGENTS, STEVEDORS, AND OTHER SUB-CONTRACTORS

(1)   The Carrier shall be entitled to sub-contract the whole or any part of carriage on any terms whatsoever.

(2)   In contracting for the following exemptions and limitation of, exoneration from, liability, the Carrier is acting as agent and trustee for all other Persons named in this clause. It is understood and agreed that, other than the Carrier, no Person ... is or shall be deemed to be, liable with respect to

---

[4] I have not been supplied with the Yang Ming Tariff.
[5] See Yang Ming's Sea Waybill Definition (11) "Merchant."

the Goods as Carrier ...  If, however, it shall be adjudged
that any Person other than the Carrier ... of the Goods, or
under responsibility with respect thereto, then all
exemptions and limitation of and exonerations from,
liability provided by law or by the terms in the Bill shall be
available to such Person.

(3)    It is also agreed that each of the aforementioned Persons
referred to in the preceding clause are intended
beneficiaries, but nothing herein contained shall be
construed to limit or relief from liability to the Carrier for
acts arising or resulting from their fault or negligent (sic).

\* \* \*

## 7.    CARRIER'S    RESPONSIBILITY    AND    CLAUSE PARAMOUNT.

(1)    ... [I]n the event that this Bill covers shipments to and from
the United States, then COGSA shall be compulsorily
applicable ...

(2)    MULTIMODAL TRANSPORT

a. With respect to multimodal transportation from, to, or
within the United States, when the Goods are in the
custody of the Carrier or any Underlying Carrier, such
multimodal transport will be governed by the provision
of Clause 7(1). ...

\* \* \*

## 22.    NOTICE OF CLAIM AND TIME FOR SUIT

... In any event the Carrier shall be discharged from all
liability in respect of ... loss or damage unless suit is brought
within one (1) year after delivery of the Goods.

## 23.    LIMITATION OF LIABILITY

... (3) In the event this Bill covers the goods moving to
and from a port of final destination in the United States, the

Carrier's limitation of liability in respect to the Goods shall in no
event exceed U.S. $500 Dollars per package or when the Goods
are not shipped in packages U.S. $500 Dollars per customary
freight unit ... (4) The aforementioned limitations of liability set
forth in this provision shall be applicable unless the nature and
value of the Goods have been declared by the Merchant (shipper
and consignee) before shipment and agreed to by the Carrier, and
inserted in this Bill in the applicable *ad valorum* freight rate set
out in the Carrier's tariff, is paid.

## COGSA LIMITATIONS

The OWL and Yang Ming carriage documents are maritime contracts.[6] COGSA
[46 U.S.C. §30701, et. seq.] governs Bills of Lading for "carriage of goods by sea to or from
ports of the United States, in foreign trade ..." COGSA permits parties to extend, as here, the
COGSA default liability limits to damage done subsequent to the cargo's discharge from the
ocean vessel and thereby cover downstream land carriers. See, *Kirby*, 543 U.S. at 28, 29.
Djurick is a Participating Carrier, sub-contractor and intended beneficiary to the Yang Ming
and/or OWL carriage documents.   As such, Djurick has the protection of the COGSA
limitations for carrier liability to damaged cargo.

Djurick's liability for cargo damage is not subject to local (Illinois or Indiana)
common law or statutory remedies. See, *Fortis Corporate Ins. v. M/V Ontario*, 2005 AMC 811
(N.D. Ind. 2005). ("Where applicable, COGSA provides an 'exclusive remedy'") citing *Polo
Ralph Lauren*, infra. As the U.S. Supreme Court noted in *Kirby*, supra "applying state law to
cases like this one [Kirby] would undermine the uniformity of general maritime law." *Id.* at
28.   The factual situation in *Kirby* is similar to the circumstances involving Djurick and
Harmony as the cargo damage occurred during the inland portion of an overseas shipment
pursuant to carriage documents issued by an NVOCC and a steamship line.

COGSA affords one cause of action for damaged cargo transported pursuant to
maritime contracts. Harmony, as "Merchant" and consignee involved in the carriage of the
printer, is bound by the terms and conditions therein, including the incorporation of COGSA
limitations. See, *Polo Ralph Lauren, LP v. Tropical Shipping & Construction Co., Ltd.*, 215
F.3rd 1217, 1220 (11th Cir. 2000).

Finally, White Horse and the consignees have undertaken, per the OWL Bill of
Lading, not to sue or proceed against any sub-contractor as noted above. Likewise, the Yang

---

[6] *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 27 (S. Ct. 2004) ("So long as a Bill of Lading requires substantial carriage of goods by
sea, its purpose is to effectuate maritime commerce – and thus it is a Maritime contract. Its character as a Maritime contract is not
defeated simply because it also provides for some land carriage.")

Carrier Representatives                    11                        3/29/2007
Insurance Representatives

Ming Sea Waybill provides that no person, including sub-contractors and connecting carriers, shall be deemed to be liable with respect to the goods as Carrier.

## Conclusion

Djurick must respectfully deny the claims presented by Royal a/s/o White Horse Machinery and Harmony as said claims are not properly directed to Djurick under the applicable maritime carriage documents, which are subject to the COGSA provisions incorporated therein.[7]

If any carrier representative or insurance representative has any questions concerning this letter or if you believe any point raised in the preceding discussion is unclear or in error with respect to the cited carriage document language or legal authority, please contact me.

Very truly yours,

Gregory J. Haines

GJH:sk
cc:   Mr. Rich Crimeral
      Djurick Trucking, Inc.
      4805 Sheffield Avenue
      Hammond, IN 46327
      Acuity Mutual Insurance Company
      Mr. John Stevens
      Post Office Box 58
      Sheboygan, WI 53082

---

[7] In the fairly recent case of *Mitsui Marine and Fire Insurance Co. v. Hanjin Shipping Company, Ltd.*, 632 S.E.2d 467 (Ga. App. 2006) an insurer, as subrogee of the cargo owner, claimed that the cargo owner was not a party to any Bill of Lading and should not be bound by the Bill of Lading's COGSA limitation. The Appellate Court disagreed with this position stating, "*the Kirby Court plainly established a bright line default rule that 'an intermediary binds a cargo owner to the liability limitations it negotiates with downstream carriers.' Privity of contract is not required, nor is a traditional agency relationship. The [U.S. Supreme] Court's holding did not depend on any particular definition of the parties in the Bills of Lading it analyzed.*" (p. 693, 694).