CLARK, ATCHESON & REISERT
Peter D. Clark (PC 6190)
Attorney for Defendant
7800 River Road
North Bergen, NJ 07047
Tel: 201-537-1200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

ROYAL & SUN ALLIANCE INSURANCE PLC,　:

                    :

            Plaintiff,　:

                    :

      -against-　:

                    :

                    :

OCEAN WORLD LINES, INC.　:

                    :

           Defendant.　:

--------------------------------------------------------------x

OCEAN WORLD LINES, INC.,　:

                    :

                    :

      Third-Party Plaintiff,　:

                    :

      -against-　:

                    :

YANG MING MARINE TRANSPORT CORP.　:
and DJURIC TRUCKING, INC.　:

                    :

      Third-Party Defendants　:

--------------------------------------------------------------x

**ECF CASE**

**07-CV-2889 (AKH)**

**RULE 56.1 STATEMENT OF MATERIAL AND UNDISPUTED FACTS**

Defendant, Ocean World Lines, Inc. (hereinafter "OWL), respectfully submits this

Statement of Material and Undisputed Facts pursuant to Local Rule 56.1 in support of its

motion for partial summary judgment limiting its liability to $3,500 under the relevant

section of the Carriage of Goods by Sea Act, 46 U.S.C. §§ 30701 *et seq.* (previously

codified at 46 U.S.C. App. § 1304(5).

1.   Plaintiff Royal & Sun Alliance Insurance PLC sues herein as the subrogated insurer of the shipper of the cargo in suit, White Horse Machinery Ltd. ("White Horse" or "Shipper"). (See Complaint at ¶ 1).

2.   Defendant Ocean World Lines, Inc ("OWL") is a U.S. Corporation with its principal place of business in the State of New York. (See Complaint at ¶ 2).

3.   OWL is a non-vessel operating common carrier ("NVOCC") engaged in the business of providing for international through transportation of goods by sea and land to and from the United States. (Baer Decl. ¶ 2.)

4.   VOCC Yang Ming owns and operates the motor vessel M/V YANG MING MILANO which is a large ocean going vessel engaged in international trade to and from the United States (Baer Decl. ¶ 4).

5.   OWL does not own or operate the ocean vessels or inland means of transportation upon which its cargo is carried. Rather, OWL secures blocks of cargo space from ocean vessel-operating common carriers ("VOCC") such as Yang Ming Marine Transport Corp. ("Yang Ming") and obtains volume discounts for through transport movements by entering into service contracts with VOCCs. (Baer Decl. ¶ 3).

6.     OWL in turn, secures cargo from one who tenders goods to a common carrier for transportation ("shipper"), such as the shipper/plaintiff White Horse and arranges with the VOCC to transport that cargo from the load port to its final inland destination at rates that are higher than those provided to OWL in its service contract, but lower than the rate the underlying shipper could obtain directly from the VOCC. (Baer Decl. ¶ 5).

7.     Each through transport shipment handled by OWL is memorialized by two sets of contracts of carriage. A combined transport OWL bill of lading contract of carriage is created between the underlying shipper and OWL, with OWL acting as the common carrier. A back to back non-negotiable sea waybill contract of carriage for the same shipment is then created between OWL, as the shipper and the VOCC such as Yang Ming with the VOCC operating as the common carrier. (Baer Decl. ¶ 8).

8.     The instant action involves damage to a Heidelberg offset printing press and related equipment which moved in container GLDU411008-0 from Bremerhaven, Germany to Bourbon, Indiana, by way of the Port of Norfolk, Virginia, as described more fully in OWL's combined transport order bill of lading OWLUHA6S060150 NY dated June 15, 2006 and other bills of lading. (See Complaint at ¶ 6).

9.      A copy of the relevant OWL Bill of Lading is attached here as Exhibit "B". The

terms and conditions of the backside of this bill of lading are also available on the

OWL website www.owl.biz (Exhibit "C"). OWL agreed to transport the

containerizied cargo belonging to White Horse from Bremerhaven, Germany to

Norfolk, Virginia with final delivery in Bourbon, Indiana. (Baer Decl. ¶ 9).

10.     The lower right front page of the OWL bill of lading states in relevant part:

Received by the Carrier from Shipper in apparent good order and condition
(unless noted herein) the total number or quantity of containers or packages or
units indicated, stated by the Shipper to compromise the Goods specified above..

11.     The description of packages and goods under "Particulars Furnished by Shipper"

for container GLDU411008-0 lists "7 packages" of the Heidelberg offset press.

12.     The Shipper White Horse designated the shipment as being comprised of 7

packages.

13.     Clause 5 (D)(1) states in relevant part:

1.  If carriage includes carriage to, from or through a port in the United States of
    America this Bills of Lading shall be subject to COGSA, ....COGSA shall be
    extended to apply to all Goods before the goods are loaded on or after they are
    discharged from the Vessel and throughout the entire time during which the
    Carrier is responsible for the goods under the Bill of Lading.

14.     Clause 5 (D)(3) of the OWL Bill of Lading states in relevant part:

If COGSA applies then the liability of the Carrier shall not exceed US$500 per
package or customary freight unit unless the value of the Goods has been decalred
on the face hereof with the consent of the Carrier and extra freight has been paid
in which case Clause 10 shall apply and the declared value (if higher) shall be
substituted for the limit  and any partial loss or damage shall be adjusted pro-rata
on the basis of such declared value.

15. Clause 6 of the OWL Bill of Lading states in relevant part:

(1) For shipments to or from ports in the United States of America neither the Carrier nor the Ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of Goods in an amount exceeding U.S. $500.00 per package lawful money of the United States of America, or in the case of Goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such Goods have been declared by the Shipper in accordance with the terms set out in Paragraph 10 and inserted on the reverse side of this Nill of Lading and extra freight paid.

16. The lower left front page of the OWL Bill of Lading states in relevant part:

Excess Valuation: Shipper declared value U.S. $ ___ not declared.

17. White Horse selected not to declare the value of the 7 packages prior to shipment and no declaration of the Cargo's value was inserted in the Bill of Lading and extra freight was not paid. (Baer Decl. ¶ 15).

18. OWL is licensed by the Federal Maritime ("FMC") to act as an NVOCC and is statutorially required by the FMC under the Shipping Act of 1984, as amended, to maintain publically available tariffs and to transport cargo subject to the terms and conditions of those tariffs. Under federal regulations NVOCC OWL is a common carrier in its relationship with an underlying shipper such as White Horse and is a shipper in its relationship with the VOCC such as Yang Ming. OWL is not a rail carrier, motor carrier or freight forwarder and is not regulated by the Surface Transportation Board ("STB"). Rail carriers, motor carriers and freight forwarders are regulated by the STB. (Baer Decl. ¶¶ 6 and 7).

19.   The shipment in question was carried aboard the M/V YANG MING MILANO during the ocean stage of the multimodal transport from Bremerhaven, Germany to Norfolk, Virginia. (See Complaint ¶ 7).

20.   In the instant case a non-negotiable sea waybill contract of carriage between Yang Ming and OWL, numbered YMLUT670037050 (Exhibit "D") was issued by Yang Ming on June 16, 2006. Yang Ming agreed with OWL to carry aboard the M/VYANG MING MILANO, (1) forty (40) foot container No. GLDU4110080 said to contain (7) packages from Bremenhaven to Norfolk, Virginia for final door delivery at Bourbon, Indiana. The waybill lists "Ocean World Lines Europe GMBH" as the "shipper" and "OWL" as "consignee" and "notify party." The value of the goods was never declared before shipment on the face of the Yang Ming sea waybill and no additional freight was paid. (Baer Decl. ¶ 16).

21.   Upon arrival of the M/V YANG MING MILANO in Norfolk Yang Ming had the cargo scheduled for train and motor carriage transport to Bourbon, Indiana. (Baer Decl. ¶ 17).

22.   The shipment moved from Norfolk, Virginia to the final destination in Bourbon, Indiana by interstate rail and motor carrier, including third-party defendant motor carrier Djuric Trucking Inc. (See Complaint ¶ 8).

23.    On or about July 11, 2006 OWL's Operation Manager was informed by facsimile from the consignee's customs broker (Exhibits "E" and "F") that the container in question was delivered on July 11, 2006 to the consignee in Bourbon, Indiana in damaged condition after the truck driver who picked up the container at the rail terminal drove through a low bridge while transferring the container to the trucker's yard. (Baer Decl. ¶ 18; Radoncic Decl. ¶ 8).

24.    On July 12, 2006 OWL's Claims Manager Esa Radoncic sent a letter (Exhibit "G") to OWL's subcontractor Yang Ming placing them on notice for the responsibility of the loss. (Radoncic Decl. ¶ 8).

25.    On March 29, 2007, Ms. Radoncic received a facsimile from counsel for Djuric Inc. (Exhibit "L") admitting liability for the damage as follows:

On July 6, 2006, Container No GLDU4110080 sustained damage during carriage by Djuric while enroute to Bourbon, Indiana. The container struck an overhead bridge at or near the intersection of 87th Street and Wentworth in Chicago, Illinois...

26.    Counsel for Djuric also asserted on page 10 of the facsimile that Djuric is a participating carrier, sub-contractor and intended beneficiary to the Yang Ming and/or OWL carriage documents. As such, Djuric had the protection of the COGSA limitations for carrier liability to damaged cargo.

27.    On or about April 10, 2007 suit was commenced by Royal & Sun Alliance Insurance PLC solely against OWL for the alleged loss. (Radoncic Decl. ¶ 15).

28.    On or about July 2, 2007 defendant OWL filed a Third Party Summons and

Complaint against Yang Ming and Djuric. (Radoncic Decl. ¶ 16).


29.    OWL admits that plaintiff's cargo was damaged in a trucking accident while it

was being carried by motor carrier Djuric under the terms and conditions of

OWL's through transport bill of lading.


Dated: North Bergen, NJ
         December 20, 2007


                                        Clark, Atcheson & Reisert
                                        Attorneys for Defendant/Third Party
                                        Plaintiff
                                        OCEAN WORLD LINES, INC.

                           By:    _____
                                        Peter D. Clark (PC 6190)
                                        7800 River Road
                                        North Bergen. NJ 07047
                                        (201) 537-1200


TO:    Law Offices of David Mazaroli
         Attorney for Plaintiff
         11 Park Place – Suite 1214
         New York, New York 10007
         Attn: David L. Mazaroli, Esq.


         Cichanowicz, Callan, Keane Vengrow & Textor, LP
         Attorneys for Third-Party Defendants
         61 Broadway, Suite 3000
         New York, New York 10066
         Attn: Paul M. Keane, Esq.