UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ECF
07 CV 2889 (AKH)

ROYAL & SUN ALLIANCE INSURANCE, PLC,
Plaintiff,
-vs-
OCEAN WORLD LINES,
Defendant & Third Party Plaintiff,
vs.
YANGMING MARINE TRANSPORT CORP. and DJURIC TRUCKING, INC.,
Third Party Defendants.

THIRD PARTY DEFENDANTS' ATTORNEY'S DECLARATION OF PAUL M. KEANE IN SUPPORT OF THEIR MOTION TO:

1. DISMISS THE CLAIMS AGAINST THEM ON GROUNDS OF A MANDATORY AND EXCLUSIVE FOREIGN FORUM SELECTION CLAUSE, OR
2. DISMISS THE CLAIMS AGAINST DJURIC ON GROUNDS OF A COVENANT NOT TO SUE, OR
3. LIMIT THEIR LIABILITY, IF ANY, TO $500 PER PACKAGE\

PAUL M. KEANE declares that the following statement is true under the penalty of perjury:

1. I am an attorney-at-law admitted to practice before this Court and I am a member of the law firm of Cichanowicz Callan Keane Vengrow & Textor, LLP, attorneys for the third party defendants in the above captioned matter. I am fully familiar with the facts and circumstances of this matter and, except as otherwise indicated, I make this declaration on personal knowledge to marshal the evidence in support of the third party defendants' prefixed motion to dismiss or limit liability.

2. As used in these motion papers:

a) "YMTC" refers to third party defendant, YANGMING MARINE TRANSPORT CORP.,

b) "DJURIC" refers to third party defendant, DJURIC TRUCKING, INC.; and

c) "OWL" means defendant & third party plaintiff, OCEAN WORLD LINES.

3. The motion of third party defendant, DJURIC TRUCKING, INC., to be dismissed from the case on substantive grounds based on a provision in the applicable contract of carriage is conditional in that it is asserted only in the event that the Court denies its motion to dismiss on grounds of a foreign forum selection agreement. The same is true for the third party defendants' alternative motion to limit their liability. Nothing in this motion is intended as a waiver of the forum clause or an admission of liability.

4. Attached to this declaration are true and complete copies of the following EXHIBITS:

EXHIBIT AA: The complaint.

EXHIBIT BB: The third party complaint.

EXHIBIT CC: The third party defendants' answer to the complaint.

EXHIBIT DD: The third party defendants' answer to the third party complaint.

EXHIBIT EE: The face of the YMTC sea waybill covering the shipment sued on. This document is taken from the Rule 26 disclosure provided by plaintiff.

EXHIBIT FF:

1. The reverse side terms and conditions of the YMTC sea waybill covering the shipment sued on. This document is taken from the Rule 26 disclosure provided by plaintiff.

2. A more legible copy of EXHIBIT FF-1 taken from the YMTC web site at https://www.YMTC.com.tw/tariff/tariff.html

EXHIBIT GG: Page from web site maintained by defendant & third party plaintiff, OWL at http://www.owlusa.com/ .

| | |
|---|---|
| EXHIBIT HH: | The face of bill of lading issued by OWL for the subject shipment. This document is taken from plaintiff's Rule 26 production. |
| EXHIBIT II: | Reverse side terms and conditions of the bill of lading issued by OWL for the subject shipment. This document is also taken from plaintiff's Rule 26 disclosure. |
| EXHIBIT JJ: | Service contract between OWL as shipper and YMTC as ocean carrier. |

[EXHIBIT KK is attached to the accompanying declaration of Richard Cribari.]

NATURE OF THE CLAIMS AND DEFENSES

5. Plaintiff, a subrogated underwriter, commenced suit against defendant and third party plaintiff, OCEAN WORLD LINES ("OWL"), to recover £63,824.62 ($125,851.38) for damage to two units of a containerized Heidelberg printing press (hereafter, "Shipment"). The Shipment was stowed in cargo shipping container No. G-LDU411008 and carried by sea from Bremerhaven, Germany to Norfolk, VA, then by rail to Chicago, and finally by truck to Bourbon, IN in June and July of 2006. *Mov. EXHIBIT AA, paras. 6 – 9.* Plaintiff bases subject matter jurisdiction on:

- 28 U.S.C. 1331 (federal question ) and,
- The admiralty and maritime nature of the claims within the meaning of F.R.Civ.P. 9(h).

*Id. at para. 3.* Plaintiff alleges that the Shipment was carried pursuant to an OWL bill of lading, and that OWL acted as a carrier or freight forwarder within the meaning of the Carmack Amendment. *Mov. EXHIBIT AA, para. 5.*

6. Invoking the Court's admiralty jurisdiction, OWL impleaded YMTC and DJURIC under F.R.Civ.P. 14(c) which requires the third party defendants to answer the complaint as well as the third party complaint. The basis of OWL's third party complaint is that YMTC and DJURIC acted as ocean carrier and trucker, respectively, for the Shipment, and that any damage was the result of its or their tort or breach. *Mov. EXHIBIT BB.*

7. In their answers to the complaint and third party complaint, both third party defendants raised as affirmative defenses the matters on which this motion is based. *Mov. EXHIBITS CC (paras. 17, 18, 22 – 24) and DD (paras. 11, 12, 14 – 16).*

## STATUS OF THE CASE

8. This case was commenced on April 10, 2007 by the filing of a complaint. Issue was joined as to all parties on September 6, 2007. *See, Court's Docket at Items Nos. 10 – 11.* No discovery has been had or noticed and no other motions have been made. This case is not on the ready trial calendar.

## THE FACTS

9. Plaintiff's shipper engaged defendant & third party plaintiff, OWL, to transport a shipment ("Shipment") comprising a Heidelberg printing press from Bremerhaven, Germany to Bourbon, IN. *Mov. EXHIBIT AA, paras. 1, 5 and 6.*

10. OWL is a non-vessel operating common carrier ("NVOCC"). *Mov. EXHIBIT BB, para. 3.*

11. An NVOCC (or, "NVO" for short) is a middleman. In its dealings with ocean common carriers such as YMTC, an NVOCC is both a shipper and the agent of its own shipper/customer. *I.N.A. v. S/S American Argosy*, 732 F.2d 299, 301 (2d Cir. 1984).

12. OWL has a web site which describes its business as follows:

> Ocean World Lines has been operating as a neutral NVO for over 20 years. We have a solid staff of experienced professionals who deliver knowledgeable and efficient service to our customers.
>
> OWL is one of the largest fully bonded NVO's in the world with over 100,000 TEU's shipped annually. We are able to save our customers both time and money by utilizing our extensive network of carriers and obtaining the best pricing and service available.
>
> We currently have eight offices strategically placed throughout the United States and regional offices in the UK, France and Germany. Additionally we maintain a network of agents throughout the world.

http://www.owlusa.com/about.html (*Mov. EXHIBIT GG*).

13. YMTC is a common carrier of goods by sea in the international trade of the United States, and is licensed by the U.S. Federal Maritime Commission ("FMC"). YMTC is included on the list of licensed vessel operating common carriers maintained by the FMC at www.fmc.gov/ .

14. At all relevant times, OWL was party to a Service Contract with YMTC. *See, Mov. EXHIBIT JJ.* This document was provided to me by YMTC.

15. OWL, as carrier, issued its bill of lading [No. OWLUHA65060] for the Shipment. That bill called for carriage from Bremerhaven to Norfolk to Bourbon. *Mov. EXHIBIT AA, paras. 3, 5, 6; and Mov. EXHIBIT HH.*

16. A bill of lading serves three functions: (a) it is a memorandum of the contract of carriage, (b) it is the carrier's receipt for the goods it receives from the shipper, and (c) where the

bill of lading is made out "TO ORDER," it serves as a negotiable document of title. 1 *Schoenbaum*, ADMIRALTY AND MARITIME LAW, p. 620, 622 – 23 (4th ed. 2004).

17. The OWL bill of lading contains reverse side terms and conditions. *Mov. EXHIBIT II and ADDENDUM 2).* Those conditions provide in relevant part that:

(a) OWL required the assistance of others to perform the services contracted for in its bill. *EXHIBIT II (and ADDENDUM 2), Cl. 7.*

(b) Among those whose services OWL would be using were "ocean common carriers with whom OWL has contracted for the physical transportation of the goods." *Id. at Cl. 1 ("Servants and Agents").*

(c) On shipments to, from or through the U.S., the U.S. Carriage of Goods by Sea Act ("COGSA") applies before loading, after discharge and throughout the entire time OWL is responsible for the Shipment. *Id. at Cl. 5.D.1.*

(d) Where COGSA applies, OWL's maximum liability is $500 per package or customary freight unit. *Id. at Cl. 5.D.3.*

(e) Also, where COGSA applies, this court has exclusive jurisdiction to hear disputes arising under the OWL bill. *Id. at Cl. 26.*

(f) OWL's subcontractors are entitled to the benefit of all OWL's bill of lading and legal defenses. *Id. at Cl. 7.*

(g) Any ocean carrier which avails itself of the OWL defenses given to it by Cl. 7 of the OWL bill waives any other law, forum, and jurisdiction agreements in any other bill of lading or other underlying agreement. *Id.*

18. As contemplated by its own bill of lading [*Mov. EXHIBIT II Cls.. 1, 7*], OWL engaged YMTC to perform the carriage that OWL had contractually undertaken with its shipper/customer. *Mov. EXHIBIT BB, para. 5.*

19. Third party defendant, YMTC, as ocean carrier, issued a through multimodal sea waybill [no. YMTCUT670037050] to cover the entire carriage from Bremerhaven to Bourbon. *Mov. EXHIBIT EE and FF.*

20. A sea waybill is a shipping document that serves as a memorandum of the contract of carriage, and a carriers receipt. It is not a document of title. 1 *Schoenbaum*, supra, at 624.

21. A "multimodal" bill of lading or sea waybill (also known as an "intermodal" or "combined transport" bill) is a contract of carriage which provides for carriage both by sea and by land. ` *Schoenbaum*, supra, at 589, 594 – 96.

22. A "through" bill is one which governs the entire transportation of goods and applies to connecting carriers even though they are not parties to the contract. *Tokio Marine & Fire Ins. Co., Ltd. v. Hyundai Merchant Marine Co., Ltd.*, 717 F.Supp. 1307, 1309 (N.D.Ill. 1989).

23. The YMTC sea waybill contains on its face a space for the shipper to enter a value for the Shipment if in excess of the YMTC limitation of liability. OWL did not fill in that box. *Mov. EXHIBIT EE.*

24. The shipper on the YMTC sea waybill is "OWL Ocean World Lines Europe GmbH". *Mov. EXHIBIT EE*

25 The web site maintained by defendant & third party plaintiff, OWL, shows that the named shipper is OWL's regional office in Germany. The address shown on the YMTC sea

waybill is the same one shown on the OWL web site at http://www.owlusa.com/about.html . *Compare, Mov. EXHIBITS EE and GG.*

26 The YMTC sea waybill contains reverse side terms and conditions which provide that:

(a) The bill covers all operations and services undertaken by the Carrier in respect of the Goods. *Mov. EXHIBIT FF (and ADDENDUM 1)* at Cl. 1(2).

(b) The YMTC bill applies not just to YMTC, but equally to any trucker or motor carrier YMTC engages to perform any part of the land carriage. *Id. at Cls. 1(3, 17) and 7(2).*

(c) All claims and disputes arising under the YMTC bill are to be determined exclusively in the English courts. *Id. at Cl. 26.*

(d) In the event of cargo loss or damage, the Merchant would look to YMTC and not to any motor carrier YMTC had subcontracted for. *Id. at Cl. 4.*

(e) Liability for cargo loss or damage is limited to $500 per package or customary freight unit. *Id., at Cls. 7(1- 2.A.) and 23(3).* And,

27. YMTC engaged DJURIC for part of the overland carriage from Norfolk to Bourbon. After the shipment has been carried by rail from Norfolk to Chicago by the Norfolk & Southern Railroad, DJURIC carried it from Chicago to Bourbon, but did not issue its own bill of lading. *Mov. EXHIBIT BB, para. 8; Mov. Decl. of CRIBARI, p. 2..*

28. DJURIC and YMTC negotiated their own rates. *Mov. Decl. of CRIBARI, p. 2 and Mov. EXHIBIT KK.* Because OWL had not declared full value for the Shipment in the YMTC

sea waybill, YMTC had no reason to want full liability coverage since the cost would have exceeded the freight charges it received from OWL.

29. During the carriage by DJURIC to Bourbon. The container in which the Shipment was stowed low-bridged at an overpass in Chicago on July 6, 2006. *Mov. EXHIBIT BB, para. 6.*

30. The printing press turned over the YMTC at Bremerhaven consisted of 4 shipper packed and sealed cargo shipping containers said to contain 23 packages of printing. *Mov. EXHIBIT EE.*

31. The low-bridging damaged 2 of the containerized units and resulted in this claim for £63,824.62 ($125,851.38). *Mov. EXHIBIT AA, paras. 6 – 9.*

32. The YMTC sea waybill contains the following notation on its face: "SHIPPER'S LOAD, STOWAGE AND COUNT." That language signifies that it was the shipper, not YMTC, that loaded and stowed the container. *Rit-Chem Co., Inc. v. S/S Valiant*, 743 F.Supp. 232, 233 (S.D.N.Y. 1990).

Dated: New York, NY, December 20, 2007

/s/ PAUL M. KEANE
Paul M. Keane