# EXHIBIT II

# Ocean World Lines (OWL)

Page 1

1981 Marcus Avenue
Lake Success, NY 11042

**1. DEFINITIONS.**

"Ocean World Lines, Inc." or "OWL" is the name of the carrier

"Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this Bill of Lading

"Carrier" means Ocean World Lines, Inc. or OWL. "COGSA" means the U.S. Carriage of Goods by Sea Act 1936 as amended.

"Container" includes any container (including an open top Container) flat rack, platform trailer, transportable tank, pallet, or any other device used for the transportation of goods

"Goods" means the cargo accepted from the Shipper and includes any Container not supplied by or on behalf of OWL. "Freight" includes all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading.

"Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25 August 1924, without the amendments by the Protocol signed at Brussels on 23 February 1968

"Hague-Visby Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August, 1924 and includes the amendments by the Protocol signed at Brussels on 23rd February, 1968, but only if such amendments are compulsorily applicable to this Bill of Lading.

"Holder" means any person for the time being in possession of this Bill of Lading to whom the property in the Goods has passed on or by reason of the consignment of this Bill of Lading or otherwise.

"Merchant" includes the Consignor, Shipper, Holder, Consignee, the receiver of the Goods, any person, including any Corporation or other legal entity, owning or entitled to the possession of the Goods or this Bill of Lading and anyone acting on behalf of such person.

"Package" The word package shall include each container whether container is stuffed and sealed by the Merchant or on his behalf although the Shipper may have furnished in the particulars herein the contents of such sealed container.

"Servants or Agents" includes the Master, Officer and crew of the vessel, owners and operators of vessels (other than the Carrier), underlying carriers (including ocean common carriers with whom OWL has contracted for the physical transportation of the goods), sub-contractors, stevedores, terminal and groupage operators, road and rail transport operators and any independent contractors employed by the Carrier in the performance of the Carriage.

"Shipper" includes the person entering into this contract of carriage with the Carrier and for whose account the Goods are shipped.

"The Internal Law of a State" shall be deemed to exclude all principles of private international law applied by such state

**2. CARRIER'S TARIFF.**

The terms of the carrier's applicable Tariff are incorporated herein. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between the Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail except that the applicable Tariff shall govern as to freight

**3. VALIDITY.**

The terms and conditions of the Bill of Lading shall be severable. If any term or condition is invalid or unenforceable, and if any breach of or deviation from any provision occurs, such circumstance shall not affect the validity or enforceability of the remaining terms and conditions

**4. SHIPPERS' RESPONSIBILITY.**

(A) Description of the Goods. (1) Unless the Goods have been stuffed into the Container(s) by or on behalf of the Carrier, this Bill of Lading shall be prima facie evidence of the receipt by the Carrier from the Shipper in apparent good order and condition, except as otherwise noted on the face hereof, of the total number of Containers indicated in the box on the face hereof entitled "no. of pkgs." (2) Any references to letters of credit, import licenses, sales contracts, invoices or order number and/or details of any contract to which the Carrier is not a party when shown on the face of this Bill of Lading are included solely at the request of the Merchant for his convenience and the Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value nor shall they increase the Carrier's liability under this Bill of Lading. The merchant further agrees to indemnify the Carrier against all consequences including such particulars in this Bill of Lading. (3) The Merchant warrants that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and those particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Merchant also warrants that the Goods are lawful Goods and contain no contraband. (4) The Merchant acknowledges and agrees that for shipments destined to the United States, regulations issued by the United States require that the Carrier provide full particulars of the shipment to U.S. Customs authorities twenty four hours prior to loading the Goods onto a vessel. The Merchant further acknowledges and agrees that any delay by it in providing said particulars to the Carrier could cause delays to the Goods upon arrival at a U.S. port and the Merchant thereby agrees to indemnify and hold the Carrier harmless for any delays to the Goods arising out of the failure to provide the information required by the Carrier in a timely manner including full responsibility and liability for any fines and penalties issued to the Carrier arising out of the delayed or inaccurate transmission of such information or for any liability incurred to vessel operating common carriers arising out of the delayed receipt of said information.

(B) The Merchant warrants that in agreeing to the terms and conditions hereof he is, or has the authority of, the Person owning or entitled to the possession of the Goods and this Bill of Lading. When containers, vans, skids, trailers, portable tanks, palletized units, and other cargo units are not packed or loaded by the Carrier, the Carrier does not represent to be accurate and is not bound by any description of the value, quantity, weight, condition or existence of the contents thereof as furnished by or on behalf of Shipper or identified in this bill of lading by use of the phrase "said to contain", "shipper's weight load and count" or terms of like meaning, and the Carrier in such case shall not be liable for any difference in value, quantity, weight or condition of the Goods furnished by or on behalf of the Shipper and that of the Goods actually delivered. The Carrier shall have no responsibility or liability whatsoever for the packing, loading, securing, shoring and/or stowage of contents of such cargo units, or for loss or damage caused thereby or resulting therefrom. The Merchant, with respect to cargo units not packed or laded by Carrier, represents and warrants: (a) that the Goods are properly described, marked, secured, and packed in their respective cargo units; (b) that any cargo units other than Carrier-furnished units are seaworthy and physically suitable, sound, and structurally adequate properly to contain and support the Goods during handling and the transportation contemplated by the Bill of Lading, and that such cargo-units may be handled in the usual and customary manner without damage to themselves or to their contents, or to the Vessel or its other cargo, or property, or persons; (c) that all particulars with regard to the cargo units and their contents, and the weight of each said cargo unit, are in all respects correct; and (d) that such units are in compliance with all applicable government regulations. Shipper and Consignee, jointly and severally, agree to indemnify Carrier and to hold it harmless in respect of any injury or death of any person, or any loss or damage to cargo or any other property or to the Vessel or any other vessel, or any other loss or expense, including, but not limited to, lost profits and attorneys' fees, caused by breach or any of the foregoing representations or warranties

The Merchant shall comply with all regulations or requirements of Customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts expenses, or losses incurred or suffered by the Carrier by reason thereof or by reason of any illegal, incorrect, or insufficient marking, numbering, or addressing of the Goods or any other illegal act and shall indemnify the Carrier in respect thereof by reason of any failure to so comply.

Whenever a Shipper or Consignee, or an agent or contractor acting on behalf of either of them, shall take possession of Carrier's container equipment, the Shipper or Consignee in possession, or for the benefit of whom an agent or contractor has taken possession, shall defend, indemnify and hold harmless the Carrier from and against any loss or damage to Carrier's equipment and third party property and injury to or death of persons arising out of the use of said equipment.

**5. CARRIER'S RESPONSIBILITY AND CLAUSE PARAMOUNT.**

A) Port to Port Transport

If carriage is Port to Port Transport or if the place of receipt or place of delivery is not known, the responsibility (if any) of the Carrier for loss or damage to the Goods occurring from the time when the Goods are loaded on board the Vessel at the Port of Loading until the time when the Goods are discharged from the Vessel at the Port of Discharge shall be determined in accordance with the provisions of Clause 5(B)-(D).

The Carrier shall be under no liability whatsoever for loss or damage to the Goods or non-delivery or misdelivery howsoever caused if such loss or damage, non-delivery or misdelivery arises prior to loading onto or subsequent to discharge from the Vessel. Notwithstanding the above, in case and to the extent that any applicable law provides for any additional period of responsibility the Carrier shall have the benefit of every right, defense, limitation and liberty of the Hague Rules during such additional compulsory period of responsibility notwithstanding that the loss or damage did not occur at sea

(B) Combined Transport

If carriage is Combined Transport then the Carrier undertakes to perform and/or in its own name to procure performance of the carriage from the Place of Receipt or the Port of Loading whichever is applicable to the Place of Delivery or the Port of Discharge whichever is applicable and, save as is otherwise provided for in this Bill of Lading, the Carrier's liability for loss or damage to the Goods shall be as follows:-

1. If the stage of carriage where loss or damage occurred is not known

(a) Exclusions If the stage of the carriage where the loss or damage to the Goods is not known then the Carrier shall be liable for loss and damage to the Goods save that the Carrier shall be relieved from liability for any loss or damage to the extent that such loss or damage was caused by: (i) An act or omission of the Merchant; (ii) Insufficiency or defective condition of packing or marking; (iii) Compliance with the instructions of persons entitled to give them;

(iv) Handling, loading, stowage or unloading of the Goods by the Merchant; (v) Inherent vice of the Goods; (vi) Strike, lockout, stoppage or restraint of labor from whatever cause whether partial or general; (vii) A nuclear incident; (viii) Any cause or event which the Carrier could not avoid and the consequence of which he could not prevent by the exercise of reasonable diligence.

(b) Burden of Proof The burden of proving that any loss or damage was caused by one or more of the events mentioned in Clauses 5(B)(1)(a)(i) to (viii) shall rest upon the Carrier save that when the Carrier is able to demonstrate that, in the circumstances of the case, the loss or damage could be attributed to one or more of the events specified in Clauses 5(B)(1)(a)(i) to (viii) then it shall be presumed that it was so caused and in such circumstances the burden of proof shall be on the Merchant to prove that the loss or damage was not caused wholly or partly by one or more of these events.

(c) Limitation If the Carrier is liable for loss of damage to the Goods then the amount of compensation shall be calculated by reference to the invoice value of the Goods plus freight and insurance (if paid).

The Carrier's maximum liability hereunder shall in no circumstances exceed US$2 per kilo of gross weight of the Goods lost or damaged unless the value of the Goods has been declared by the Merchant with the consent of the Carrier and excess freight has been paid whereupon the declared value (if higher) as shown on the face of the Bill of Lading shall be substituted for the above limit and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

2. If the stage of carriage during which loss or damage occurred is known Notwithstanding anything provided for in Clause 5(B)(1) if the stage of the carriage where loss or damage to the Goods is known then subject to the operation of Clause 5(C) which shall apply where loss or damage occurs to the Goods from the time when the Goods are loaded on board the Vessel at the Port of Loading until the time when the Goods are discharged from the Vessel at the Port of Discharge the Carriers liability in respect of any such loss or damage occurring shall be determined as follows:-

(a) By the provisions contained in any international convention or national law, which provisions cannot be departed from by private contract to the detriment of the Merchant, and would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of the carriage where the loss or damage occurred and received as evidence thereof any particular document which must be issued in order to make such international Convention or national law applicable; or

(b) If no international convention or national law is applicable then the liability of the Carrier shall be determined pursuant to the provisions of Clause 5(B)(1).

(c) Subject to Clause 5(B)(2)(a) if loss or damage to the Goods is known to have occurred during a period when the Goods were in the custody of a Participating Carrier then the Carrier shall have the benefit of any and all rights, defenses, exemptions, limitations and immunities contained in or incorporated by or compulsorily applicable to the Participating Carrier's tariff(s) or contract(s) with the Carrier (in addition to all of the rights, defenses, exemptions, limitations and immunities contained in this Bill of Lading and the Carrier's tariff) and for this purpose such benefit, rights, defenses, exemptions, limitations and immunities shall be deemed to be incorporated herein, and copies are obtainable from the Carrier upon request.

(C) Clause Paramount

All carriage under this Bill of Lading (whether electronically produced or not) shall have effect subject to any legislation enacted in any country making the Hague or Hague-Visby Rules compulsorily applicable and in the absence of any such legislation in accordance with the Hague Rules or COGSA in the case of carriage to or from the United States of America. In circumstances where the Hague Rules are not compulsorily applicable but are contractually applicable then subject to Clause 10 (ad valorem declaration) the Carrier's responsibility shall in no event exceed GBP100 per package or customary freight unit.

If any terms of this Bill of Lading are held repugnant to the Hague Rules, Hague-Visby Rules, COGSA or any other compulsorily applicable legislation then such provision shall be null and void to the extent of such invalidity without invalidating the remaining provisions hereof.

References in the Hague, Hague-Visby Rules, or COGSA to carriage by sea shall be deemed to include references to inland waterways or waterborne carriage.

(D) USA Clause Paramount (if applicable)

1. If carriage includes carriage to, from or through a port in the United States of America this Bill of Lading shall be subject to COGSA, the terms of which are incorporated herein and shall be paramount throughout carriage by sea and the entire time that the Goods are in the actual custody of the Carrier or its sub-contractor at the sea-terminal in the United States of America before loading onto the Vessel or after discharge therefrom as the case may be. COGSA shall be extended to apply to all Goods before the Goods are loaded on and after they are discharged from the Vessel and throughout the entire time during which the Carrier is responsible for the goods under the Bill of Lading

2. The Carrier shall not be liable in any capacity whatsoever for loss or delay to the Goods or non-delivery or misdelivery howsoever caused while the Goods are not in the United States of America away from the sea-terminal and are not in the actual custody of the Carrier. At these times the Carrier acts as agent only for and on behalf of the Merchant and agrees to procure transportation of the Goods in accordance with the usual terms, conditions and tariff(s) of Participating Carriers. If for any reason the Carrier is denied the right to act as agent only at these times, its liability for loss and damage to the Goods or non-delivery or misdelivery thereof shall be determined in accordance with Clause 5(B) hereof.

3. If COGSA applies then the liability of the Carrier shall not exceed US$500 per package or customary freight unit unless the value of the Goods has been declared on the face hereof with the consent of the Carrier and extra freight has been paid in which case Clause 10 shall apply and the declared value (if higher) shall be substituted for the limit and any partial loss or damage shall be adjusted pro-rata on the basis of such declared value. Further, the Carrier shall in no circumstances be liable for direct, indirect or consequential loss of damage, including lost profits or loss of market. Further, any statement that iron or steel goods of any sort or description have been shipped in good order and condition does not amount to acceptance that said products are free from rust, for which the Carrier accepts no responsibility.

4. Except as provided herein in Clauses 5(D) (1) and (2), and where COGSA does not apply by operation of law, Carrier's liability will be governed by COGSA unless its liability under some other body of law applicable to the particular stage of the transport where the loss occurred is more favorable to the Carrier (with regards to defenses and limitations), in which case that other body of law will apply.

**6. AMOUNT OF COMPENSATION.**

(1) For shipments to or from ports in the United States of America neither the Carrier nor the Ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of Goods in an amount exceeding U.S.$ 500 per package lawful money of the United States of America, or in the case of Goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such Goods have been declared by the Shipper in accordance with the terms set out in Paragraph 10 and inserted on the reverse side of this Bill of Lading and extra freight paid

(2) Where the Hague Rules apply hereunder the Carrier's maximum liability shall in no event exceed GBP 100.00 lawful money of the United Kingdom per package or unit, unless the nature or value of such Goods have been declared by the Shipper before shipment and inserted on the reverse side of this Bill of Lading and extra freight paid

(a) Subject to the limitations contained herein, when the Carrier is liable for compensation in respect of loss of or damage to Goods, such compensation shall be calculated by reference to the invoice value of the Goods plus freight charges and insurance if paid.

(b) If there is no invoice value of the Goods, such compensation shall be calculated by reference to the value of such Goods at the place and time they are delivered to the Merchant in accordance with the contract or should have been so delivered. The value of the Goods shall be fixed according to the current market price, or, if there be no commodity exchange price or current market price, by reference to the normal value of goods of the same kind and quality

(c) Compensation shall not, however, exceed U.S.$ 2.00 per kilo of gross weight of the Goods lost or damaged

(d) Higher compensation may be claimed only when, with the written consent of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier exceeds the limits laid down in this paragraph and has been stated in this Bill of Lading. In that case, the amount of the declared value shall be substituted for that limit. Any partial loss or damage shall be adjusted pro rata based on such declared value

**7. SUB-CONTRACTING.**

Because the Carrier requires the assistance of others to perform the services undertaken under this Bill of Lading as well as transportation agreements between Carrier and others, every servant, agent, stevedore, terminal services contractor, lighter operator, pilot, connecting rail, motor, water or air carrier or other independent contractor, including their agents, servants and subcontractors, performing such services shall have the benefit of every exemption from and limitation of liability, defense, right and liberty to which the Carrier is entitled, under any provision of this Bill of Lading or by applicable law, provided however that any such Servant or Agent that takes, accedes, or asserts the benefit of this provision by such action consents to the law and jurisdiction provisions of this bill of lading and in so doing expressly waives any law, forum, and jurisdiction provisions in any underlying agreement, including bill of ladings or service contracts, between itself and the Carrier. For purposes of the foregoing provision, the Carrier shall be deemed to be the agent or trustee for the benefit of all such persons and all such persons shall be deemed to be parties to the contract of carriage evidenced hereby to that extent. The Shipper and Consignee undertake not to sue or proceed against any such persons. In the event either of them does so, it shall indemnify the Carrier against all resulting loss, liability, and expense, including attorneys' fees.

**8. FREIGHT.**

a. Full freight shall be payable at Carrier's option on gross weight, measurement, of value as set forth in Carrier's tariff, based on shipper's particulars for the Goods. Carrier shall have the right, but not the duty, to open packages or containers and, if shipper's particulars are found to be erroneous, the shipper, consignee, and the Goods shall be liable for the correct freight charge and any expenses incurred in examining, weighing, measuring, or valuing the cargo

b. Full freight to the port of discharge named on the face of this document and Carrier shall consider all advanced charges against the Goods completely earned on receipt of the goods even though the Vessel, or other means of transport, or the Goods, are damaged or lost, or the voyage is frustrated or abandoned.

c. All sums payable to the Carrier are due on demand and shall be paid in full in United States currency, or, at Carrier's option, in its equivalent in the currency of the port of loading or the port of discharge, or as specified in the Carrier's tariff.

d. The Shipper, Consignee, Holder hereof, and owner of the goods, and their principals, shall be jointly and severally liable to Carrier for the payment of all freight, demurrage, General Average, and other charges due hereunder, without discount or set-off, together with any Court costs, expenses and reasonable attorney fees incurred in collecting any sums due Carrier. Payment of ocean freight and charges to a freight forwarder, broker, or anyone other than Carrier or its authorized agents, shall not be deemed payment to Carrier and shall be made at payor's sole risk. The Merchant shall remain liable for all charges hereunder notwithstanding any extension of credit to the shipper, freight forwarder, or broker by Carrier

**9. LIEN.**

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the carrier under this contract and/or any other contract and for general average contributions, to whomever due. The Carrier shall also have a lien against the Merchant on Goods and any documents relating thereto for all sums due from him to the Carrier under any other contract between the Merchant and the Carrier. In any event any lien shall extend to cover the cost of recovering the sums due, including reasonable attorneys' fees and expenses, and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty, without notice to the Merchant.

**10. AGREED AD VALOREM VALUE.**

The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and that higher compensation than that provided under this contract of carriage may not be claimed unless the value of the Goods are declared by the Shipper on the face of this Bill of Lading prior to the commencement of the carriage and extra freight paid, as set out in carrier's applicable tariff, in which case the amount of the declared value shall be substituted for the limits otherwise laid down herein. Any partial loss or damage shall be adjusted pro rata based on such declared value.

**11. UNDER DECK AND ON DECK STOWAGE.**

The Carrier has the right to carry Goods in containers, vans, trailers, and portable tanks under deck or on deck. When such Goods are carried on deck, the Carrier shall not be required to specially note, mark or stamp any statements of "on deck" carriage on the face of this bill of lading nor to give notice thereof to the Shipper or Consignee. In respect of Goods in containers, vans, trailers or portable tanks carried on deck, the Carrier shall not be liable for loss or damage caused by water deterioration or other perils incident to such on deck carriage. In respect of Goods not in containers, vans, trailers or tanks carried on deck under the Bill of Lading, the Carrier shall so state such carriage on the front side hereof, and all risk of loss or damage by water deterioration and other perils incident to such carriage shall be borne exclusively by the Goods and anyone having an interest therein.

**12. SPECIAL STOWAGE; REFRIGERATION.**

It will not be provided temperature controlled, insulated or naturally ventilated stowage unless the Carrier has undertaken such special stowage in advance of the Carrier's receipt of the Goods, and in the absence of such agreement, the Shipper and Consignee warrant that the Goods do not require such protection. The Carrier does not provide mechanically ventilated stowage, and does not furnish or maintain preservative gases in connection with temperature controlled stowage and the Carrier assumes no responsibility for loss or damage to Goods arising in whole or in part from any such lack of stowage. The Carrier shall not be liable for any loss of or damage to the Goods arising from latent defects, breakdown of stoppage of the refrigerating machinery, plant, insulation, or of any apparatus of the container vessel, conveyance of other facilities, unless the Carrier shall, before or at the beginning of the transport, have failed to exercise due diligence to maintain any such equipment (other than shipper-provided equipment) in an efficient state. If the Goods have been packed into a refrigerated container by or on behalf of the Shipper, it is the obligation of the Shipper to stow the contents properly and set the thermostatic controls exactly; and the Carrier shall not be liable for any loss of or damage to the Goods arising out of or resulting from the Shipper's failure in such obligations. If the Carrier has packed the Goods into a refrigerated container, and a temperature or temperature range has been disclosed to the Carrier by the Shipper or its authorized representative, Carrier will set the thermostatic control accordingly. With respect to both Carrier- and Shipper-packed containers, where Carrier has undertaken, by special agreement, to carry the Goods at a particular temperature or temperature range, the Carrier undertakes only that the refrigeration equipment shall perform within the operating specifications of the equipment and makes no warranty or agreement with respect to the actual temperature of and commodity, fruit, vegetable, meat fish, or any perishable Goods within the container.

**13. RECONDITIONING, ETC.**

In the event that Carrier must perform reconditioning, cooperage or restowage of the Goods for the safety of persons or of the Goods or other property or to bring the goods into conformance with applicable law, Carrier shall be reimbursed at accessorial labor and equipment rental rates named in any applicable tariff or, if no such rates apply, at 120% of Carrier's costs of performing such work.

**14. TRANSSHIPMENT; SUBSTITUTION OF VESSEL.**

Whether or not the Goods are consigned to a port or point where the Vessel does not discharge, the Carrier may, without notice, tranship the whole or any part of the Goods before or after loading at the original port of shipment or any other place or places even though outside the scope of the voyage or the route to or beyond the port of discharge or the destination of the Goods, by any substituted or connecting water carrier's vessel or other means of transportation by water or by land or by air, whether operated by the Carrier or by others.

**15. SUNDRY LIABILITY PROVISIONS: SCHEDULE/DELAY.**

The Carrier does not undertake that the Goods will be transported from or loaded at the place of receiving or loading or will arrive at the place of discharge, destination or transshipment aboard any particular vessel or other conveyance or at any particular date or time or to meet any particular market or in time for any particular use. Scheduled or advertised departure and arrival times are only expected times and may be advanced or delayed if the Carrier or any Connecting Carrier shall find it necessary, prudent or convenient. In no event shall the Carrier be liable for consequential or other damages for delay in the scheduled departures or arrivals of the vessel or other conveyance transporting the Goods or for any other matter. SUPPLY OF CONTAINERS: The Merchant at destination shall have to return all containers not owned by the Merchant to the Carrier duly cleaned and in good condition as deemed delivered to the shipper within the time allowed by the Carrier, failing which the Merchant shall be liable to the Carrier for all costs, fees, cleaning charges, late fees, attorneys fees or any other charge for which the Carrier is held liable including demurrage. Merchant agrees to pay the replacement value of any Container not returned within 30 days of its being available for delivery. JOINT EXAMINATION: Subject to the above provisions, the Merchant and/or his representatives agrees and warrants that it will contact the Carrier for a joint examination before the opening of the container in the case of apparent damage or as soon as such damage has been revealed in the case of non-apparent damage. Loss or damage is deemed apparent when the container is delivered without seal or without the original seal affixed when the Carrier had taken possession of the container

**16. SCOPE OF VOYAGE; CARRIER'S LIBERTIES.**

The Carrier may call at scheduled ports in or out of the usual order may provide substituted service by modes other than water as may be provided for by applicable tariffs, may omit scheduled routes or ports, may include unscheduled routes or ports and may lighter the Goods. The Vessel may sail with or without tugs or pilots, undertake rescue or salvage tow or be towed, or undergo dry-docking or repairs in any situation whatsoever which, in the opinion of the Master or the Carrier gives rise to risk of seizure, detention, damage, loss, delay or disadvantage to the Vessel or the Goods, or of materially detaining the equipment of the Carrier or would make it imprudent, unlawful or commercially impracticable to commence or continue the voyage or to enter or discharge the Goods, or any part of them, at any port or place considered by the Carrier to be safe or advisable under the circumstances and forward or arrange to forward the Goods by rail, water, motor vehicle or air, or place the Goods in a storage facility or warehouse, all at the risk and expense of the Goods. The exercise of any of the foregoing liberties by the carrier or the Master shall constitute performance under the Bill of Lading and not a deviation from the scope of the voyage. When the Goods are discharged from the Vessel and delivered to a forwarding agent or carrier or to a warehouse or storage facility under the provisions of this paragraph, or when required to be delivered by local customs authorities under local law, such discharge and delivery shall constitute complete delivery and performance under the Bill of Lading

**17. DELIVERY UNDER NEGOTIABLE BILLS OF LADING**

Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder. If the Goods are consigned "to order" on the face hereof, the Goods shall be delivered at the place of delivery upon surrender of the original bill of lading, provided however if the goods are to be transshipped via a connecting carrier to a destination point beyond the place of delivery stated on the face hereof, Carrier, may on behalf of the Shipper and Consignee and acting solely as their agent, arrange for such beyond carriage consistent with instructions received from the Shipper or consignee, or the representative of either of them, at the risk and expense of the Goods. In such event, the Carrier may deliver the Goods to the connecting carrier without surrender of the original, properly endorsed bill of lading, unless instructed otherwise, and shall obtain the connecting carrier's acknowledgement that delivery of the Goods shall be made only upon surrender of the Carrier's original, properly endorsed bill of lading. This Bill of Lading shall not be a negotiable document of title unless consigned 'to order', 'to the order of' ' or ' to bearer'. If not so consigned but instead consigned directly to a nominated party, this shall be a 'Straight' Bill and, at the sole discretion of the Carrier, delivery may be made to the nominated party only upon proof of identity, as if this Bill of Lading were a Waybill. Such delivery shall constitute due delivery hereunder

**18. UNDELIVERED GOODS.**

The Merchant shall take delivery of the goods within the time provided for in the Carrier's applicable tariff. If for any reason whatsoever the Merchant refuses or fails to take delivery of the Goods upon their arrival and availability at destination or upon expiration of tariff-prescribed free-time and any notice period as set forth in a notice of arrival, availability or demand given by the Carrier, the Carrier may, without further notice or demand, and in addition to any other legal or equitable remedies, exercise its maritime lien for any charges due at a private or judicial sale of the Goods, or may place the Goods in a storage at the risk and expense of the Goods, subject to a lien in favor of the Carrier for any charges due

**19. DANGEROUS, HAZARDOUS, OR NOXIOUS CARGO.**

If it appears at any time that any Goods or any part thereof cannot be carried safely, or for Goods of a flammable, explosive, corrosive, radioactive, noxious, hazardous, unstable or dangerous nature shipped without full disclosure in writing to the Carrier as to their nature and character, may at any time before discharge be landed at any place thrown overboard, destroyed, or rendered innocuous without liability on the part of the Carrier or other Shippers or Consignees, and, even if such disclosure be made, the Carrier may without incurring any liability, make the same disposition of such Goods, if, in the opinion of the Carrier they shall be or become dangerous or noxious to the Vessel or cargo, or to persons. The Shipper shall indemnify the Carrier for all losses, damages (including, but not limited to, profits and expenses related to the Carrier's inability to use its vessels and equipment), liabilities, fines, civil penalties, and expenses (including attorneys' fees) suffered by the carrier, caused in whole or in part by omission of full disclosure required by this paragraph or by applicable law or regulations or by its failure to properly pack, label, or mark such goods.

**20. GENERAL AVERAGE.**

a. General average is to be adjusted at any port or place at the carrier's option, and to be settled according to the York-Antwerp Rules 1974 as amended 1990, this covering all Goods, whether carried on or under deck.

b. Such security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereof, shall, if required, be submitted to the Carrier prior to delivery of the Goods

**21. BOTH TO BLAME COLLISION**

If the Vessel comes into collision with another vessel as the joint result of the negligence of the other vessel and any act, neglect or default of the master, pilot or member of the crew in the navigation or management of the Vessel, the Shipper or Consignee having beneficial ownership of the Goods shall indemnify the Carrier against all loss or damage to or any claim whatsoever of, said owner of the Goods paid or payable by the other or non-carrying vessel or its owners to said owner of the Goods and set-off against, or recouped or recovered from the Vessel or the Carrier by the other vessel or its owners. The foregoing provisions shall also apply where the owners, operators or other persons in charge of any vessel or object other than, or in addition to, the colliding vessels and/or objects are at fault in respect of a collision, allision, stranding or other accident

**22. WAR RISKS: GOVERNMENTAL ORDERS.**

The Carrier shall have liberty to carry goods declared by any belligerent to be contraband and persons belonging to or intending to join the armed forces or governmental service of any belligerent; to sail armed or unarmed and with or without convoy; and to comply with any orders, requests or directions as to loading, departure, arrival, routes, ports of call, stoppage, discharge, destination, delivery or otherwise, howsoever given by the government of any nation or department thereof, or any person acting or purporting to act with the authority of such government or of any department thereof or by any committee or person having, under the terms of the war risk insurance on the Vessel, the right to give such orders, requests or directions. Delivery or other disposition of the Goods in accordance with such orders, requests or directions shall constitute performance of the Carrier's delivery obligations under this Bill of Lading and all responsibility of the Carrier, in whatever capacity, shall terminate upon such delivery or other disposition. If by order of any Customs authority at any place, the Goods have to be unpacked from the Containers to be inspected, the Carrier shall not be liable for any loss or damage incurred during such inspection. The Carrier is entitled to recover the costs and fees incurred in unpacking and re-stowing the cargo from the Merchant

**23. FIRE.**

Neither the Carrier nor its terminal operator or stevedore shall be liable to answer for or make good any loss or damage to goods occurring at any time and even though before loading or after discharge from the vessel by reason or by means of any fire whatsoever, unless such fire shall be caused by their actual fault or privity.

**24. NOTICE OF LOSS, TIME FOR SUIT.**

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agents at the port of discharge or place of delivery as the case may be before or at the time of removal of the Goods into the custody of the Merchant such removal shall be prima facie evidence of the delivery by the Carrier of the Goods as described in this Bill of Lading. If the loss or damage is not apparent, then notice must be given within three days of the delivery. In any event, the Carrier shall be discharged from any liability unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered. If a place of delivery is named on the face hereof any such notice shall also be sent by the Merchant to the last inland carrier before or at the time of removal or within three (3) working days thereafter if the loss or damage is not apparent, and in any case a confirmation of such notice shall have to be made to such inland Carrier by registered letter within three working days of the time of delivery, failing which no responsibility shall attach to the carrier

**25. VARIATION OF THE CONTRACT.**

No servant or agent of the Carrier shall have the power to waive or vary any of the terms of this Bill of Lading, unless such waiver ... is in writing and is specifically authorized or ratified in writing ... the carrier

(4)

OWL B/L Terms Case 1:07-cv-02889-AKH Document 20-10 Filed 12/21/2007 Page 3 of 14 Page 1 of 12

OWL
Ocean World Lines
Europe GmbH

18-Okt-2007 19:08 CET

REPORT SU
ACTIVI
1-800-BE

Home About OWL Services Agency List Links Login Imp
B/L Terms IT Services

# B/L Terms

Below please find the text of OWL's Bill of Lading used for transportations.

- 1. Definitions

"Ocean World Lines, Inc." or "OWL" is the name of the carrier.
"Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this Bill of Lading.
"Carrier" means Ocean World Lines, Inc. or OWL. "COGSA" means the U.S. Carriage of Goods by Sea Act 1936 as amended.
"Container" includes any container (including an open top Container) flat rack, platform trailer, transportable tank, pallet, or any other device used for the transportation of goods.
"Goods" means the cargo accepted from the Shipper and includes any Container not supplied by or on behalf of OWL. "Freight" includes all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading.
"Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25 August 1924, without the amendments by the Protocol signed at Brussels on 23 February 1968.
"Hague-Visby Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August, 1924 and includes the amendments by the Protocol signed at Brussels on 23rd February, 1968, but only if such amendments are compulsorily applicable to this Bill of Lading.
"Holder" means any person for the time being in possession of this Bill of Lading to whom the property in the Goods has passed on or by reason of the consignment of this Bill of Lading or otherwise.
"Merchant" includes the Consignor, Shipper, Holder, Consignee, the receiver of the Goods, any person, including any Corporation or other legal entity, owning or entitled to the possession of the Goods or this Bill of Lading and anyone acting on behalf of such person.
"Package" The word package shall include each container whether container is stuffed and sealed by the Merchant or on his behalf although the Shipper may have furnished in the particulars herein the contents of such sealed container.
"Servants or Agents" includes the Master, Officer and crew of the vessel, owners and operators of vessels (other than the Carrier), underlying carriers (including ocean common carriers with whom OWL has contracted for the physical transportation of the goods), sub-contractors, stevedores, terminal and groupage operators, road and rail transport operators and any independent contractors employed by the Carrier in the performance of the Carriage.
"Shipper" includes the person entering into this contract of carriage with the Carrier and for whose account the Goods are shipped.
"The Internal Law of a State" shall be deemed to exclude all principles of private international law applied by such state.

- 2. Carrier's Tariff

http://www.owl.biz/page.afp?sui= 27G151AOU 10/18/2007



The terms of the carrier's applicable Tariff are incorporated herein. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between the Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail except that the applicable Tariff shall govern as to freight.

- 3. Validity

The terms and conditions of the Bill of Lading shall be severable. If any term or condition is invalid or unenforceable, and if any breach of or deviation from any provision occurs, such circumstance shall not affect the validity or enforceability of the remaining terms and conditions.

- 4. Shipper's Responsibility

  - (A) Description of the Goods.
    - (1) Unless the Goods have been stuffed into the Container(s) by or on behalf of the Carrier, this Bill of Lading shall be prima facie evidence of the receipt by the Carrier from the Shipper in apparent good order and condition, except as otherwise noted on the face hereof, of the total number of Containers indicated in the box on the face hereof entitled "no. of pkgs."
    - (2) Any references to letters of credit, import licenses, sales contracts, invoices or order number and/or details of any contract to which the Carrier is not a party when shown on the face of this Bill of Lading are included solely at the request of the Merchant for his convenience and the Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value nor shall they increase the Carrier's liability under this Bill of Lading. The merchant further agrees to indemnify the Carrier against all consequences including such particulars in this Bill of Lading.
    - (3) The Merchant warrants that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and those particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Merchant also warrants that the Goods are lawful Goods and contain no contraband.
    - (4) The Merchant acknowledges and agrees that for shipments destined to the United States, regulations issued by the United States require that the Carrier provide full particulars of the shipment to U.S. Customs authorities twenty four hours prior to loading the Goods onto a vessel. The Merchant further acknowledges and agrees that any delay by it in providing said particulars to the Carrier could cause delays to the Goods upon arrival at a U.S. port and the Merchant hereby agrees to indemnify and hold the Carrier harmless for any delays to the Goods arising out of the failure to provide the information required by the Carrier in a timely manner including full responsibility and liability for any fines and penalties issued to the Carrier arising out of the delayed or inaccurate transmission of such information or for any liability incurred to vessel operating common carriers arising out of the delayed receipt of said information.

  - (B) The Merchant warrants that in agreeing to the terms and conditions hereof he is, or has the authority of, the Person owning or entitled to the possession of the Goods and this Bill of Lading. When containers, vans, skids, trailers, portable tanks, palletized units, and other cargo units are not packed or loaded by the Carrier, the Carrier does not represent to be accurate and is not bound by any description of the value, quantity, weight, condition or existence of the contents thereof as furnished by or on behalf of Shipper or identified in this bill of lading by use of the phrase "said to contain", "shipper's weight load and count", or terms of like



meaning, and the Carrier in such case shall not be liable for any difference in value, quantity, weight or condition of the Goods furnished by or on behalf of the Shipper and that of the Goods actually delivered. The Carrier shall have no responsibility or liability whatsoever for the packing, loading, securing, shoring and/or stowage of contents of such cargo units, or for loss or damage caused thereby or resulting therefrom. The Merchant, with respect to cargo units not packed or laded by Carrier, represents and warrants:

- (a) that the Goods are properly described, marked, secured, and packed in their respective cargo units;
- (b) that any cargo units other than Carrier-furnished units are seaworthy and physically suitable, sound, and structurally adequate properly to contain and support the Goods during handling and the transportation contemplated by the Bill of Lading, and that such cargo-units may be handled in the usual and customary manner without damage to themselves or to their contents, or to the Vessel or its other cargo, or property, or persons;
- (c) that all particulars with regard to the cargo units and their contents, and the weight of each said cargo unit, are in all respects correct; and
- (d) that such units are in compliance with all applicable government regulations.

Shipper and Consignee, jointly and severally, agree to indemnify Carrier and to hold it harmless in respect of any injury or death of any person, or any loss or damage to cargo or any other property or to the Vessel or any other vessel, or any other loss or expense, including, but not limited to, lost profits and attorneys' fees, caused by breach or any of the foregoing representations or warranties.

The Merchant shall comply with all regulations or requirements of Customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts expenses, or losses incurred or suffered by the Carrier by reason thereof or by reason of any illegal, incorrect, or insufficient marking, numbering, or addressing of the Goods or any other illegal act and shall indemnify the Carrier in respect thereof by reason of any failure to so comply.

Whenever a Shipper or Consignee, or an agent or contractor acting on behalf of either of them, shall take possession of Carrier's container equipment, the Shipper or Consignee in possession, or for the benefit of whom an agent or contractor has taken possession, shall defend, indemnify and hold harmless the Carrier from and against any loss or damage to Carrier's equipment and third party property and injury to or death of persons arising out of the use of said equipment.

- 5. Carrier's Responsibility And Clause Paramount

  - A) Port to Port Transport

    If carriage is Port to Port Transport or if the place of receipt or place of delivery is not known, the responsibility (if any) of the Carrier for loss or damage to the Goods occurring from the time when the Goods are loaded on board the Vessel at the Port of Loading until the time when the Goods are discharged from the Vessel at the Port of Discharge shall be determined in accordance with the provisions of Clause 5(B)-(D).

    The Carrier shall be under no liability whatsoever for loss or damage to the Goods or non-delivery or misdelivery howsoever caused if such loss or damage, non-delivery or misdelivery arises prior to loading onto or subsequent to discharge from the Vessel. Notwithstanding the above, in case and to the extent that any applicable law provides for any additional period of responsibility the Carrier shall have the benefit of every right, defense, limitation and liberty of the Hague Rules during such additional compulsory period of responsibility notwithstanding that the loss or



damage did not occur at sea.
➤ (B) Combined Transport
If carriage is Combined Transport then the Carrier undertakes to perform and/or in its own name to procure performance of the carriage from the Place of Receipt or the Port of Loading whichever is applicable to the Place of Delivery or the Port of Discharge whichever is applicable and, save as is otherwise provided for in this Bill of Lading, the Carrier's liability for loss or damage to the Goods shall be as follows:-
1. If the stage of carriage where loss or damage occurred is not known
(a) Exclusions If the stage of the carriage where the loss or damage to the Goods is not known then the Carrier shall be liable for loss and damage to the Goods save that the Carrier shall be relieved from liability for any loss or damage to the extent that such loss or damage was caused by:(i) An act or omission of the Merchant; (ii) Insufficiency or defective condition of packing or marking; (iii) Compliance with the instructions of persons entitled to give them;
(iv) Handling, loading, stowage or unloading of the Goods by the Merchant; (v) Inherent vice of the Goods; (vi) Strike, lockout, stoppage or restraint of labor from whatever cause whether partial or general; (vii) A nuclear incident; (viii) Any cause or event which the Carrier could no avoid and the consequence of which he could not prevent by the exercise of reasonable diligence.
(b) Burden of Proof The burden of proving that any loss or damage was caused by one or more of the events mentioned in Clauses 5(B)(1)(a)(i) to (viii) shall rest upon the Carrier save that when the Carrier is able to demonstrate that, in the circumstances of the case, the loss or damage could be attributed to one or more of the events specified in Clauses 5(B)(1)(a)(ii) to (vii) then it shall be presumed that it was so caused and in such circumstances the burden of proof shall be on the Merchant to prove that the loss or damage was not caused wholly or partly by one or more of these events.
(c) Limitation If the Carrier is liable for loss or damage to the Goods then the amount of compensation shall be calculated by reference to the invoice value of the Goods plus freight and insurance (if paid).
The Carrier's maximum liability hereunder shall in no circumstances exceed US$2 per kilo of gross weight of the Goods lost or damaged unless the value of the Goods has been declared by the Merchant with the consent of the Carrier and excess freight has been paid whereupon the declared value (if higher) as shown on the face of the Bill of Lading shall be substituted for the above limit and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.
2. If the stage of carriage during which loss or damage occurred is known
Notwithstanding anything provided for in Clause 5(B)(1) if the stage of the carriage where loss or damage to the Goods is known then subject to the operation of Clause 5(C) which shall apply where loss or damage occurs to the Goods from the time when the Goods are loaded on board the Vessel at the Port of Loading until the time when the Goods are discharged from the Vessel at the Port of Discharge the Carriers liability in respect of any such loss or damage occurring shall be determined as follows:-
(a) By the provisions contained in any international convention or national law, which provisions cannot be departed from by private contract to the detriment of the Merchant, and would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of the carriage where the loss or damage occurred and received as evidence thereof any particular document which must be issued in order to make such international Convention or national law applicable; or
(b) If no international convention or national law is applicable then the liability of the Carrier shall be determined pursuant to the provisions of Clause 5(B)(1).
(c) Subject to Clause 5(B)(2)(a) if loss or damage to the Goods is known to have occurred during a period when the Goods were in the custody of a



Participating Carrier then the Carrier shall have the benefit of any and all rights, defenses, exemptions, limitations and immunities contained in or incorporated by or compulsorily applicable to the Participating Carrier's tariff(s) or contract(s) with the Carrier (in addition to all of the rights, defenses, exemptions, limitations and immunities contained in this Bill of Lading and the Carrier's tariff) and for this purpose such benefit, rights, defenses, exemptions, limitations and immunities shall be deemed to be incorporated herein, and copies are obtainable from the Carrier upon request.

- (C) Clause Paramount

All carriage under this Bill of Lading (whether electronically produced or not) shall have effect subject to any legislation enacted in any country making the Hague or Hague-Visby Rules compulsorily applicable and in the absence of any such legislation in accordance with the Hague Rules or COGSA in the case of carriage to or from the United States of America.

In circumstances where the Hague Rules are not compulsorily applicable but are contractually applicable then subject to Clause 10 (ad valorem declaration) the Carrier's responsibility shall in no event exceed GBP100 per package or customary freight unit.

If any terms of this Bill of Lading are held repugnant to the Hague Rules, Hague-Visby Rules, COGSA or any other compulsorily applicable legislation then such provision shall be null and void to the extent of such invalidity without invalidating the remaining provisions hereof.

References in the Hague, Hague-Visby Rules, or COGSA to carriage by sea shall be deemed to include references to inland waterways or waterborne carriage.

- (D) USA Clause Paramount (if applicable)
    - 1. If carriage includes carriage to, from or through a port in the United States of America this Bill of Lading shall be subject to COGSA, the terms of which are incorporated herein and shall be paramount throughout carriage by sea and the entire time that the Goods are in the actual custody of the Carrier or its sub-contractor at the sea-terminal in the United States of America before loading onto the Vessel or after discharge therefrom as the case may be. COGSA shall be extended to apply to all Goods before the Goods are loaded on and after they are discharged from the Vessel and throughout the entire time during which the Carrier is responsible for the goods under the Bill of Lading.
    - 2. The Carrier shall not be liable in any capacity whatsoever for loss or delay to the Goods or non-delivery or misdelivery howsoever caused while the Goods are in the United States of America away from the sea-terminal and are not in the actual custody of the Carrier. At these times the Carrier acts as agent only for and on behalf of the Merchant and agrees to procure transportation of the Goods in accordance with the usual terms, conditions and tariff(s) of Participating Carriers. If for any reason the Carrier is denied the right to act as agent only at these times, its liability for loss and damage to the Goods or non-delivery or misdelivery thereof shall be determined in accordance with Clause 5(B) hereof.
    - 3. If COGSA applies then the liability of the Carrier shall not exceed US$500 per package or customary freight unit unless the value of the Goods has been declared on the face hereof with the consent of the Carrier and extra freight has been paid in which case Clause 10 shall apply and the declared value (if higher) shall be substituted for the limit and any partial loss or damage shall be adjusted pro-rata on the basis of such declared value. Further, the Carrier shall in no circumstances be liable for direct, indirect, or consequential loss or damage, including lost profits or loss of market. Further, any statement that iron or steel goods of any sort or description have been shipped in good order and condition does not amount to acceptance that said products are free from rust, for which the Carrier accepts no responsibility.



- 4. Except as provided herein in Clauses 5(D) (1)and (2), and where COGSA does not apply by operation of law, Carrier's liability will be governed by COGSA unless its liability under some other body of law applicable to the particular stage of the transport where the loss occurred is more favorable to the Carrier (with regards to defenses and limitations), in which case that other body of law will apply.

- 6. Amount Of Compensation

  - (1) For shipments to or from ports in the United States of America neither the Carrier nor the Ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of Goods in an amount exceeding U.S.$ 500.00 per package lawful money of the United States of America, or in the case of Goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such Goods have been declared by the Shipper in accordance with the terms set out in Paragraph 10 and inserted on the reverse side of this Bill of Lading and extra freight paid.
  - (2) Where the Hague Rules apply hereunder the Carrier's maximum liability shall in no event exceed GBP 100.00 lawful money of the United Kingdom per package or unit, unless the nature or value of such Goods have been declared by the Shipper before shipment and inserted on the reverse side of this Bill of Lading and extra freight paid.
    - (a) Subject to the limitations contained herein, when the Carrier is liable for compensation in respect of loss of or damage to Goods, such compensation shall be calculated by reference to the invoice value of the Goods plus freight charges and insurance if paid.
    - (b) If there is no invoice value of the Goods, such compensation shall be calculated by reference to the value of such Goods at the place and time they are delivered to the Merchant in accordance with the contract or should have been so delivered. The value of the Goods shall be fixed according to the current market price, or, if there be no commodity exchange price or current market price, by reference to the normal value of goods of the same kind and quality.
    - (c) Compensation shall not, however, exceed U.S.$ 2.00 per kilo of gross weight of the Goods lost or damaged.
    - (d) Higher compensation may be claimed only when, with the written consent of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier exceeds the limits laid down in this paragraph and has been stated in this Bill of Lading. In that case, the amount of the declared value shall be substituted for that limit. Any partial loss or damage shall be adjusted pro rata based on such declared value.

- 7. Sub-Contracting

Because the Carrier requires the assistance of others to perform the services undertaken under this Bill of Lading as well as transportation agreements between Carrier and others, every servant, agent, stevedore, terminal services contractor, lighter operator, pilot, connecting rail, motor, water, or air carrier or other independent contractor, including their agents, servants and subcontractors, performing such services shall have the benefit of every exemption from and limitation of liability, defense, right and liberty to which the Carrier is entitled, under any provision of this Bill of Lading or by applicable law, provided however that any such Servant or Agent that takes, accedes, or asserts the benefit of this provision by such action consents to the law and jurisdiction provisions of this bill of lading and in so doing expressly waives any law, forum,



and jurisdiction provisions in any underlying agreement, including bill of ladings or service contracts, between itself and the Carrier. For purposes of the foregoing provision, the Carrier shall be deemed to be the agent or trustee for the benefit of all such persons and all such persons shall be deemed to be parties to the contract of carriage evidenced hereby to that extent. The Shipper and Consignee undertake not to sue or proceed against any such persons. In the event either of them does so, it shall indemnify the Carrier against all resulting loss, liability, and expense, including attorneys' fees.

- 8. Freight
  - a. Full freight shall be payable at Carrier's option on gross weight, measurement, or value as set forth in Carrier's tariff, based on shipper's particulars for the Goods. Carrier shall have the right, but not the duty, to open packages or containers and, if shipper's particulars are found to be erroneous, the shipper, consignee, and the Goods shall be liable for the correct freight charge and any expenses incurred in examining, weighing, measuring, or valuing the cargo.
  - b. Full freight to the port of discharge named on the face of this document and Carrier shall consider all advanced charges against the Goods completely earned on receipt of the goods even though the Vessel, or other means of transport, or the Goods, are damaged or lost, or the voyage is frustrated or abandoned.
  - c. All sums payable to the Carrier are due on demand and shall be paid in full in United States currency, or, at Carrier's option, in its equivalent in the currency of the port of loading or the port of discharge, or as specified in the Carrier's tariff.
  - d. The Shipper, Consignee, Holder hereof, and owner of the goods, and their principals, shall be jointly and severally liable to Carrier for the payment of all freight, demurrage, General Average, and other charges due hereunder, without discount or set-off, together with any Court costs, expenses and reasonable attorney fees incurred in collecting any sums due Carrier. Payment of ocean freight and charges to a freight forwarder, broker, or anyone other than Carrier or its authorized agents, shall not be deemed payment to Carrier and shall be made at payor's sole risk. The Merchant shall remain liable for all charges hereunder notwithstanding any extension of credit to the shipper, freight forwarder, or broker by Carrier.

- 9. Lien

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the carrier under this contract and/or any other contract and for general average contributions, to whomever due. The Carrier shall also have a lien against the Merchant on Goods and any documents relating thereto for all sums due from him to the Carrier under any other contract between the Merchant and the Carrier. In any event any lien shall extend to cover the cost of recovering the sums due, including reasonable attorneys' fees and expenses, and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty, without notice to the Merchant.

- 10. Agreed Ad Valorem Value

The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and that higher compensation than that provided under this contract of carriage may not be claimed unless the value of the Goods are declared by the Shipper on the face of this Bill of Lading prior to the commencement of the carriage and extra freight paid, as set out in carrier's applicable tariff, in which case the amount of the declared value shall be substituted for the limits otherwise laid down herein. Any partial loss or damage shall be adjusted pro rata based on such declared value.



➤ 11. Under Deck And Deck Stowage

The Carrier has the right to carry Goods in containers, vans, trailers, and portable tanks under deck or on deck. When such Goods are carried on deck, the Carrier shall not be required to specially note, mark or stamp any statements of "on deck" carriage on the face of this bill of lading nor to give notice thereof to the Shipper or Consignee. In respect of Goods in containers, vans, trailers or portable tanks carried on deck, the Carrier shall not be liable for loss or damage caused by water deterioration or other perils incident to such on deck carriage. In respect of Goods not in containers, vans, trailers or tanks carried on deck under the Bill of Lading, the Carrier shall so state such carriage on the front side hereof, and all risk of loss or damage by water deterioration and other perils incident to such carriage shall be borne exclusively by the Goods and anyone having an interest therein.

➤ 12. Special Stowage; Refrigeration

Goods will not be provided temperature controlled, insulated or naturally ventilated stowage unless the Carrier has undertaken such special stowage in advance of the Carrier's receipt of the Goods, and in the absence of such agreement, the Shipper and Consignee warrant that the Goods do not require such protection. The Carrier does not provide mechanically ventilated stowage, and does not furnish or maintain preservative gases in connection with temperature controlled stowage, and the Carrier assumes no responsibility for loss or damage to Goods arising in whole or in part from any such lack of stowage. The Carrier shall not be liable for any loss of or damage to the Goods arising from latent defects, breakdown or stoppage of the refrigerating machinery, plant, insulation, or of any apparatus of the container, vessel, conveyance of other facilities, unless the Carrier shall, before or at the beginning of the transport, have failed to exercise due diligence to maintain any such equipment (other than shipper-provided equipment) in an efficient state. If the Goods have been packed into a refrigerated container, by or on behalf of the Shipper, it is the obligation of the Shipper to stow the contents properly and set the thermostatic controls exactly; and the Carrier shall not be liable for any loss of or damage to the Goods arising out of or resulting from the Shipper's failure in such obligations. If the Carrier has packed the Goods into a refrigerated container, and a temperature or temperature range has been disclosed to the Carrier by the Shipper or its authorized representative, Carrier will set the thermostatic control accordingly. With respect to both Carrier- and Shipper-packed containers, where Carrier has undertaken, by special agreement, to carry the Goods at a particular temperature or temperature range, the Carrier undertakes only that the refrigeration equipment shall perform within the operating specifications of the equipment and makes no warranty or agreement with respect to the actual temperature of and commodity, fruit, vegetable, meat fish, or any perishable Goods within the container.

➤ 13. Reconditioning, Etc.

In the event that Carrier must perform reconditioning, cooperage or restowage of the Goods for the safety of persons or of the Goods or other property or to bring the goods into conformance with applicable law, Carrier shall be reimbursed at accessorial labor and equipment rental rates named in any applicable tariff or, if no such rates apply, at 120% of Carrier's costs of performing such work.

➤ 14. Transshipment: Substitution Of Vessel

hether or not the Goods are consigned to a port or point where the Vessel does not discharge, the Carrier may, without notice, transship the whole or any part of the Goods before or after loading at the original port of shipment or any other place or places even though outside the scope of the voyage or the route to or beyond the port of discharge or the destination of the Goods, by any substituted or connecting water carrier's vessel or other means of transportation by water or



by land or by air, whether operated by the Carrier or by others.

- 15. Sundry Liability Provisions: Shedule/Delay

The Carrier does not undertake that the Goods will be transported from or loaded at the place of receiving or loading or will arrive at the place of discharge, destination or transshipment aboard any particular vessel or other conveyance or at any particular date or time or to meet any particular market or in time for any particular use. Scheduled or advertised departure and arrival times are only expected times and may be advanced or delayed if the Carrier or any Connecting Carrier shall find it necessary, prudent or convenient. In no event shall the Carrier be liable for consequential or other damages for delay in the scheduled departures or arrivals of the vessel or other conveyance transporting the Goods or for any other matter. SUPPLY OF CONTAINERS: The Merchant at destination shall have to return all containers not owned by the Merchant to the Carrier duly cleaned and in good condition as deemed delivered to the shipper within the time allowed by the Carrier, failing which the Merchant shall be liable to the Carrier for all costs, fees, cleaning charges, late fees, attorneys fees or any other charge for which the Carrier is held liable including demurrage. Merchant agrees to pay the replacement value of any Container not returned within 30 days of its being available for delivery. JOINT EXAMINATION: Subject to the above provisions, the Merchant and/or his representatives agrees and warrants that it will contact the Carrier for a joint examination before the opening of the container in the case of apparent damage or as soon as such damage has been revealed in the case of non-apparent damage. Loss or damage is deemed apparent when the container is delivered without seal or without the original seal affixed when the Carrier had taken possession of the container.

- 16. Scope Of Voyage: Carrier's Liberties

The Carrier may call at scheduled ports in or out of the usual order, may provide substituted service by modes other than water as may be provided for by applicable tariffs, may omit scheduled routes or ports, may include unscheduled routes or ports and may lighter the Goods. The Vessel may sail with or without tugs or pilots, undertake rescue or salvage, tow or be towed, or undergo dry-docking or repairs. In any situation whatsoever which, in the opinion of the Master or the Carrier, gives rise to risk of seizure, detention, damage, loss, delay or disadvantage to the Vessel or the Goods, or of materially detaining the equipment of the Carrier or would make it imprudent, unlawful or commercially impracticable to commence or continue the voyage or to enter or discharge the Goods, or any part of them, at any port or place considered by the Carrier to be safe or advisable under the circumstances and forward or arrange to forward the Goods by rail, water, motor vehicle, or air, or place the Goods in a storage facility or warehouse, all at the risk and expense of the Goods. The exercise of any of the foregoing liberties by the carrier or the Master shall constitute performance under the Bill of Lading and not a deviation from the scope of the voyage. When the Goods are discharged from the Vessel and delivered to a forwarding agent or carrier or to a warehouse or storage facility under the provisions of this paragraph, or when required to be delivered by local customs authorities under local law, such discharge and delivery shall constitute complete delivery and performance under the Bill of Lading.

- 17. Delivery Under Negotiable Bills Of Lading

Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder. If the Goods are consigned "to order" on the face hereof, the Goods shall be delivered at the place of delivery upon surrender of the original bill of lading; provided however, if the goods are to be transshipped via a connecting carrier to a destination point beyond the place of delivery stated on the face hereof, Carrier, may, on behalf of the Shipper and Consignee and acting



solely as their agent, arrange for such beyond carriage consistent with instructions received from the Shipper or consignee, or the representative of either of them, at the risk and expense of the Goods. In such event, the Carrier may deliver the Goods to the connecting carrier without surrender of the original, properly endorsed bill of lading, unless instructed otherwise, and shall obtain the connecting carrier's acknowledgement that delivery of the Goods shall be made only upon surrender of the Carrier's original, properly endorsed bill of lading. This Bill of Lading shall not be a negotiable document of title unless consigned 'to order', 'to the order of '..' or ' to bearer'. If not so consigned but instead consigned directly to a nominated party, this shall be a 'Straight' Bill and, at the sole discretion of the Carrier, delivery may be made to the nominated party only upon proof of identity, as if this Bill of Lading were a Waybill. Such delivery shall constitute due delivery hereunder.

- 18. Undelivered Goods

The Merchant shall take delivery of the goods within the time provided for in the Carrier's applicable tariff. If for any reason whatsoever, the Merchant refuses or fails to take delivery of the Goods upon their arrival and availability at destination an upon expiration of tariff-prescribed free-time and any notice period as set forth in a notice of arrival, availability or demand given by the Carrier, the Carrier may, without further notice or demand, and in addition to any other legal or equitable remedies, exercise its maritime lien for any charges due at a private or judicial sale of the Goods, or may place the Goods in a storage at the risk and expense of the Goods, subject to a lien in favor of the Carrier for any charges due.

- 19. Dangerous, Hazardous, Or Noxious Cargo

If it appears at any time that any Goods or any part thereof cannot be carried safely, or for Goods of a flammable, explosive, corrosive, radioactive, noxious, hazardous, unstable or dangerous nature, shipped without full disclosure in writing to the Carrier as to their nature and character, may at any time before discharge be landed at any place, thrown overboard, destroyed, or rendered innocuous without liability on the part of the Carrier or other Shippers or Consignees, and, even if such disclosure be made, the Carrier may, without incurring any liability, make the same disposition of such Goods, if, in the opinion of the Carrier, they shall be or become dangerous or noxious to the Vessel or cargo, or to persons. The Shipper shall indemnify the Carrier for all losses, damages (including, but not limited to, profits and expenses related to the Carrier's inability to use its vessels and equipment), liabilities, fines, civil penalties, and expenses (including attorneys' fees) suffered by the carrier, caused in whole or in part by omission of full disclosure required by this paragraph or by applicable law or regulations or by its failure to properly pack, label, or mark such goods.

- 20. General Average

  - a. General average is to be adjusted at any port or place at the carrier's option, and to be settled according to the York-Antwerp Rules 1974 as amended 1990, this covering all Goods, whether carried on or under deck.
  - b. Such security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereof, shall, if required, be submitted to the Carrier prior to delivery of the Goods.

- 21. Both To Blame Collision

If the Vessel comes into collision with another vessel as the joint result of the negligence of the other vessel and any act, neglect or default of the master, pilot or member of the crew in the navigation or management of the Vessel, the



Shipper or Consignee having beneficial ownership of the Goods shall indemnify the Carrier against all loss or damage to, or any claim whatsoever of, said owner of the Goods, paid or payable by the other or non-carrying vessel or its owners to said owner of the Goods and set-off against, or recouped or recovered from the Vessel or the Carrier by the other vessel or its owners. The foregoing-provisions shall also apply where the owners, operators or other persons in charge of any vessel or object other than, or in addition to, the colliding vessels and/or objects are at fault in respect of a collision, allision, stranding or other accident.

- 22. War Risks: Govermental Orders

The Carrier shall have liberty to carry goods declared by any belligerent to be contraband and persons belonging to or intending to join the armed forces or governmental service of any belligerent; to sail armed or unarmed and with or without convoy; and to comply with any orders, requests or directions as to loading, departure, arrival, routes, ports of call, stoppage, discharge, destination, delivery or otherwise, howsoever given by the government of any nation or department thereof, or any person acting or purporting to act with the authority of such government or of any department thereof or by any committee or person having, under the terms of the war risk insurance on the Vessel, the right to give such orders, requests or directions. Delivery or other deposition of the Goods in accordance with such orders, requests or directions shall constitute performance of the Carrier's delivery obligations under the Bill of Lading, and all responsibility of the Carrier, in whatever capacity, shall terminate upon such delivery or other disposition. If by order of any Customs authority at any place, the Goods have to be unpacked from the Containers to be inspected, the Carrier shall not be liable for any loss or damage incurred during such inspection The Carrier is entitled to recover the costs and fees incurred in unpacking and re-stowing the cargo from the Merchant.

- 23. Fire

Neither the Carrier nor its terminal operator or stevedore shall be liable to answer for or make good any loss or damage to goods occurring at any time and even though before loading or after discharge from the vessel by reason or by means of any fire whatsoever, unless such fire shall be caused by their actual fault or privity.

- 24. Notice Of Loss, Time For Suit

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agents at the port of discharge or place of delivery as the case may be before or at the time of removal of the Goods into the custody of the Merchant such removal shall be prima facie evidence of the delivery by the Carrier of the Goods as described in this Bill of Lading. If the loss or damage is not apparent, then notice must be given within three days of the delivery. In any event, the Carrier shall be discharged from any liability unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered. If a place of delivery is named on the face hereof, any such notice shall also be sent by the Merchant to the last inland carrier before or at the time of removal or within three (3) working days thereafter if the loss or damage is not apparent, and in any case a confirmation of such notice shall have to be made to such inland Carrier by registered letter within three working days of the time of delivery, failing which no responsibility shall attach to the carrier.

- 25. Variation Of The Contract

No servant or agent of the Carrier shall have the power to waive or vary any of the terms of this Bill of Lading, unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the carrier.



➤ Law & Jurisdication

Whenever the "Carriage of Goods by Sea Act ("COGSA") of the United States of America applies by virtue of paragraph 5, this contract of carriage is to be governed by United States law (exclusive of its choice of law rules) and the United States Federal Court for the Southern District of New York is to have exclusive jurisdiction to hear all disputes hereunder including third party proceedings or those involving several defendants. This clause supersedes any conflicting clause in bills of lading or other documents issued by contractors or sub-contractors of OWL. In all other cases this Bill of Lading shall be governed by the law of the Federal republic of Germany and determined in the Hamburg courts to the exclusion of the jurisdiction of any other place. In case the Carrier intends to sue the Merchant, the Carrier has also the option to file a suit at the Merchant's place of business. With regard to contracts of carriage concluded in France, or entered into with a French port, the court where the carrier has his principle place of business be also competent in case of "APPEAL ON GUARANTEE" or "PLURALITE DE DEFENDEURS" or "CONNEXITE" the parties to this Sea Waybill expressly derogating from articles 100 to 107, 323, 331 to 333, 336 and 337 FRENCH NOUVEAU CODE THE PROCEDURE CIVILE.

Received by the Carrier from Shipper in apparent good order and condition (unless noted herein) the total number or quantity of Containers or packages or units indicated, stated by the Shipper to comprise the Goods specified above, for Carriage subject to all the items hereof (INCLUDING THE TERMS ON THE REVERSE HEREOF AND THE TERMS OF THE CARRIERS APPLICABLE TARIFF) from the Place of Receipt or the Port of Loading, whichever is applicable, to the Port of Discharge or the Place of Delivery, whichever is applicable. In accepting this Bill of Lading, the Merchant expressly accepts and agrees to all its terms, conditions and exceptions, whether printed, stamped or written, or otherwise incorporated, of which the Merchant is fully aware notwithstanding the non-signing of the Bill of Lading by the Merchant.

Goods in containers, vans or trailers or portable tanks may be carried on deck at the Carrier's option in accordance with Clause 11.

A Pacer International Company

Making your world a little smaller

Copyright © 2006 Ocean World Lines. All rights reserved. Impressum

16

