UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ROYAL & SUN ALLIANCE INSURANCE PLC,   :

                Plaintiff,   :

   -against-   :

OCEAN WORLD LINES, INC.   :

                Defendant.   :
----------------------------------------------------------------x
OCEAN WORLD LINES, INC.,   :

             Third-Party Plaintiff,   :

   -against-   :

YANG MING MARINE TRANSPORT CORP.   :
and DJURIC TRUCKING, INC.

             Third-Party Defendants   :
----------------------------------------------------------------x

ECF CASE

07-CV-2889 (AKH)


# DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT LIMITING LIABILITY UNDER COGSA


Peter D. Clark
Of Counsel

                CLARK, ATCHESON & REISERT
                     Attorneys for Defendant
                         7800 River Road
                 North Bergen, New Jersey 07047
                  Telephone: 201-537-1200
                    Telefax: 201-537-1201

# TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................. 1

OWL'S REPLY TO PLAINTIFF'S SUMMARY OF
ARGUMENT AND RELEVANT FACTS ................................................ 1

ARGUMENT ........................................................................................ 3

POINT I

THE U.S. CARRIAGE OF GOODS BY SEA ACT
GOVERNS THE RIGHTS OF OWL WITH RESPECT TO THE LOSS ........... 3

POINT II

OWL'S MOTION TO LIMIT LIABILITY SHOULD
BE GRANTED ..................................................................................... 6

POINT III

THE SUB-CONTRACTING CLAUSE IN OWL'S
THROUGH BILL OF LADING IS VALID AND SHOULD BE ENFORCED ...... 8

CONCLUSION ..................................................................................... 10

### DECLARATIONS AND EXHIBITS

DECLARATION OF ALAN BAER (President of OWL) ............................... 6

Exhibit "A" – Owl Freight Tariff No. 005 ................................................ 5

Exhibit "B" – Owl Bill of Lading OWLUHA6506015UNY ........................... 5,6,8

Exhibit "C" – Owl Bill of Lading Terms and Conditions ............................. 5,6,8

DECLARATION OF ESA RADONCIC (Claims Manager of OWL) ................. 6

## INTRODUCTION

Movant/Defendant, Ocean World Lines, Inc. (hereinafter "OWL") respectfully submits this Memorandum of Law in reply to Plaintiff's Memorandum of Law in opposition to OWL's motion for partial summary judgment limiting its liability to $500 per package under the Carriage of Goods by Sea Act ("COGSA") 46 U.S.C. §§ 30701 *et seq.*, and the clauses in its contract.

In this Reply Memorandum, OWL reiterates that its liability should be limited to $3,500 for the seven (7) packages that were damaged in a trucking accident while the cargo was being carried under the terms and conditions of OWL's through transport bill of lading. Defendant will also establish that the cases relied on by Plaintiff against OWL are distinguishable.

## OWL'S REPLY TO PLAINTIFF'S SUMMARY OF ARGUMENT AND RELEVANT FACTS

Plaintiff argues on page 1 of its Memorandum that OWL's motion should be denied based on Sompo Japan Ins. Co. of America v. Union Pacific R. Co., 456 F. 3d 54 (2 Cir. 2006) and Project Hope v. M/V IBN SINA, 250 F. 3d 67 (2d Cir. 2001). Plaintiff's reliance on these two cases is misplaced.

Sompo Japan, *supra*, addresses the impact of the Carmack Amendment, which applies only to certain rail carriers, to the liability of a rail carrier. The case has nothing to do with NVOCC's, vessel operating common carriers ("VOCCs") or motor carriers. Sompo Japan is concerned solely with validity of a Himalaya Clause in a litigation between a cargo owner and a railroad for goods damaged in a train wreck. The issue of

rail carrier liability is not present in the instant case. The issue to be determined in OWL's motion for partial summary judgment is whether an NVOCC, subject to the jurisdiction and regulations of the Federal Maritime Commission, is entitled to the benefit of the COGSA package limitation under the terms and conditions of its through transport bill of lading.

As fully set out on page 2 of Defendant's Memorandum of Law ("OWL's Brief"), OWL is a statutorily defined non-vessel operating common carrier subject to the authority and jurisdiction of the Federal Maritime Commission ("FMC"). It is in the business of providing for international through transport of goods by sea and land to and from the United States.

OWL rejects Plaintiff's allegation on page 3 of its Brief that OWL is an intermodal and multimodal carrier who wears many hats. OWL wears only one hat, the hat of an NVOCC. It does not own or operate any means of transportation. Neither is it a rail carrier, motor carrier, water carrier or freight forwarder. Under the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998, the term "non-vessel-operating common carrier" means a common carrier that (A) does not operate the vessels by which the ocean transportation is provided; and (B) is a shipper in its relationship with an ocean common carrier. 46 USCS § (16)(A)(B).

Plaintiff's reliance on Project Hope, *supra,* for the proposition that Carmack statutorily applies to an NVOCC is also misplaced. The Carmack Amendment was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887 to establish a single uniform regime for recovery by shippers directly from interstate rail and motor common carriers. See Project Hope, *supra,* at 73 (n. 6). OWL is neither a rail nor motor

common carrier and is therefore, not governed by Carmack. It should be noted that the Second Circuit (in dicta) reasoned that the parties in Project Hope could have extended COGSA so that it applied prior to loading, but there is no indication that the motor carrier and shipper entered into such a contractual extension. *Id* at 73 (n. 5). A review of the lower court's decision reveals that the NVOCC never attempted to establish and extend ashore the terms of its own regular from bill of lading to invoke COGSA's $500 per package limitation. Rather, it unsuccessfully attempted to rely on the ocean carrier's bill of lading. Project Hope v. IBN SINA, 2000 AMC 1287, 1301 (S.D.N.Y. 2000). In the instant case, OWL is relying on its own bill of lading, that by its terms extends COGSA's $500 per package limitation ashore.

## ARGUMENT

### POINT I

### THE U.S. CARRIAGE OF GOODS BY SEA ACT GOVERNS THE RIGHTS OF OWL WITH RESPECT TO THE LOSS

The decisions relied upon by Plaintiff in Point I of its Brief to support its assertion that Carmack applies statutorily to NVOCC OWL are distinguishable and inapposite.

There is nothing in Sompo Japan that suggests that Carmack applies *ex proprio vigore* to an NVOCC and trumps the type of extended ocean carriage bill of lading terms which OWL is now relying on. In Sompo Japan, NVOCC liability was not at issue. Sompo Japan focused solely on a rail carrier's ability or inability to avail itself of COGSA protection under a Himalaya Clause in the VOCC's bill of lading. Indeed, the VOCC was not even a party to the litigation.

3

The decision in <u>Neptune Orient Lines, Ltd., v. Burlingtom N. & Santa Fe Ry. Co.</u>, 213 F. 3d 1118 (9th Cir. 2000) is not supportive of Plaintiff because it is an indemnity action by a VOCC against a Carmack rail carrier for cargo stolen during rail transport. The case has absolutely nothing to do with an NVOCC, which by statutory definition is not a Carmack carrier.

Plaintiff's reliance on <u>Kyodo U.S.A. Inc. v. Cosco North America Inc.</u>, 2001 WL 1835158 (C.D. Cal. 2001) which held that a VOCC is subject to Carmack for the land segment of a through transport move is flawed because the California District Court determined Carmack applicability by relying on 49 U.S.C. § 14706 (a)(1) for the particular transportation or service undertaken by the carrier, not by the character of the carrier itself. However, the Second Circuit has held that Carmack's reach is determined by 49 U.S.C. § 13501 based upon the character of the carrier itself. <u>Project Hope v. M/V IBM SINA</u>, 250 F. 3d 67, 74 (2d Cir. 2001). See also, <u>King Ocean Cert. America, S.A. v. Precision Cutting Services, Inc.</u>, 717 So. 2d 507, 513 (Fla. 1998) *cert. denied* 526 U.S. 1004 (1999) (holding that an ocean carrier issuing a through bill of lading is not subject to Carmack during the domestic leg of the carriage).

Plaintiff's reliance on <u>Canon USA, Inc. v. Nippon Liner Sys.</u>, 1992 WL 82509 (N.D. Ill. 1992) for the proposition that NVOCC OWL cannot avail itself of COGSA protection is flawed for two reasons. First, unlike the instant case the through bill of lading in Canon did not contractually extend COGSA to the inland segment of the transport. Consequently, neither the ocean carrier, nor its subcontractors were offered COGSA protection. Second, the Illinois District Court based its decision on the ICC (now the Surface Transportation Board "STB") having jurisdiction over the shipment, rather

4

than the character of the carrier itself as required in the Second Circuit under Project Hope, *supra*.

Plaintiff's citation to Cordis Dow Corp. v. S.S. PRESIDENT KENNEDY, 1985 AMC 2756 (N.D. Cal. 1984) holding a multimodal contracted carrier to a mini-landbridge service contract liable as a rail carrier is inapposite. The instant case concerns itself with an NVOCC's through transport bill of lading contract, not a mini-landbridge service contract. In Cordis Dow Corp., the VOCC's bill of lading imposed upon itself a duty to file a claim with the inland rail carrier for damage occurring during the rail portion of its mini-landbridge service contract. OWL's through transport contract with plaintiff is void of any such clause.

In the instant case, OWL functioned solely as a statutorily defined non-vessel operating common carrier ("NVOCC"), subject solely to the jurisdiction of the Federal Maritime Commission ("FMC") 46 USCS § 40102 (16)(A)(B), offering through transportation between the points of origin and final destination for which a through rate was assessed against plaintiff pursuant to the Shipping Act of 1984, as amended, 46 USCS § 40102 (25). By virtue of clause 5(D)(1) of the OWL combined transport bill of lading (USA Clause Paramount) [Exhibit "C"] and clause 1 of the OWL tariff (Clause Paramount) [Exhibit "A"], the parties specifically contracted for the extension of COGSA throughout the entire time that OWL was responsible for the goods in the United States. OWL is relying on clause 1 of its tariff and clauses 5D and 6(1) of its bill of lading to limit its liability to $500 per package. OWL is not relying on VOCC Yang Ming Marine Transport Corp.'s ("Yang Ming") tariff or bill of lading terms to limit liability. It certainly is not relying on any limitation contained in a tariff or bill of lading that may

5

have been generated by Yang Ming's subcontracted trucker Djuric Trucking Inc. ("Djuric") Indeed, until the time of the incident OWL had never heard of Djuric (Baer Decl. ¶ 19; Radoncic Decl. ¶ 8).

## POINT II

## OWL'S MOTION TO LIMIT LIABILITY SHOULD BE GRANTED

Plaintiff, having sued under OWL's bill of lading, is bound by all its terms and conditions, including the COGSA $500 package limitation. Ana Distribution, Inc. v. CMA-CGM (America) Inc., 329 F. Supp. 2d 565, 567 (S.D.N.Y. 2004); Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp. 2d 118, 125 (S.D.N.Y. 1997). Clause 5 (D) 1 of the OWL bill of lading provides that carriage through a port in the United States shall be subject to COGSA. Furthermore, COGSA shall be extended to apply to all goods before loading and after discharge from the vessel and throughout the entire time during which OWL is responsible for the goods under the bill of lading. Clause 5(D) 3 and Clause 6 limit the liability of OWL for shipments to ports in the United States to $500 per package unless the value of the goods has been declared and extra freight has been paid.

It is respectfully submitted that the above mentioned bill of lading clauses, relied upon by OWL to limit its liability to $500 per package under COGSA (46 U.S.C. app. § 1304 (5)), are clear, not ambiguous and should be enforced. Allied Chemical International Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F. 2d 476, 485 (2d Cir. 1985); Seguros Illimani S.A. v. M/V POPI P, 929 F. 2d 89, 94 (2d Civ. 1991). In the instant case Plaintiff has admitted it described the shipment as 7 packages (Response to ¶

6

12 of Rule 56.1 Statement) and elected not to declare the value of the goods or pay extra freight. (Response to ¶¶ 16 and 17 of Rule 56.1 Statement). In <u>Sompo Japan</u> the Second Circuit did not hold that ocean carrier liability is governed by Carmack. The ocean carrier was not a party to the action. Neither was a NVOCC involved in the transport. The Court did, however, comment on the ocean carrier's through bill of lading obligations to a shipper under COGSA:

> [The ocean carrier's] through bills of lading gave the [the shipper] a "fair opportunity" to declare a value for the tractors in excess of $500 per package, and [the shipper] declined. Thus [the ocean carrier] did all that was required under COGSA to trigger the statute's $500 per package liability limitation. (emphasis added). *Supra* at 60. (emphasis added)

In the instant case Plaintiff admits it was given a fair opportunity to declare the value of the cargo pursuant to the COGSA requirement, but declined to do so. It is respectfully submitted that OWL as an NVOCC did all that was required under COGSA to trigger the $500 package liability limitation and its liability in the instant case should be limited to $3,500 for the 7 packages that were damaged.

OWL is mindful that under the specific facts of <u>Sompo Japan</u> the Second Circuit concluded that Carmack governed the rail carrier's liability and further concluded that the ocean carrier's bills of lading did not satisfy the Staggers' requirements that the shipper be given an opportunity to receive full Carmack coverage before accepting alternative terms. *Id.* at 76. However, the Court did not hold that the ocean carrier's liability provisions in its bills of lading did not afford the ocean carrier COGSA protection. That issue was not litigated in <u>Sompo Japan.</u> The issue was recently litigated in this Circuit and both the NVOCC and the VOCC were permitted to limit their liability to $500 per

7

package under COGSA. See, Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc., 2007 WL541958, 2007 AMC 791 (S.D.N.Y. 2007).

Before a shipper may claim the benefit of Carmack's liability provisions, it must first establish that Carmack applies. Independent Machinery, Inc. v. Kuehne & Nagel, Inc., 867 F. Supp. 752, 758 (N.D. Ill. 1994). It is respectfully submitted that Plaintiff has failed to carry its burden that the Carmack Amendment applies to NVOCC OWL. Accordingly, OWL's motion for partial summary judgment should be granted. It should be noted that OWL is relying on clauses 5 (D)(1) and 6 of its own bill of lading to limit liability. It is not relying on Yang Ming's bill of lading terms. Furthermore, it is not relying on any bill of lading or tariff that may have been generated by Djuric. OWL's service contract is with Yang Ming, not Djuric. Motor carrier Djuric is not OWL's subcontractor.

## POINT III

### THE SUB-CONTRACTING CLAUSE IN OWL'S THROUGH BILL OF LADING IS VALID AND SHOULD BE ENFORCED

Under clause 7 of the OWL bill of lading [Exhibit C] the shipper and consignee agreed not to sue or proceed against any subcontractor of OWL. To its credit, Plaintiff complied with this provision and refrained from suing VOCC Yang Ming. Plaintiff's Complaint was filed solely against OWL on or about April 10, 2007 pursuant to the terms and conditions of OWL's through bill of lading.

To address Plaintiff's contention that OWL is a "motor carrier" under Carmack, it is necessary to analyze the sections of Carmack that pertain to "motor carriers." As in any

statutory analysis, the starting point must be the plain language of the legislation. Senator Linie GmbH & Co. Kg v. Sunway Line, 291 F. 3d 145 (2d Cir. 2002); Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-254 (1992).

Part B of Subtitle IV (Interstate Transportation) of Title 49 United States Code covers motor carriers, water carriers, brokers and freight forwarders. By definition it does not cover NVOCCs. The term "motor carrier" is defined in 49 U.S.C. § 13102 (12) as a person providing motor transportation for compensation. OWL is not providing motor transportation under Carmack. OWL is providing through transportation as defined in 46 USCS § 40102 (25) of the Shipping Act of 1984 as amended. By definition the term "through transportation" means:

> Continuous transportation between origin and destination for which a through rate is assessed and which is offered or performed by one or more carriers, at least one of which is a common carrier, between a United States port or point and a foreign port or point.

Part B of Title 49 contains § 14706, entitled "Liability of carriers under receipt and bills of lading." Section 14706 (a)(1) for motor carriers places liability on a carrier providing transportation or service subject to the jurisdiction of the Surface Transportation Board ("STB") under Subchapter I and III of Chapter 135 ["motor carrier"] or Chapter 105 ["rail carrier"] for loss caused by a receiving carrier, delivering carrier, delivering carrier or other carrier over whose line or route the property is transported. OWL is not a motor carrier and does not fall within the perview of 49 U.S.C. § 14706 and is not subject to its liability provisions. Moreover, Carmack cannot apply to an NVOCC who does not fall within the purview of the statute.

## **CONCLUSION**

Defendant's motion for partial summary judgment limiting OWL's liability to $500 per package for a total amount of $3,500 should be granted together with attorneys' fees, costs and disbursements and such other relief as this Court may deem just and proper.

Dated: January 29, 2008

CLARK, ATCHESON & REISERT

By: _____
Peter D. Clark (PC 6190)
ATTORNEYS FOR DEFENDANT
OCEAN WORLD LINES, INC.
7800 River Road
North Bergen, NJ 07047
(201) 537-1200